**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | | |
|---|---|---|
| BROADBAND iTV, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | NO. 6:19-cv-716-ADA |
| | § | |
| DISH NETWORK L.L.C., | § | |
| | § | |
| Defendant. | § | |
| | § | |

## DISH NETWORK L.L.C.'S MOTION TO DISMISS

# TABLE OF CONTENTS

Page No.

I.      Introduction ................................................................................................. 1

II.     Law Of Patent Subject Matter Eligibility ......................................................... 1

III.    Facts ............................................................................................................ 2

   A.  The Specifications .................................................................................... 2

   B.  The Asserted Claims ................................................................................ 3

   C.  The *Broadband iTV, Inc. v. Hawaiian Telcom, Inc.* Case ........................... 6

IV.     Argument ..................................................................................................... 9

   A.  *Alice* Step 1:  The Asserted Patents Are Directed To The Abstract Idea Of Using
       Content Metadata To Provide A Hierarchical Menu Of Content. ................ 9

   B.  *Alice* Step 2:  None Of The Claim Limitations Provide An Inventive Concept. ........ 14

V.      Conclusion ................................................................................................... 19

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Aatrix Software, Inc. v. Green Shades Software, Inc.*
    882 F.3d 1121 (Fed. Cir. 2018)..................................................................1, 18, 19

*Affinity Labs of Tex., LLC v. Amazon.com, Inc.*,
    838 F.3d 1266 (Fed. Cir. 2016)...........................................................................19

*Affinity Labs of Texas, LLC v. DirecTV, LLC*,
    838 F.3d 1253 (Fed. Cir. 2016)..............................................................................2

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
    573 U.S. 208 (2014)............................................................................... *passim*

*Ameranth, Inc. v. Domino's Pizza, LLC*,
    2019 U.S. App. LEXIS 32734, (Fed. Cir. Nov. 1, 2019) ......................................16

*Apple, Inc. v. Ameranth, Inc.*,
    842 F.3d 1229 (Fed. Cir. 2016)...........................................................................10

*BASCOM Glob. Internet Servs. v. AT&T Mobility LLC*,
    827 F.3d 1341 (Fed. Cir. 2016)........................................................................9, 17

*In re Bilski*,
    545 F.3d 943 (Fed. Cir. 2008), *aff'd, Bilski v. Kappos*,
    130 S. Ct. 3218 (U.S. 2010)..................................................................................1

*Broadband iTV, Inc. v. Hawaiian Telcom, Inc.*,
    136 F. Supp. 3d 1228, (D. Haw. 2015)................................................. *passim*

*Broadband iTV, Inc. v. Hawaiian Telcom, Inc.*,
    669 F. App'x 555 (Fed. Cir. 2016) ................................................. *passim*

*buySAFE, Inc. v. Google, Inc.*,
    765 F.3d 1350 (Fed. Cir. 2014)...........................................................................16

*ChargePoint, Inc. v. Semaconnect, Inc.*
    920 F.3d 759 (Fed. Cir. 2019).......................................................................10, 18

*Cleveland Clinic Found. v. True Health Diagnostics LLC*,
    859 F.3d 1352 (Fed. Cir. 2017).............................................................................4

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*,
    776 F.3d 1343 (Fed. Cir. 2014)........................................................................1, 11

*Cyberfone Sys., LLC v. CNN Interactive Grp.*,
   558 Fed. App'x 988 (Fed. Cir. 2014) ..................................................................8, 11

*DDR Holdings, LLC v. Hotels.com, L.P.*,
   773 F.3d 1245 (Fed. Cir. 2014) ..............................................................................9

*Elec. Power Grp. v. Alston*,
   830 F.3d 1350 (Fed. Cir. 2016) ........................................................................11, 12

*Enfish, LLC v. Microsoft Corp.*,
   822 F.3d 1327 (Fed. Cir. 2016) ..................................................................9, 12, 13

*Genetic Techs. Ltd. v. Merial LLC.*,
   818 F.3d 1369 (Fed. Cir. 2016) ..............................................................................1

*Hyper Search, LLC v. Facebook, Inc.*,
   2018 U.S. Dist. LEXIS 212336 (D. Del. Dec. 17, 2018) ........................................12

*Mortg. Grader, Inc. v. First Choice Loan Services, Inc.*,
   811 F.3d 1314 (Fed. Cir. 2016) ............................................................................11

*OIP Techs., Inc. v. Amazon.com, Inc.*,
   788 F.3d 1359 (Fed. Cir. 2015) .........................................................................1, 15

*Prism Techs. LLC v. T-Mobile USA, Inc.*,
   696 F. App'x 1014 (Fed. Cir. 2017) .......................................................................17

*RecogniCorp, v. Nintendo Co. Ltd.*,
   855 F.3d 1322 (Fed. Cir. 2017) ........................................................................12, 13

*SAP America, Inc., v. InvestPic, LLC*,
   898 F.3d 1161 (Fed. Cir. 2018) ........................................................................15, 17

*Secured Mail Sols., LLC v. Universal Wilde, Inc.*,
   873 F.3d 905 (Fed. Cir. 2017) ...............................................................................18

*SiRF Tech., Inc. v. Int'l Trade Comm'n*,
   601 F.3d 1319 (Fed. Cir. 2010) ..............................................................................1

*TLI Communs. LLC v. AV Auto., L.L.C.*,
   823 F.3d 607 (Fed. Cir. 2016) ..................................................................... *passim*

*TriPlay, Inc. v. WhatsApp Inc.*,
   2018 U.S. Dist. LEXIS 49953, (D. Del. Mar. 27, 2018) ...................................12, 16

*Two-Way Media Ltd v. Comcast Cable Communs., LLC*,
   874 F.3d 1329 (Fed. Cir. 2017) .............................................................................14

*Ultramercial, Inc. v. Hulu, LLC*,
    772 F.3d 709, (Fed. Cir. 2014) ................................................................................................8

**Statutes**

35 U.S.C. § 101 ................................................................................................................1, 2

**Other Authorities**

Rule 12(b)(6) ................................................................................................................2, 19

## I.  <u>INTRODUCTION</u>

Broadband iTV, Inc. ("BBiTV") is asserting four patents against DISH Network L.L.C. ("DISH").  All four patents are family members with—and are directed to the same alleged invention as—a BBiTV patent that the Federal Circuit previously found ineligible under 35 U.S.C. § 101.  Like that previously-invalidated patent, the four patents asserted here claim a process for organizing and presenting a hierarchical menu to facilitate finding and retrieving videos.  The patents concede that the organization and generation of this menu *is* the claimed invention.  To this abstract idea, the asserted claims add only generic computers, which are used in conventional ways to automate steps that humans could otherwise perform.  The asserted claims closely track the previously-invalidated claims and are equally ineligible.

## II.  <u>LAW OF PATENT SUBJECT MATTER ELIGIBILITY</u>

"Whether a claim is drawn to patent-eligible subject matter under § 101 is a threshold inquiry" and "an issue of law."  *In re Bilski,* 545 F.3d 943, 950 (Fed. Cir. 2008), *aff'd, Bilski v. Kappos*, 130 S. Ct. 3218, 3225 (U.S. 2010) (describing § 101 as "a threshold test"); *SiRF Tech., Inc. v. Int'l Trade Comm'n*, 601 F.3d 1319, 1331 (Fed. Cir. 2010) ("patent-eligible subject matter is an issue of law.").  For this reason, where underlying factual disputes do not preclude it,[1] a district court may resolve patent eligibility on a motion to dismiss.  *See, e.g., OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1362 (Fed. Cir. 2015); *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1351 (Fed. Cir. 2014) (affirming finding of ineligibility made under 12(b)(6)); *Genetic Techs. Ltd. v. Merial LLC*, 818 F.3d 1369, 1373 (Fed. Cir. 2016) ("We have repeatedly recognized that in many cases it is possible and proper to

---

[1] The Complaint in this case is unlike the complaint found to have been improperly dismissed in *Aatrix Software, Inc. v. Green Shades Software, Inc.* 882 F.3d 1121, 1126 (Fed. Cir. 2018). Among other things, the Complaint at issue here contains **no** factual allegations directed to subject-matter eligibility.

determine patent eligibility under 35 U.S.C. § 101 on a Rule 12(b)(6) motion.").

The Supreme Court has set forth a two-part test for determining if a patent recites patent ineligible subject matter under § 101. *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 218 (2014). At *Alice* step one, the Court must determine if the patented claims are "directed to" an abstract idea. *Id.* "The 'abstract idea' step of the [*Alice*] inquiry calls upon [the Court] to look at the focus of the claimed advance over the prior art to determine if the claim's character as a whole is directed to excluded subject matter." *Affinity Labs of Texas, LLC v. DirecTV, LLC*, 838 F.3d 1253, 1257 (Fed. Cir. 2016). If the claim is directed to an abstraction, the Court then asks whether the claim elements, considered "both individually and 'as an ordered combination,'" recite an "inventive concept" that is "sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [abstract idea] itself." *Alice*, 573 U.S. at 217-218.

## III.   FACTS

### A.   The Specifications

BBiTV asserts four related patents: U.S. Patent Nos. 9,648,388 (the "'388 patent") (ECF No. 1-5), 9,998,791 (the "'791 patent") (ECF No. 1-4), 10,028,026 (the "'026 patent") (ECF No. 1-2), and 10,506,269 (the "'269 patent") (ECF No. 1-3).[2]

The (mostly common) specifications discuss a TV-based distribution system operating on a "VOD Application Server." *Id.* at 5:24-36. A user can upload video content to a "Content Management System" so that it may be made available on cable TV devices by a digital TV service provider. *Id.* at 3:54-57; 8:10-21. The uploaded content can include metadata that may be used to classify the content by title and topic. *Id.* at 8:15-22. After some incidental

---

[2] A chart of the relevant parts of the patents' family tree is attached as Exhibit A. The '026 and '269 patents have the same specification and the '388 and '791 patents have the same specification, but the two specifications have some minor differences. For simplicity's sake, citations discussing the common subject matter are to the specification of the '026 patent.

processing steps, the video content is hierarchically indexed based on the title and topic data provided with the upload.  *Id*. at 3:54-66; 8:34-36.

A viewer at home can access the uploaded content using the video-on-demand ("VOD") function of their TV cable box using a remote.  *Id*. at 5:62-6:4.  The viewer accesses an "electronic program guide" ("EPG"), which includes a hierarchical menu of categories that the viewer can navigate to find a desired video.  *Id*. at 3:58-61; 6:4-20.

The pages of this menu are generated using templates.  *Id*. at 5:48-61.  The templates are constructed using layers.  *Id*. at 7:18-30.  For example, the display pages may include a background layer, a layer that defines regions for text and images, and a layer that includes the text and images; these layers are combined to create a single page.  *Id*. at Fig. 4.

The specifications describe no new hardware or technology.  Instead, the specifications repeatedly emphasize that the components of the invention are known.  Thus, for example, the specifications acknowledge the existence of web-based content management systems like YouTube and Brightcove, which aggregate video content uploaded by many different producers. *Id*. at 16:48-51.  Similarly, the patents admit that the central "VOD Application Server," which stores and holds the uploaded videos, is an existing device that was patented and sold by an existing company.  *See id.* at 5:33-39.  And the specifications admit that "video on demand (VOD) system[s], wherein a viewer can navigate through a program guide via the remote control unit and send a request via the set-top box for a desired video program" are known.  *Id*. at 2:13-19.

### B.   The Asserted Claims

BBiTV has identified multiple asserted claims in its Complaint, but all of them are directed to the same basic process, with only minor differences.  Each asserted patent has only

one independent claim.  Claim 1 of the asserted '388 patent is representative.[3]  The claim is wordy, but it recites a simple process of: (i) receiving video content and associated metadata at a web server, (ii) providing the user with a hierarchical menu generated using templates and the metadata, (iii) receiving the user's selection of a video, and (iv) providing that selection to the user.  In particular, claim 1 calls for:

> 1. A set-top box, providing video-on-demand services and operatively connected to TV equipment of a TV service subscriber, programmed to perform the steps of:
>
> (a) receiving, at the set-top box, via a closed system from a video-on-demand content delivery system comprising one or more computers and computer-readable memory operatively connected to the one or more computers, respective video-on-demand application-readable metadata that is associated with respective video content and is usable to generate a video-on-demand content menu;
>
> wherein the respective video content was uploaded to a Web-based content management system by a respective content provider device associated with a respective video content provider via the Internet in a digital video format along with respective specified metadata including respective title information, category information, and subcategory information designated by the respective video content provider to specify a respective hierarchical location of a respective title of the respective video content within the video-on-demand content menu displayed on the TV equipment, wherein the respective video-on-demand application-readable metadata is generated according to the respective specified metadata;
>
> (b) providing, to the TV subscriber at the set-top box, the video-on-demand content menu for navigating through titles, including the respective titles of the respective video content, in a drill-down manner by category information and subcategory information in order to locate a particular one of the titles whose associated video content is desired for viewing on the TV equipment, wherein the video-on-demand content menu lists the titles using the same hierarchical structure of respective category information and subcategory information as was designated by the respective video content provider in the respective specified metadata for the respective video content, wherein a plurality of different video display templates are accessible to the set-top box, and wherein the video-on-demand content menu is generated using at least one of the plurality of different video display templates and based at least upon the respective specified metadata; and
>
> (c) in response to the TV service subscriber selecting, via a control unit in

---

[3] It is common for courts to analyze patent eligibility using a representative claim.  *See, e.g., Cleveland Clinic Found. v. True Health Diagnostics LLC*, 859 F.3d 1352, 1360 (Fed. Cir. 2017).  However, to the extent other claims include limitations that substantively differ from the representative claim, we address those other limitations as well.

communication with the set-top box, a first respective title associated with a first video content from the hierarchical structure of respective category information and subcategory information of the video-on-demand content menu using drill-down navigation, transmitting the selection to the set-top box for display on the TV equipment; and

(d) receiving, at the set-top box, the first video content for display on the TV equipment of the TV service subscriber, wherein in response to the selection the first video content was retrieved from a video server associated with the video-on-demand content delivery system.

'388 patent, claim 1.

The steps of the claimed process begin with the yellow-highlighted text, which says that the video content is uploaded (via the internet) by a content provider, along with metadata specifying the video's title, category and subcategory, and that this metadata is used to generate the metadata used by the rest of system.  The green-highlighted text calls for the generation and presentation of a hierarchical EPG menu arranged based on the category metadata provided by the uploader.  The blue-highlighted text calls for the user to navigate the menu and select a desired piece of video content, while the pink-highlighted text calls for the user to receive the selected video from the server.  Nowhere do the claims call for any specialized equipment, novel hardware or inventive data structure.

In addition to representative claim 1 of the '388 patent, BBiTV also asserts the independent claims of the other three patents.  As shown in Exhibit C, those claims cover the same process, with minor differences.  Claim 1 of the '791 patent adds that the metadata includes time information that impacts the availability of the content.  Claim 1 of the '026 patent requires an "Internet-connected device" instead of a set-top box, provides requirements relating to the use of templates to generate pages of the EPG menu, and requires that images be uploaded with the video content.  Claim 1 of the '269 patent adds the same template and image requirements, but requires an "interactive mobile application" rather than a set-top box.

The asserted **dependent** claims fall into three basic categories.  The first group relates to use of layers and templates in generating the menu's pages.[4]  The second group specifies that different templates are used for different levels of the hierarchical menu.[5]  The third group specifies the type of device that the viewer uses to view the menu and content (e.g., a set-top box or digital phone).[6]  In addition, one asserted dependent claim (claim 5 of the '026 patent) requires that the uploaded metadata include "descriptive data" about the uploaded content, and another (claim 3 of the '269 patent) requires the viewer to log in to the VOD service.  As explained in more detail below, none of these minor differences affects the analysis – they do not change the basic thrust of the claims for *Alice* step one, nor provide novel and inventive contributions of the kind that might save them under *Alice* step two.

### C. The *Broadband iTV, Inc. v. Hawaiian Telcom, Inc.* Case

A few years ago, BBiTV asserted related U.S. Patent No. 7,631,336 (the "'336 patent") against multiple defendants in federal court in Hawaii.  The '336 patent shares the same specification as the '026 patent and '269 patent and its only independent claim reads as follows:

> 1. A method for automatically enabling the converting, navigating and displaying of video content from a video content provider on an open online network to a discrete digital TV service provider network which is of the type employing a closed system of pre-screened and pre-programmed video content selectable for viewing by TV service subscribers inputting keypresses on their TV remote control units to set-top boxes connected to their TV equipment, which predetermined video content is listed by title for selection from an electronic program guide for a video-on-demand (VOD) platform of a discrete digital TV service provider comprising:
>
> (a) enabling the uploading of video content in a digital video format via an online network to a Web-based content management server that is connected to the VOD platform of the discrete digital TV service provider network, along with a title and a hierarchical address of hierarchically-arranged categories and subcategories as metadata

---

[4] This group includes asserted claims 13 and 19 of the '388 patent, claims 12 and 18 of the '791 patent, and claim 4 of the '269 patent.
[5] This group includes asserted claims 3 and 6 of the '388 patent, claim 3 of the '026 patent and claim 6 of the '269 patent.
[6] This group includes claims 8 and 11 of the '026 patent.

for categorizing a hierarchical ordering for the title for the video content;

(b) converting the content uploaded to the Web-based content management server into a standard TV digital format used by the discrete digital TV service provider network and storing a "local instance" thereof at a video ID (VID) address in a video content database of the VOD platform, wherein the VID address is linked to the title for the video content;

(c) listing the title of the video content in an electronic program guide for the VOD platform of the discrete digital TV service provider using the same hierarchically-arranged categories and subcategories as used in the uploaded metadata for the hierarchical address for the video content in the electronic program guide of the VOD platform;

(d) providing a TV service subscriber, having a TV-equipment-connected set-top box connected to the VOD platform of the discrete digital TV service provider network, with access to the electronic program guide for the VOD platform for navigating through the hierarchically-arranged titles of video content by categories and subcategories therein in order to find the title of the video content desired for viewing on their TV equipment; and

(e) upon the TV service subscriber selecting, via their TV remote control unit in communication with the set-top box, the title for the video content from the hierarchically-arranged categories and subcategories of the electronic program guide, and the set-top box transmitting a request for the selected title to the VOD platform, then enabling retrieval of the selected video content stored at the VID address in the video content database of the VOD platform linked thereto, and transmission of the selected video content to the TV service subscriber's set-top box for display on the TV service subscriber's TV equipment.

See Exhibit B.  In *Broadband iTV, Inc. v. Hawaiian Telcom, Inc.*, the district court summarized this claim as requiring: (1) uploading of video content and meta-data, (2) converting the video content to the proper format, (3) listing the video content in a hierarchical EPG organized using the category information in the uploaded metadata, (4) letting a viewer navigate the menu to select the desired video content, and (5), sending that video content to the viewer's set-top box for viewing.  136 F. Supp. 3d 1228, 1236 (D. Haw. 2015).  The claim therefore covered the same basic process claimed by the patents asserted in this case.[7]

On summary judgment, the district court found that the '336 patent failed both prongs of

---

[7] For ease of comparison, a chart setting claim 1 of the '336 patent side-by-side with claim 1 of the patents asserted here is provided as Exhibit C.

the *Alice* test.  Under the step one analysis, the court found that the claims were directed to the

abstract idea of "using the same hierarchical ordering based on metadata to facilitate the display

and locating of video content."  *Hawaiian Telcom, Inc.*, 136 F. Supp. 3d at 1236.  The court

explained that the alleged novelty of the patent was the concept of "creating a method for

uploading videos via internet with accompanying metadata, which allows the videos to be

automatically listed in a cable company's EPG for viewer selection."  *Id*.  The court found that

this concept was not appreciably distinct from other ideas that the Federal Circuit had previously

deemed abstract.  For example, the Federal Circuit had found that claims reciting "using

categories to organize, store, and transmit information" were not patent eligible, explaining that

the "idea of collecting information in classified form, then separating and transmitting that

information according to its classification, is an abstract idea that is not patent-eligible."  *Id.* at

1235 (discussing *Cyberfone Sys., LLC v. CNN Interactive Grp.*, 558 Fed. App'x 988, 991-92

(Fed. Cir. 2014)).  And, although the steps claimed in the '336 patent were performed by

computers, the patent claimed a process that a "person could perform using a pen, paper and her

own brain."  *Id.* at 1238.

At the second step of the *Alice* analysis, the court found that the claims lacked an

inventive concept.  The court rejected BBiTV's argument that the '336 patent claimed "specific

details regarding how [the] idea may be implemented, rather than broad, generic recitations."  *Id.*

at 1240.  The court looked past the "specific-sounding language regarding conventional

computer components' functions" and found that the claims only recited the "computerized steps

at a high level of generality, which is insufficient to supply an inventive concept."  *Id*. (citing

*Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 716 (Fed. Cir. 2014)); *see also id*. at 1243.

Further, the court found that the patent neither required unconventional computer technology nor

using computer or internet technology in an unconventional manner. *Id*. at 1241. Rather, the court found the claims sought only to automate an otherwise manual process using conventional computer technology. *Id*. at 1245. The court therefore concluded that the '336 patent recited no inventive concept and was invalid under *Alice*. *Id*. at 1246. BBiTV appealed, but after full briefing and argument, the Federal Circuit summarily affirmed the finding of ineligibility. *Broadband iTV, Inc. v. Hawaiian Telcom, Inc.*, 669 F. App'x 555, 556 (Fed. Cir. 2016).[8]

## IV.   ARGUMENT

### A.   *Alice* Step 1:  The Asserted Patents Are Directed To The Abstract Idea Of Using Content Metadata To Provide A Hierarchical Menu Of Content.

The claims of the asserted patents are directed to the same abstract idea found ineligible in *Hawaiian Telcom*, 136 F. Supp. 3d at 1236-37. While the *Hawaiian Telcom* court noted that this abstract idea could be articulated in various ways, it summarized that idea as "using the same hierarchical ordering based on metadata to facilitate the display and locating of video content." *Id*. at 1237.

The claims of the patents-in-suit are directed to this same idea. For example, claim 1 of the '388 patent calls for using uploaded metadata (about the category and subcategory of a video) to generate and present a hierarchical menu to facilitate a user's location and display of video content. Indeed, as shown by the close textual and substantive similarity of the color-coded limitations in the claims recited above, the representative claim asserted here is directed to the *same* basic process at issue in *Hawaiian Telcom*. *See also* Exhibit C (using the same color scheme to show the similarity of the other independent claims).

---

[8] Importantly, the Federal Circuit's decision **postdates** numerous decisions recognizing the patent eligibility of inventions that improve computer functionality, such as *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1259 (Fed. Cir. 2014), *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1336 (Fed. Cir. 2016), and *BASCOM Glob. Internet Servs. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350-51 (Fed. Cir. 2016).

The claims of the patents asserted here should also be considered "directed to" this abstract concept because this concept is "what the patent describes as the invention." *ChargePoint, Inc. v. Semaconnect, Inc.*, 920 F.3d 759, 767 (Fed. Cir. 2019). The common specification of the '026 patent and '269 patent explains that the object of the invention was "to find a way for such vast numbers of content publishers to transmit their programs to the home TV, and to enable home TV viewers to find something of interest for viewing among the vast numbers of new programs." '026 patent, 3:8-12. The proposed solution involved allowing for "uploading from any node or publishing site on the Internet to the provider's Web-based content management server" – like prior-art systems such as YouTube or Brightcove. The patents, however, added the idea that "[t]he title of the program becomes automatically listed in the electronic program guide (EPG) following the same hierarchical categorization addressing indicated by the publisher of the content." *Id.* at 3:54-59. That addition, in turn, means that "home TV viewers can readily find something of interest for viewing … by navigating through the hierarchical addressing scheme of the providers' EPG." *Id.* at 4:2-5.[9] As these passages show, the applicants *themselves* understood the invention to be directed to using metadata "to facilitate the display and locating of video content" in a hierarchical menu.

Organizing and presenting content based on categorical information is an abstract idea. For example, the Federal Circuit has held that claims reciting a process to "generate menus with certain features" are abstract. *Apple, Inc. v. Ameranth, Inc.*, 842 F.3d 1229, 1241 (Fed. Cir. 2016). The Federal Circuit has also held that concepts like "using categories to organize, store, and transmit information" and "1) collecting data, 2) recognizing certain data within the

---

[9] The common specification of the '388 and '791 patents is similar. *See* '388 patent, 2:62-66 (stating the desire to allow "viewers to navigate readily and visually to specific items of interest).

collected data set, and 3) storing that recognized data in a memory" are abstract.  *Cyberfone*, 558 Fed. App'x at 991-92; *Content Extraction*, 776 F.3d at 1347 (Fed. Cir. 2014).  The same is true for claims directed to the idea of "gathering and analyzing information of a specified content, then displaying the results."  *Elec. Power Grp. v. Alston*, 830 F.3d 1350, 1354 (Fed. Cir. 2016). The claims here, which require receiving content and metadata, and then organizing and displaying the content based on that metadata, recite the same type of process, and are abstract in the same way.  The fact that the claimed process is carried out in the context of VOD services only "limit[s] the abstract idea to a particular environment" but "does not make the claims any less abstract."  *TLI Communs. LLC v. AV Auto., L.L.C.*, 823 F.3d 607, 613 (Fed. Cir. 2016).

The fact that the claimed process has close, non-technological analogues also supports the conclusion that it is directed to an abstract idea.  *See Mortg. Grader*, *Inc. v. First Choice Loan Services, Inc.*, 811 F.3d 1314, 1324 (Fed. Cir. 2016) (explaining that a claimed process was abstract when the underlying steps "could all be performed by humans without a computer"). Although the claims, as written, are limited to applications making use of computers, television equipment, and set-top boxes, the underlying practice of generating a hierarchical menu based on title and category information submitted with a video is something humans can and did do without computers.  For example, a person could, without the use of ***any*** computer; (i) receive a video and associated metadata, (ii) provide a user with both the metadata and a hierarchical menu generated using templates and that metadata, (iii) receive the user's selection of a video chosen using that menu, and (iv) provide the selected video to the user.  Indeed, this is the basic process that the video stores of our youth used: they received videos from publishers, organized them by categories and subcategories that the publishers provided so that they could be browsed by potential viewers, and provided viewers with copies of the videos they selected.  The claimed

EPG menu just computerizes this experience.

The claim limitations that are focused on using template layers to generate pages for the hierarchical menu—which were not included in the claims at issue in *Hawaiian Telcom*—do not change this analysis because they only add other abstract concepts.  Claim 1 of the '026 patent, for example, includes limitations requiring a templatized display comprising a first layer background screen, a second layer for the template of reserved areas of the display, and a third layer that fills those reserved areas with images or text.  '026 patent, claim 1.  These limitations describe using a computer to generate the layout of a page of the hierarchical menu through the use of a template.  This is an abstract idea.  For example, in *TriPlay, Inc. v. WhatsApp Inc.*, the court ruled that claims reciting a process for applying a template to messages is abstract because using templates is a fundamental solution with benefits "in any context."  No. 13-1703-LPS-CJB, 2018 U.S. Dist. LEXIS 49953, at *23 (D. Del. Mar. 27, 2018); *see also Hyper Search, LLC v. Facebook, Inc.*, No. 17-1387-CFC-SRF, 2018 U.S. Dist. LEXIS 212336, at *13-14 (D. Del. Dec. 17, 2018) (finding claims that recite "storing a template, creating a document based on that template, and storing the document" to be abstract).  And the claim limitations reciting the use of multiple templates for different types of pages are abstract for the same reasons.  As anyone who edited a high-school newspaper in the 1980s can attest, using different templates to lay out pages of a document is a longstanding idea with a clear brick-and-mortar analogue.  It does not change the analysis under the first step of *Alice* because "[a]dding one abstract idea [] to another abstract idea [] does not render the claim non-abstract."  *RecogniCorp, v. Nintendo Co. Ltd.,* 855 F.3d 1322, 1327 (Fed. Cir. 2017); *see also Elec. Power*, 830 F.3d at 1354 (finding claims abstract when focused on a combination of several abstract processes).

The asserted patents are also *unlike* the patents found eligible in *Enfish*, because none of

the claims asserted here is directed to "an improvement to computer functionality itself."  822 F.3d 1327, 1336 (Fed. Cir. 2016).  Indeed, nowhere do the patent specifications suggest a new and improved server, set-top box, or television.  To the contrary, the specifications say that uploading video content over a network was conventional.  *See* '026 patent, 16:48-54 (describing existing ways to upload video content using the internet, including via YouTube).  That process is described as being carried out using a generic web browser.  *See* '026 patent, 8:15-22.  The application server responsible for processing the content is also admittedly in the prior art, and the patents expressly relied on that prior art to teach its operation.  *See, e.g.*, '026 patent, 5:36-47.  The selection and delivery of the content is likewise carried out using generically-described television remotes, set-top boxes, and cable TV infrastructure.  *See* '026 patent, 5:29-33, 8:37-45.  And the patents admit that selecting and presenting VOD content to viewers over their cable service was well-known.  *See id.* at 2:13-31.  In other words, the asserted patents use existing, conventional computer and television systems as tools to implement the abstract idea of collecting content with metadata and presenting it in hierarchical menus that are organized using that metadata.  *See RecogniCorp*, 855 F.3d at 1327 (invalidating claims for carrying out an abstract process "for which computers are invoked merely as a tool") (citations omitted).

The Federal Circuit's decision in *TLI Communs. LLC v. AV Auto., L.L.C.* is particularly instructive.  In that case, the patent claimed a process for transmitting digital images and accompanying classification information to a server, where the classification information was used to store the digital images within the server.  *TLI*, 823 F.3d at 610.  The Federal Circuit found that the claims were directed to the "concept of classifying an image and storing the image based on its classification."  *Id.* at 611.  The court found no patentable improvement to computer functionality, noting that the patent merely required "the use of conventional or generic

technology in a nascent but well-known environment, without any claim that the invention reflects an inventive solution to any problem presented by combining the two." *Id*. at 612.  And the methods used to implement the invention were described in "purely functional terms," demonstrating that the techniques for programing those functions was well-known.  *Id*.

The same reasoning applies to the claims at issue here – which are directed to a very similar idea to the one found abstract in *TLI*.  Like the patent at issue in *TLI*, the patents asserted here do not teach a new way to upload videos, or to send those videos to viewers.  Rather, the patents use broad functional language and conventional tools to address the non-technological challenge of generating and organizing menus for presenting large amounts video content.  *See* '026 patent, 3:8-12.  The patents are, therefore, directed to an abstract idea.

**B.**     ***Alice* Step 2:  None Of The Claim Limitations Provide An Inventive Concept.**

In the *Hawaiian Telcom* case, the district court found (and the Federal Circuit affirmed) that the claims of the related '336 patent lacked an inventive concept under the second step of *Alice*.  The district court found that the claims used "conventional computers and the Internet to automate, as a combined set of steps, the implementation of an abstract idea that can be completed manually."  *Hawaiian Telcom*, 136 F. Supp. 3d at 1245.  The claims of the patents asserted here recite the same conventional process and require the same types of well-known components and functionalities and provide no reason to depart from the previous result.[10]

Taken individually, the claim limitations recite little more than conventional components

_____

[10] DISH is not aware of any potential claim construction dispute that might affect this conclusion.  Put differently, while the parties may disagree about the meaning of various terms, none of those potential disputes can change the fact that the claim elements are all admittedly conventional and/or described in purely generic, functional terms.  *See Two-Way Media Ltd. v. Comcast Cable Communs., LLC*, 874 F.3d 1329, 1338 (Fed. Cir. 2017) (ruling claims ineligible when patentee's proposed constructions recited only "conventional computer components" and failed to result in "an improvement in the *functioning* of the system") (emphasis in original).

employed to implement the abstract idea.  Looking to claim 1 of the '388 patent, the recited hardware elements are all existing and conventional components arranged in a conventional way. The machines used to implement the abstract solution include set-top boxes, generically-described computers, the internet, "TV equipment" and a "control unit" (a TV remote).  *See* '388 patent, claim 1.  The specification of the patents admits that these components were known and in prior use.  *See* '026 patent, 2:7-12 (describing existing VOD services offered through existing set-top boxes that are controlled with a remote).  The remaining steps are carried out by software, described with "[s]pecific-sounding language regarding conventional computer components' function."  *Hawaiian Telcom*, 136 F. Supp. 3d at 1243 (internal quotes omitted).

The claimed process also requires no novel or unconventional functionality.  The patents' specifications admit that uploading video content via networks was conventional at the time.  *See* '026 patent, 16:48-54 (describing existing ways to upload video content).  And they admit that allowing users to select VOD content and presenting it to them over their cable service was also well known.  *Id.* at 2:13-31.

Nor is there anything inventive to be found in the claims that call for using software to generate and display pages using templates.  As the aforementioned editors of 1980s high-school newspapers can attest, using software to generate a page that conforms with a pre-defined layout or template (and/or using different templates for different types of pages) merely automates conventional ways of laying out physical pages.  *See OIP Techs.*, 788 F.3d at 1363 (ruling that limitations claiming use of computers to automate a previously-manual process provided no inventive concept).  Thus, like the steps for generating the hierarchical menu, the claim limitations directed to the use of templates cannot provide the inventive concept necessary to impart eligibility.  *See SAP America, Inc., v. InvestPic, LLC,* 898 F.3d 1161, 1168-70 (Fed. Cir.

2018) (finding no inventive concept when the allegedly inventive aspects were "themselves in the realm of abstract ideas").

Aside from being abstract, the claimed use of templates is also entirely conventional. Faced with claims reciting a similar template process, in *TriPlay, Inc. v. WhatsApp Inc.,* the court found that there was nothing unconventional or inventive about claims requiring use of templates, noting that "a template can just be a predefined layout — a well-understood concept that adds nothing meaningful." 2018 U.S. Dist. LEXIS 49953, at *23. Likewise, in affirming that claims were directed to ineligible subject matter in *Ameranth, Inc. v. Domino's Pizza, LLC*, the Federal Circuit noted that "creating layouts … in conformity with display screen parameters" was "routine and conventional." Nos. 2019-1141, 2019-1144, 2019 U.S. App. LEXIS 32734, at *16 (Fed. Cir. Nov. 1, 2019). Thus, there is nothing in the recitation of templates that would ensure that the claims are directed to "significantly more" than an abstract idea.[11]

The claims reciting limitations detailing specific types of data to be included in the upload (such as images, descriptive data, and time data) also add insignificant specificity to conventional data-transmission steps.[12] *See buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1355 (Fed. Cir. 2014) (explaining that sending data over a network is "not even arguably inventive"). And the claims that replace the "set-top box" with some other generic component also add nothing inventive. *See TLI*, 823 F.3d at 614 (invalidating patent utilizing only known hardware because "generic computer components insufficient to add an inventive concept to an otherwise abstract idea.").[13] For example, claim 11 of the '026 patent specifies that this alternative device

---

[11] *See* claims 3, 6, 13 and 19 of the '388 patent, claims 1, 12 and 18 of the '791 patent, claims 1 and 4 of the '269 patent, and claim 1 of the '026 patent.
[12] *See* claim 1 of the '791 patent, claim 1 of the '269 patent and claims 1 and 5 of the '026 patent.
[13] *See* claim 1 of the '269 patent and claims 1, 8 and 11 of the '026 patent.

can be a "digital phone" but the '026 patent admits that these too were well-known and conventional.  *See id.* at 16:54-57 (referring to "digital phones" such as the existing "iPhone™ sold by Apple").  Claim 3 of the '269 patent's login requirement is likewise generic, conventional and itself abstract.  *See Prism Techs. LLC v. T-Mobile USA, Inc.*, 696 F. App'x 1014, 1017 (Fed. Cir. 2017) (ruling that claims covering an authentication process for accessing resources was abstract and ineligible).

Looking at the claim elements as "an ordered combination" also reveals no inventive concept.  *Alice*, 573 U.S. at 217.  There is no inventive concept presented by a "non-conventional arrangement" that results in an improvement to "the performance of the computer system itself." *BASCOM*, 827 F.3d at 1350-51.  Nor is there any unconventional result achieved.  *See Hawaiian Telcom*, 136 F. Supp. 3d at 1241 (finding that very similar and related claims recited nothing that called "for computer or Internet technology to behave in an unconventional manner").

The patents also describe no technical solutions to any technical problem that might go along with linking internet uploads and VOD systems.  Rather, the explanation of this alleged solution is purely functional: the patents explain that uploaded content is screened by an ***unclaimed*** "Content Screening System" and then fed by an ***unclaimed*** "Content Feed System" to an ***unclaimed*** "Content Conversion System" that converts the content to an undefined compatible format.  *See* '026 patent, 8:23-37.  These entirely functionally-described (and unclaimed) "systems" do nothing to change the lack of eligibility.  *See TLI*, 823 F.3d at 615 (explaining that "vague, functional descriptions of server components are insufficient to transform the abstract idea into a patent-eligible invention").  As such, the asserted patents recite no "improved computer resources" that BBiTV "claims to have invented."  *SAP,* 898 F.3d at 1169.  Instead, as explained in *Hawaiian Telcom*, the alleged solution provides "[s]pecific-

sounding language regarding conventional computer components' functions, *such as their ability to connect to VOD platforms and online networks*, [which] does not confer patent eligibility." 136 F. Supp. 3d at 1243 (emphasis added).

The only purportedly inventive aspect of the claimed inventions are the abstract steps requiring that the computer software generate and present a hierarchical menu of the video content using the same category metadata included with the video content upload.  Thus, even according to the patents themselves, the only allegedly "inventive concept" being claimed is *not* a technological improvement to computer functionality, but is the *same abstract idea* found inadequate in *Hawaiian Telcom.  See ChargePoint*, 920 F.3d at 774 (rejecting alleged inventive concept that "merely mirror[ed] the abstract idea itself").

There are no factual questions here regarding whether claim limitations are unconventional.  In *Aatrix Software, Inc. v. Green Shades Software, Inc.*, the Federal Circuit found a motion to dismiss was improperly granted in light of factual allegations that—consistent with the specification—asserted that the claimed uniform data importation method was unconventional and improved computer functionality.  882 F.3d 1121, 1129 (Fed. Cir. 2018).  In this case there is not a single allegation in BBiTV's complaint identifying some aspect of the claimed inventions as inventive.  Indeed, no such allegations would matter, as the patents' specifications establish that the claim limitations merely require using computers *as tools* to carry out abstract processes.  *See Secured Mail Sols., LLC v. Universal Wilde, Inc.*, 873 F.3d 905, 913 (Fed. Cir. 2017) (explaining that district courts need not accept allegations that contradict the specification as true); *see also ChargePoint*, 920 F.3d at 775 (dismissing factual allegations of alleged technical improvement when patent specification established that alleged improvement was already well-understood, routine, and conventional); *TLI*, 823 F.3d at 614

(granting motion to dismiss for lack of patent subject matter eligibility when the specification

established that patent limitations were conventional and non-inventive).  Unlike *Aatrix*, the

patents here do not *explain* how to achieve any improvement.  *See Aatrix*, 882 F.3d at 1129

(describing the specification's explanation of the structure and function of the inventive "data

file").  Instead, they assume that the reader knows how to program computers, and merely

describe a particular use for those computers.  *See Affinity Labs of Tex., LLC v. Amazon.com,

Inc.*, 838 F.3d 1266, 1270 (Fed. Cir. 2016) (claim limitations were conventional where patentee

made "no claim that it invented any of those components or their basic functions, nor does it

suggest that those components, at that level of generality, were unknown in the art as of the

priority date").  Given that BBiTV already had a chance to take related and highly similar patent

claims both through summary judgment and then all the way up to the Federal Circuit, this is

exactly the sort of case for which disposition on Rule 12 is appropriate.

## V.    CONCLUSION

For these reasons, DISH respectfully asks the Court to grant its motion to dismiss.

Dated: February 24, 2020                    Respectfully submitted,


By: */s/ John P. Palmer*
    John P. Palmer
    State Bar No. 15430600
    Naman, Howell, Smith & Lee, PLLC
    400 Austin Avenue, 8th Floor
    P.O. Box 1470
    Waco, TX  76701
    Telephone: +1 254 755 4100
    Facsimile:  +1 254 754 6331
    Email:  palmer@namanhowell.com

    **Attorney for Defendant**
    **DISH Network L.L.C.**

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on February 24, 2020, a copy of the foregoing was served electronically, via CM/ECF, on all counsel of record who are deemed to have consented to such service under the Court's local rules.  Any other counsel of record will be served via facsimile and certified mail, return receipt requested.

By:  */s/ John P. Palmer*
      John P. Palmer