```
 1                   UNITED STATES DISTRICT COURT
                    WESTERN DISTRICT OF TEXAS
 2                        WACO DIVISION

 3   BROADBAND ITV, INC.        ) Docket No. WA 19-CA-716 ADA
                                )
 4   vs.                        ) Waco, Texas
                                )
 5   DISH NETWORK, LLC          ) November 13, 2020
     _____
 6                   UNITED STATES DISTRICT COURT
                    WESTERN DISTRICT OF TEXAS
 7                       AUSTIN DIVISION

 8   BROADBAND ITV, INC.        ) Docket No. A 20-CA-717 ADA
                                )
 9   vs.                        ) Austin, Texas
                                )
10   AT & T SERVICES, INC.,     )
     AT & T COMMUNICATIONS,     )
11   LLC,                       ) November 13, 2020

12

                TRANSCRIPT OF VIDEOCONFERENCE MARKMAN HEARING
13                BEFORE THE HONORABLE ALAN D. ALBRIGHT

14

15   APPEARANCES:

16   For the Plaintiff:       Mr. David Alberti
                              Mr. Marc Belloli
17                            Mr. Robert F. Kramer
                              Feinberg, Day, Kramer, Alberti,
18                            Lim, Tonkovich & Belloli
                              577 Airport Boulevard, Suite 250
19                            Burlingame, California 94010

20                            Mr. Jack Wesley Hill
                              Ward, Smith & Hill, PLLC
21                            1507 Bill Owens Parkway
                              Longview, Texas 75604

22

23   For DISH Network:       Ms. Alyssa Caridis
                              Orrick, Herrington & Sutcliffe
24                            777 South Figueroa Street,
                              Suite 3200
25                            Los Angeles, California 90017
```

```
 1   (Appearances Continued:)

 2   For DISH Network:          Mr. Will H. Melehani
                                Mr. Clement S. Robert
 3                              Orrick, Herrington & Sutcliffe
                                405 Howard Street
 4                              San Francisco, California 94105

 5                              Mr. John P. Palmer
                                Naman, Howell, Smith & Lee
 6                              P.O. Box 1470
                                Waco, Texas 76703

 7

 8   For AT & T Services:       Mr. Roger J. Fulghum
                                Baker Botts, LLP
 9                              One Shell Plaza
                                910 Louisiana Street
10                              Houston, Texas 77002

11                              Mr. Jeffery S. Becker
                                Mr. Timothy S. Durst
12                              Ms. Emily M. Felvey
                                Ms. Morgan G. Mayne
13                              Baker Botts, LLP
                                2001 Ross Avenue, Suite 900
14                              Dallas, Texas 75201

15                              Mr. Mark D. Siegmund
                                Law Firm of Walt Fair, PLLC
16                              1508 North Valley Mills Drive
                                Waco, Texas 76710

17

18   Court Reporter:            Ms. Lily Iva Reznik, CRR, RMR
                                501 West 5th Street, Suite 4153
19                              Austin, Texas 78701
                                (512)391-8792

20

21

22

23

24

25   Proceedings reported by computerized stenography,
     transcript produced by computer-aided transcription.
```

| | | |
|---|---|---|
| 09:02:02 | 1 | THE COURT:  Good morning. |
| 09:02:02 | 2 | I see Mr. Durst taking up my whole screen.  How |
| 09:02:07 | 3 | could I start a day better than that? |
| 09:02:14 | 4 | Suzanne, would you call the case, please. |
| 09:02:17 | 5 | THE CLERK:  Sure. |
| 09:02:17 | 6 | Markman hearing in Civil Actions 1:20-CV-717, |
| 09:02:22 | 7 | styled, Broadband iTV, Incorporated vs. AT & T Services, |
| 09:02:26 | 8 | Incorporated and AT & T Communications, LLC, and; Civil |
| 09:02:31 | 9 | Action 6:19-CV-716, styled, Broadband iTV, Incorporated |
| 09:02:37 | 10 | vs. DISH Network, LLC. |
| 09:02:41 | 11 | THE COURT:  If I could hear announcements.  Give |
| 09:02:43 | 12 | me one second to get my paper ready and write this down. |
| 09:02:46 | 13 | If I could hear announcements from counsel, please. |
| 09:02:51 | 14 | MR. HILL:  Good morning, your Honor. |
| 09:02:52 | 15 | Wesley Hill on behalf of the Plaintiff BBiTV. |
| 09:02:55 | 16 | And with me today on the meeting is Marc Belloli, David |
| 09:02:58 | 17 | Alberti and Rob Kramer, and we are ready for our Markman |
| 09:03:01 | 18 | hearing. |
| 09:03:02 | 19 | THE COURT:  Okay.  Good morning. |
| 09:03:05 | 20 | MR. DURST:  Judge, this is Tim Durst for AT & T |
| 09:03:08 | 21 | and DIRECTV.  And with me this morning, we have Tim Dyll. |
| 09:03:13 | 22 | Mr. Dyll is inhouse counsel with AT & T and assistant |
| 09:03:16 | 23 | vice-president there.  Also with me are my partners, Roger |
| 09:03:21 | 24 | Fulghum and Jeff Becker.  And, your Honor, also with us |
| 09:03:26 | 25 | this morning and arguing her first Markman, she's going to |

|       |    |                                                              |
|-------|----|--------------------------------------------------------------|
| 09:03:30 | 1  | take one of the terms that's teed up for this morning is   |
| 09:03:33 | 2  | my colleague, Morgan Mayne.  And finally, from Baker        |
| 09:03:38 | 3  | Botts, Emily Felvey.  Also on our team, your Honor, is      |
| 09:03:41 | 4  | Mark Siegmund, and Mark is us with this morning, as well.   |
| 09:03:44 | 5  | That's the AT & T and DIRECTV team.                         |
| 09:03:46 | 6  |          THE COURT:  Well, I hope you have given her        |
| 09:03:49 | 7  | adequate warning about how rough I can be on these calls.   |
| 09:03:53 | 8  | So there's that.  And now with Mr. Dyll on the line, I may  |
| 09:04:00 | 9  | have given him a hard time in the past about his -- where   |
| 09:04:05 | 10 | he went to college, but now that my wife is also an Aggie,  |
| 09:04:09 | 11 | that's been taken away from me.                             |
| 09:04:11 | 12 |          So welcome, Mr. Dyll, as to -- along with anyone   |
| 09:04:14 | 13 | else who is an inhouse person, I appreciate all of you all  |
| 09:04:18 | 14 | attending these calls.                                      |
| 09:04:23 | 15 |          MR. PALMER:  John Palmer on behalf of the DISH     |
| 09:04:27 | 16 | Defendants.  We have as lead counsel from Orrick, Clem      |
| 09:04:31 | 17 | Roberts, Alyssa Caridis and Will Melehani.  And our         |
| 09:04:38 | 18 | inhouse counsel today is Jim Hanft, H-A-N-F-T.  And Larry   |
| 09:04:45 | 19 | Katzin may be joining in later.                             |
| 09:04:46 | 20 |          THE COURT:  Very good.                             |
| 09:04:50 | 21 |          MR. ROBERTS:  Good morning, your Honor.            |
| 09:04:51 | 22 |          THE COURT:  Good morning.                          |
| 09:04:55 | 23 |          Is that everyone?                                  |
| 09:04:59 | 24 |          MR. PALMER:  I believe so, your Honor.             |
| 09:05:00 | 25 |          THE COURT:  Okay.  And I think I have this right   |

| | | |
|---|---|---|
| 09:05:04 | 1 | that DISH has a pending motion to transfer; is that right? |
| 09:05:10 | 2 | MR. ROBERTS:  That's right. |
| 09:05:11 | 3 | MR. PALMER:  That's right, your Honor. |
| 09:05:11 | 4 | THE COURT:  I wanted to let you all know, it's my |
| 09:05:13 | 5 | practice to try and get -- so far, I've managed to get |
| 09:05:18 | 6 | motions to transfer ruled on.  However, I delayed this |
| 09:05:22 | 7 | time because I knew I had the case before the Federal |
| 09:05:29 | 8 | Circuit, and I was hoping -- frankly, I was hoping it |
| 09:05:31 | 9 | would be resolved a little more quickly than it was.  But |
| 09:05:35 | 10 | I also was hoping -- I didn't want to -- I didn't want to |
| 09:05:38 | 11 | rule on this one and have that order come out and be |
| 09:05:41 | 12 | inconsistent with it.  So I wanted to explain the reason |
| 09:05:44 | 13 | that you all haven't had a ruling on your motion to |
| 09:05:47 | 14 | transfer. |
| 09:05:48 | 15 | Now that we have the ruling from the circuit, you |
| 09:05:52 | 16 | know, we have that information and we could take it into |
| 09:05:55 | 17 | account, and we plan to be working on the motion to |
| 09:05:59 | 18 | transfer in the very immediate future.  But I just wanted |
| 09:06:01 | 19 | the parties to know why we had not gotten that done in |
| 09:06:04 | 20 | advance of this hearing.  I usually try and do that.  So |
| 09:06:09 | 21 | it was -- I was hope -- I was waiting just to see what |
| 09:06:13 | 22 | happened and hoped to get some guidance; and now that we |
| 09:06:15 | 23 | have guidance, we'll get to work on that. |
| 09:06:18 | 24 | So that being said, let me pull up the first |
| 09:06:26 | 25 | claim term we are going to be taking up.  Give me one |

| | | |
|---|---|---|
| 09:06:43 | 1 | second.  My phone isn't syncing up, so I'm going to -- |
| 09:06:47 | 2 | I'll be right back. |
| 09:07:13 | 3 | Okay.  The first claim term is one that begins |
| 09:07:17 | 4 | with the words "wherein the respective."  And you have our |
| 09:07:22 | 5 | preliminary claim construction, which has been given. |
| 09:07:26 | 6 | I'll start with the plaintiff and ask the plaintiff what |
| 09:07:29 | 7 | their position is with regard to the Court's preliminary |
| 09:07:32 | 8 | construction. |
| 09:07:35 | 9 | MR. BELLOLI:  Oh, we agree with the Court's |
| 09:07:36 | 10 | tentative, your Honor. |
| 09:07:37 | 11 | THE COURT:  Okay.  I don't know who to start with |
| 09:07:39 | 12 | between the defendants.  If you all have decided to both |
| 09:07:42 | 13 | argue or one side argue, I'm happy to hear from anyone who |
| 09:07:45 | 14 | is going to discuss this claim term. |
| 09:07:55 | 15 | MR. DURST:  Roger, you're on mute. |
| 09:07:57 | 16 | MR. FULGHUM:  Okay.  Hey, let's hope that's my |
| 09:08:00 | 17 | only technical difficulty for today. |
| 09:08:01 | 18 | I'm going to handle this term for AT & T, then I |
| 09:08:03 | 19 | know Mr. Roberts is going to chime in, as well.  And I'm |
| 09:08:06 | 20 | going to try to share my screen now.  All right.  Let me |
| 09:08:17 | 21 | know if you all can see my screen and can hear me okay. |
| 09:08:23 | 22 | THE COURT:  I can for sure. |
| 09:08:26 | 23 | MR. FULGHUM:  All right.  Good deal. |
| 09:08:26 | 24 | So the term we're going to talk about is this |
| 09:08:28 | 25 | "wherein the respective video content" term, and we often |

09:08:31   1   called this term the "was uploaded" term to identify one

09:08:34   2   of the method steps that is actually occurring in this

09:08:39   3   term.  So I'll call it here the "was uploaded" term.  And

09:08:41   4   the issue here is whether this term is indefinite because

09:08:43   5   it's a mixed method and apparatus term.

09:08:46   6           And to answer this question, we just need to

09:08:49   7   answer a few fundamental questions.  Number one, for this

09:08:52   8   claim term, is it an apparatus claim?  The answer there is

09:08:56   9   yes.  For this claim term, does each of these claim terms

09:08:59   10  also include a stray method step?  The answer there is

09:09:04   11  yes.  And that leads us to the most important question for

09:09:07   12  this discussion:  Can a person of ordinary skill or a

09:09:11   13  juror determine infringement in this case?  And the answer

09:09:15   14  is no.  That's because we've got an apparatus claim with a

09:09:19   15  method step, and there's no way to evaluate whether that

09:09:21   16  apparatus infringes.  Now, let's walk through why that is.

09:09:24   17          I don't think anyone here disagrees about what

09:09:29   18  the law is here.  We see no disagreement in the papers.

09:09:33   19  And the law dates back to a case called IPXL from the

09:09:37   20  Federal Circuit.  IPXL has two forms.  We're going to talk

09:09:41   21  about both of them.  A claim is indefinite under IPXL if

09:09:44   22  there is an embedded method step that's performed by a

09:09:48   23  user.  And also, a claim can be indefinite if the claim

09:09:50   24  includes functional language not specifically tied to the

09:09:54   25  claim structure.  We're going to go through both of those

| | | |
|---|---|---|
| 09:09:56 | 1 | as part of this presentation and demonstrate how they |
| 09:09:58 | 2 | actually both apply in this instance. |
| 09:10:02 | 3 | All right.  Let's start with the preambles, |
| 09:10:06 | 4 | Judge.  Here, we have the preambles for the three claims. |
| 09:10:09 | 5 | We've got a set-top box, an internet-connected digital |
| 09:10:13 | 6 | device in the 026, and an interactive mobile application |
| 09:10:17 | 7 | in the 269.  And everyone agrees these highlighted words |
| 09:10:20 | 8 | are all limiting, so these are all -- these claims are all |
| 09:10:24 | 9 | drawn to apparatuses, all right? |
| 09:10:26 | 10 | Now, here's the wherein clause, the "was |
| 09:10:31 | 11 | uploaded" clause.  I'm showing the Judge, I'm showing the |
| 09:10:33 | 12 | Court an example of that clause in the claim 1 of the 388 |
| 09:10:37 | 13 | patent.  It is its own element.  You'll see right there |
| 09:10:41 | 14 | and it's pretty lengthy, and it appears in this apparatus |
| 09:10:45 | 15 | claim where we've highlighted.  Let's also look at where |
| 09:10:48 | 16 | it is in the other claims.  Here's that same clause with |
| 09:10:54 | 17 | just minor word differences in the 026 patent.  It's right |
| 09:10:57 | 18 | near the end as part of a series of wherein clauses.  And |
| 09:11:01 | 19 | now let's look at the 269, and here's the last element of |
| 09:11:04 | 20 | the claim.  Now, let's dig in a little bit more deeply and |
| 09:11:08 | 21 | look at how this claim reads. |
| 09:11:10 | 22 | Here's the entirety of the wherein clause, the |
| 09:11:12 | 23 | "was uploaded" clause in the 388 patent.  I'm just going |
| 09:11:16 | 24 | to highlight some of it.  We'll talk about it.  Here's the |
| 09:11:19 | 25 | first phrase:  Wherein the respective video content was |

| | | |
|---|---|---|
| 09:11:22 | 1 | uploaded to a web-based content management system by a |
| 09:11:27 | 2 | respective content provider device associated with a |
| 09:11:30 | 3 | respective video content provider via the internet.  That |
| 09:11:34 | 4 | tells us we've got a video content provider device that is |
| 09:11:39 | 5 | part of an upload from that device to a web-based content |
| 09:11:40 | 6 | management system, and that a video content provider is |
| 09:11:44 | 7 | involved.  So we've already got a third party.  We've got |
| 09:11:46 | 8 | two devices that are not the claimed device, and it says |
| 09:11:50 | 9 | that it was uploaded.  Something has happened in the past. |
| 09:11:55 | 10 | It was uploaded. |
| 09:11:57 | 11 | Let's go on.  There's a lot more in this claim. |
| 09:12:01 | 12 | For example, it goes on to say that the upload of the |
| 09:12:05 | 13 | video content occurs along with respective specified |
| 09:12:11 | 14 | metadata, including respective title information, all this |
| 09:12:13 | 15 | kind of metadata.  And then, look at here, it says, |
| 09:12:17 | 16 | designated by the respective video content provider. |
| 09:12:20 | 17 | Here's something else that the video content |
| 09:12:23 | 18 | provider is required to do.  Not only uploading video |
| 09:12:26 | 19 | content, we're uploading metadata, and the respective |
| 09:12:31 | 20 | video content provider has to designate it as part of an |
| 09:12:36 | 21 | apparatus claim.  And then, look at the last phrasing.  It |
| 09:12:38 | 22 | says, to specify a respective hierarchical location.  It |
| 09:12:43 | 23 | has a purpose.  The video content provider has to |
| 09:12:46 | 24 | designate it and specify it for a purpose.  All of these |
| 09:12:48 | 25 | things has to be done for this claim to be practiced. |

09:12:51  1  That is the plain and ordinary meaning of this claim.

09:12:54  2          This is an amazing 94 words specifying where the
09:13:01  3  video content has been, who put it there, what metadata
09:13:03  4  was included, who designated it, and the purpose.  That is
09:13:07  5  clearly a method step that is embedded in each of these
09:13:10  6  apparatus claims.

09:13:14  7          Now, we talked about the first prong -- by the
09:13:17  8  way, these are "or" prongs.  They're not -- you don't have
09:13:20  9  to satisfy both.  We talked about the first prong about a
09:13:23  10  pixel.  Here, we have a content provider who's heavily
09:13:27  11  involved, a third party.  Third party has to do these
09:13:29  12  things or there's no infringement.

09:13:32  13          And I don't think there's really any argument
09:13:35  14  here about all this.  I brought up -- this is from
09:13:39  15  Broadband iTV's tutorial, and they're talking about the
09:13:43  16  advantages of the invention, and they say in Broadband
09:13:47  17  iTV's approach, a content provider can upload
09:13:51  18  video-on-demand content.  Then they say the content
09:13:54  19  provider also uploads metadata.  So we've got content
09:13:57  20  providers taking action.  In a method claim, that's no
09:14:00  21  problem, but we've got an apparatus claim: that leads to
09:14:04  22  an indefiniteness ruling because you can't tell whether
09:14:06  23  that is infringed.

09:14:07  24          Now, let's move to the second prong about a
09:14:10  25  pixel, that's where you have a method step that's not

09:14:12  1  related to what is claimed.  The structure of what is

09:14:14  2  claimed.  The elements of what is claimed.  I want to draw

09:14:17  3  the Court's attention to the lower right-hand corner.  See

09:14:19  4  where it says digital set-top box 21 in red?  That is the

09:14:24  5  claimed device.  But the upload that is claimed is

09:14:29  6  occurring many steps upstream between these two items in

09:14:33  7  blue.  The enduser web browser, which is the video content

09:14:37  8  provider device, and the 40, which is the web-based

09:14:40  9  content management system.  That's where the step has to

09:14:43  10 occur.  Look how distant that is from what is claimed.  It

09:14:47  11 doesn't even touch it.  It's not even close.

09:14:50  12      This is a great example where you have functional

09:14:54  13 language.  By the way all, functional language is not bad.

09:14:57  14 If the functional range is tied to what's claimed, that's

09:15:00  15 fine.  If the functional language is not tied to what's

09:15:02  16 claimed, that's where we have a problem under IPXL because

09:15:06  17 it makes the claim impossible to know whether it is

09:15:08  18 infringed.

09:15:09  19      Broadband iTV's expert also agrees.  This is from

09:15:13  20 his expert report.  This is included in the briefing at

09:15:16  21 Exhibit 7, page 29, at docket No. 64, and look what he

09:15:20  22 says.  I want to draw the Court's attention to the word

09:15:23  23 "upload."  He says an upload occurs between enduser web

09:15:29  24 browser and the web-based content management system.

09:15:31  25 There is no doubt about what's going on here.  No doubt.

09:15:36  1   This is from Broadband iTV's own expert, using the same

09:15:41  2   exact figure.

09:15:47  3          So what we've got here, we've got a step that

09:15:49  4   must have been performed in the past, was performed by a

09:15:52  5   third party, involves two devices that are not claimed,

09:15:55  6   and includes a bushel full of functional requirements in

09:15:58  7   those 94 words.  This is an extreme example, and I would

09:16:04  8   say, Judge, it is the most extreme example of an IPXL term

09:16:08  9   that we see in the case law.  It actually testifies both

09:16:11  10  examples.

09:16:11  11         Okay.  If I could get -- I brought with me a

09:16:17  12  set-top box.  This is a U-verse set-top box.  This is

09:16:22  13  actually an accused device, as best I could tell, and I

09:16:25  14  brought in from my home collection of set-top boxes.

09:16:30  15  Judge, if I were to offer to sell you this set-top box,

09:16:34  16  there is no way that you could know whether it infringes

09:16:37  17  the 388, the 026, or the 269 patent because you would have

09:16:43  18  to evaluate whether those method steps occurred in the

09:16:46  19  past.  There's no way around it.  You would never know.

09:16:49  20         Put yourself in the shoes of manufacturers like

09:16:53  21  Arris, Cisco or Motorola, the historical manufacturers of

09:16:56  22  set-top box devices.  How does any of them know whether a

09:16:59  23  set-top box they sell infringes?  They just can't because

09:17:03  24  it depends on if the video content provider did the

09:17:08  25  upload.

09:17:09   1          And in the first bullet, did he do it along with

09:17:11   2   the metadata?  Let's suppose he did the upload, but then,

09:17:14   3   the metadata was not sent along with.  Let's say it was

09:17:18   4   uploaded as part of a different batch at some later time.

09:17:21   5   Would that set-top box infringe?  Who knows.  Who can

09:17:25   6   tell.  No one.  The juror can't.  What if the content

09:17:29   7   provider did not designate the metadata?  What if the

09:17:33   8   designation was done by the cable provider?  Would that

09:17:36   9   set-top box infringe?  Who knows.  Nobody knows.  The

09:17:40   10  set-top box provider cannot know.

09:17:42   11          But let's take another example.  So on the screen

09:17:46   12  are box tops from two cinematic masterpieces of American

09:17:52   13  cinema.  Let's suppose that for the Godfather, the video

09:17:58   14  content was not transferred along with the metadata.

09:18:02   15  Let's say that the metadata for the Godfather was sent

09:18:05   16  later on.  Would that infringe?  Would that set-top box

09:18:09   17  infringe?  Again, a juror cannot know.

09:18:12   18          And now look at -- let's talk about Dumb And

09:18:14   19  Dumber.  What if the content provider did not designate

09:18:19   20  the metadata for the Dumb And Dumber, but the set-top box

09:18:21   21  provider did, again, we cannot evaluate whether that

09:18:23   22  set-top box infringes.  We just don't know.  And also,

09:18:27   23  these two movies are old.  They show them on cable TV all

09:18:32   24  the time.  But what if the video content for these, what

09:18:37   25  if the designation of metadata for these occurred before

09:18:42  1   the patent issued?

09:18:45  2          One patent in this case issued May 7th -- May

09:18:48  3   9th, 2017; another issued in December 2019.  How are we to

09:18:55  4   police that issue, Judge?  It's just impossible because on

09:18:58  5   a method claim, all the steps have to be performed

09:19:01  6   post-issuance.  What if this upload step and all of its

09:19:05  7   requirements was not done post-issuance?  What if it was

09:19:09  8   also done outside the country?  For a method step, every

09:19:12  9   step has to be performed in the United States.  These are

09:19:16  10  just all the problems that are introduced by claims like

09:19:18  11  these.

09:19:20  12         Now, Broadband iTV has a few issues, a few

09:19:25  13  arguments, I want to just touch through some of them.  One

09:19:28  14  of them is that the claims are system claims.  Now, I

09:19:33  15  don't know legally what a system claim is, and I don't

09:19:36  16  think it has any special legal meaning.  But I would also

09:19:40  17  submit these are not system claims.

09:19:43  18         If you look at the claim, they're drawn to a

09:19:45  19  device, and I just don't equate that to a system and it

09:19:49  20  doesn't make a difference.  If you have a system claim

09:19:52  21  which is also an apparatus claim as a stray method step or

09:19:56  22  requires work done by a third party, that's indefinite

09:19:59  23  under IPXL.

09:20:04  24         Also, here, we have an argument for the 388 that

09:20:11  25  somehow, the claim 1 in the 388 is exempt from IPXL

09:20:17  1  because it's a Beauregard claim.  Beauregard claims are

09:20:21  2  drawn, as the Federal Circuit says in CyberSource, to a

09:20:24  3  claim to a computer-readable medium.  That is just a

09:20:27  4  storage medium.  But that doesn't exempt anything from

09:20:30  5  IPXL.  In fact, if you have a Beauregard claim that has a

09:20:36  6  stray method step or requires action by a third party,

09:20:39  7  that's just as indefinite under IPXL as any other claim.

09:20:42  8          And by the way, Judge, these claims are not drawn

09:20:46  9  to -- these are not Beauregard claims.  I think that's

09:20:49  10  just very obvious.  They're not drawn to a

09:20:52  11  computer-readable medium, they're drawn to a set-top box.

09:20:55  12  And I'll also point out, I think we're going to hear some

09:20:58  13  Beauregard argument from Broadband iTV in rebuttal, and

09:21:00  14  they cite to this case from the Eastern District called

09:21:04  15  Uniloc.  And their point of law in that case is that a

09:21:09  16  Beauregard claim is one drawn to a computer system, and

09:21:13  17  you're going to see that slide.  And I want to pull up the

09:21:15  18  actual quotation from that case and just show it on the

09:21:18  19  screen.

09:21:19  20          Here's Uniloc.  This is a case we're going to

09:21:25  21  see, and this does not stand for the rule that any

09:21:28  22  computer system is a Beauregard claim.  And I'm going to

09:21:33  23  jump ahead to the highlighted portion.  Let me just read

09:21:35  24  it.  A Beauregard claim is a claim to a computer-readable

09:21:38  25  medium containing program instructions for a computer to

09:21:43 1 perform a particular process, and the citation is the

09:21:45 2 CyberSource.  Right there, just like we cite.  There's no

09:21:50 3 argument here, and it wouldn't matter, anyway, if you've

09:21:53 4 got a Beauregard claim with a stray method step, it's

09:21:56 5 still invalid.

09:21:57 6         I also want to talk in advance a little bit about

09:21:59 7 some of the citations you're going to see, Judge, from

09:22:02 8 Broadband iTV in their rebuttal.  They're going to point

09:22:06 9 out several cases.  Their lead case is a case called

09:22:09 10 MasterMine.  MasterMine.  And I want to show MasterMine,

09:22:12 11 and I want to talk about why MasterMine applies or doesn't

09:22:16 12 apply in this case.

09:22:17 13         So here's MasterMine.  MasterMine is a Federal

09:22:22 14 Circuit case -- and I've put it on the screen if you can

09:22:24 15 see it -- from 2017.  And I want to jump ahead to the

09:22:29 16 claim language in MasterMine.  So I've highlighted the

09:22:32 17 MasterMine claim language.  This is Broadband iTV's lead

09:22:36 18 case.  Let's look at how it reads.  You have a system

09:22:41 19 comprising, a reporting module, wherein the reporting

09:22:45 20 module presents, receives and generates.  There is no

09:22:50 21 problem with that language.  There is no problem with

09:22:53 22 using functional language so long as, Judge, the

09:22:57 23 functional language is tied to the claimed device,

09:23:01 24 structure or apparatus.  That is not what we have here.

09:23:06 25         That "was uploaded" clause as we showed with

| | | |
|---|---|---|
| 09:23:09 | 1 | figure 2A and the blue and the red, that "was uploaded" |
| 09:23:14 | 2 | clause occurs way upstream, five steps away, and it has |
| 09:23:19 | 3 | nothing to do, nothing to do with the claimed device. |
| 09:23:23 | 4 | MasterMine is a good example of claiming that works and is |
| 09:23:27 | 5 | not subject to IPXL, but that's not our case, Judge. |
| 09:23:31 | 6 | Completely different. |
| 09:23:32 | 7 | Okay.  Let me continue.  I promise I'm almost |
| 09:23:41 | 8 | done.  Now, we hear a lot of arguments about capability |
| 09:23:52 | 9 | from Broadband iTV.  I think that's going to be the root |
| 09:23:56 | 10 | of their argument in response.  Capability.  You know, if |
| 09:23:58 | 11 | you read these claims, you'll understand these are not |
| 09:24:00 | 12 | capability claims.  These are claims drawn to what has to |
| 09:24:04 | 13 | have happened.  This is not a capability of the device. |
| 09:24:06 | 14 | The word "capability" is not used, and that's the plain |
| 09:24:12 | 15 | meaning.  That is the plain meaning of these claims. |
| 09:24:15 | 16 | There is no reading -- there is no reasonable reading here |
| 09:24:17 | 17 | these are capability claims. |
| 09:24:18 | 18 | And I know my colleague, Mr. Roberts, is going to |
| 09:24:21 | 19 | talk about that precise issue in more detail and I'll |
| 09:24:24 | 20 | allow him to do that.  We had a battle of the analogies in |
| 09:24:29 | 21 | our briefing.  Here's my favorite analogy and I not only |
| 09:24:35 | 22 | show the chair here, but I also show the claim language |
| 09:24:38 | 23 | because that's important.  Claim language is what controls |
| 09:24:41 | 24 | here, right?  So we have a chair, comprising a wooden base |
| 09:24:45 | 25 | coupled to four wooden legs.  And here's our wherein |

```
09:24:48   1   clause.  Wherein the wood for the four legs was shipped
09:24:50   2   from warehouse A to warehouse B by AAA Movers.
09:24:55   3         You cannot look at a chair in the courtroom and
09:24:58   4   know whether that chair infringes that claim.  You cannot
09:25:01   5   look at a set-top box and interconnect connected digital
09:25:04   6   device or an interactive mobile application to know
09:25:06   7   whether that upload occurred.  You just can't do it,
09:25:09   8   Judge.  This analogy is directly on point.  We cannot know
09:25:12   9   whether that transfer was made in the past between those
09:25:14  10   two devices.
09:25:15  11         So to sum up, a juror, person of ordinary skill
09:25:20  12   in the art, no one can answer these questions.  Did the
09:25:24  13   video content travel from the content provider, the
09:25:26  14   web-based content management service?  Was a video content
09:25:31  15   provider involved?  Was metadata uploaded along with video
09:25:35  16   content?  Did the video content provider designate?  Did
09:25:39  17   the upload occur post-issuance and did it occur in the
09:25:42  18   United States?
09:25:43  19         Those are all problems with this claim, and it's
09:25:46  20   all because we have an apparatus claim with an extra
09:25:51  21   method step embedded in that claim.  So what we would
09:25:54  22   suggest, Judge, respectfully, is that the Court reconsider
09:25:57  23   its tentative in this case, take this matter under
09:26:01  24   advisement as needed, and find that these claims are
09:26:05  25   indefinite under the IPXL rule.  And I'll conclude my
```

09:26:10  1  comments there and yield the microphone to Mr. Roberts

09:26:13  2  unless the Court has questions.

09:26:19  3          Hey, Judge, you may be on mute.

09:26:21  4          THE COURT:  That's probably the greatest Markman

09:26:24  5  argument anyone from Dickinson, Texas has ever made.  I'm

09:26:28  6  going to --

09:26:29  7          MR. FULGHUM:  You know, Judge, it may be the only

09:26:31  8  one anyone from Dickinson, Texas ever made.

09:26:33  9          THE COURT:  Well, if you are from the big city

09:26:35 10  like La Marque like another friend of mine, then maybe

09:26:39 11  there will be some competition.

09:26:43 12          MR. FULGHUM:  That's true, Judge.  Galveston

09:26:46 13  County, Judge, we're all in it together down there.

09:26:48 14          THE COURT:  I'm happy to hear from Mr. Roberts.

09:26:52 15          MR. ROBERTS:  Thank you so much, your Honor.  Mr.

09:26:55 16  Melehani is going to share his screen for the slides.

09:27:15 17          THE COURT:  Okay.

09:27:15 18          MR. ROBERTS:  Slide 8, please, Will.

09:27:50 19          So, your Honor, I want to start in the same place

09:27:52 20  my co-counsel did with looking at claim 9.  And I want to

09:27:57 21  emphasis that claim 9 actually has within it this wherein

09:28:01 22  clause, has nine distinct requirements, and we've

09:28:06 23  color-coded them here in the rainbow.  It not only

09:28:10 24  requires that the video content was uploaded, but it

09:28:12 25  requires where it was uploaded to, what device uploaded

09:28:16  1   it, who that device was associated with, the channel in

09:28:23  2   which that device uploaded the content, the format in

09:28:28  3   which that digital video was uploaded, what metadata was

09:28:33  4   included with that upload, who designated that metadata,

09:28:40  5   and the purpose for which that metadata was designated.

09:28:44  6           And when Mr. Fulghum says that you can't know

09:28:49  7   whether or not somebody infringes, I just want to add a

09:28:51  8   slight modification to that.  You can't know whether

09:28:53  9   someone infringes without looking at whether these nine

09:28:57 10   requirements are met, meaning you can't know from looking

09:29:00 11   at the set-top box itself.  You have to look at whether or

09:29:05 12   not there was data that was, in fact, uploaded, whether it

09:29:10 13   was uploaded to a web-based content management system, who

09:29:13 14   uploaded it, how it was uploaded, what metadata went along

09:29:17 15   with that upload, and why that third party designated the

09:29:21 16   metadata.

09:29:22 17           And I want to pause on that last requirement

09:29:24 18   because this is, I think, real unique in the case law.  In

09:29:28 19   the case law, what we see is the Court saying where you

09:29:34 20   have a third party or even a user of the system performing

09:29:38 21   a method, that's sufficient to justify or to invoke IPXL

09:29:43 22   and to create invalidity.  Here, we have to look not only

09:29:48 23   at whether some third party took an action, but why they

09:29:52 24   took the action.

09:29:54 25           If you look at the pink language, it has to have

09:29:58  1  been designated by the video content provider for a

09:30:01  2  purpose:  To specify.  This isn't language about how that

09:30:06  3  was used.  This isn't about how it's consumed by the

09:30:10  4  system.  How the set-top box makes use of it.  This is the

09:30:14  5  purpose for which it was designated.  Even if it's used

09:30:19  6  for this purpose, if it wasn't designated for this

09:30:22  7  purpose, if it wasn't designated to specify, this claim

09:30:27  8  limitation wouldn't be met.

09:30:29  9       And so, when Mr. Fulghum says you can't know,

09:30:31  10  what he means and what we would submit we mean is, you

09:30:34  11  can't know without looking at both the actions of a third

09:30:39  12  party, the equipment that third party used, and the intent

09:30:44  13  of that third party, why they did what they did.  And that

09:30:49  14  is really extraordinary relative to the case law.

09:30:52  15       Next slide, please.  This is from IPXL itself,

09:30:59  16  and the Court in that case found that the claim before it

09:31:03  17  was invalid because it was unclear whether infringement

09:31:08  18  occurs when you create the system or whether infringement

09:31:12  19  occurs when the user actually uses the system.  And here,

09:31:20  20  we also have that same problem.  In order to get

09:31:26  21  infringement, I believe, you have to look at whether or

09:31:29  22  not the data was uploaded.  It's not sufficient to merely

09:31:33  23  look at whether or not we created the system, whether we

09:31:37  24  created a set-top box, whether we sold a set-top box.

09:31:41  25       You have to look at whether some user, this

09:31:47   1   content provider actually uploaded data according to the

09:31:51   2   nine requirements of the wherein clause.  And if you look

09:31:54   3   at the bottom quote here from IPXL, it says, a

09:31:57   4   manufacturer or seller of the claimed apparatus would not

09:32:00   5   know from the claim whether it might also be liable for

09:32:04   6   contributory infringement because a buyer or user later

09:32:08   7   performs the claimed method.  And here, we have the same

09:32:11   8   problem.

09:32:13   9        How are we going to know from this claim whether

09:32:17   10   we are liable for contributory infringement at the time

09:32:19   11   that we sell it?  Our liability appears from the claim to

09:32:23   12   turn on whether or not these uploading steps happened in

09:32:29   13   the matter with the equipment and for the purpose recited

09:32:34   14   in the wherein clause.  You have to have that information

09:32:39   15   in order to know.  And that goes well beyond the case in

09:32:42   16   IPXL.  I know that in IPXL, it was a user of the claimed

09:32:46   17   apparatus.  And here, the person performing the upload is

09:32:50   18   not a user of the claimed apparatus, it's an entirely

09:32:54   19   separate third party; and you not only need to know what

09:32:58   20   they did, you need to know why they did it.

09:33:01   21        And when Mr. Fulghum says this is the most

09:33:05   22   extraordinary IPXL claim, this is, I believe, what he's

09:33:08   23   referring to because it goes so far beyond the problems

09:33:11   24   that were present even in IPXL.  Next slide.  This is

09:33:18   25   Katz.  Katz is another Federal Circuit claim finding an

09:33:23  1   IPXL problem.  And this is a discussion of the plaintiff's

09:33:28  2   attempt to distinguish IPXL.  And as the Court said, Katz

09:33:33  3   seeks to distinguish IPXL on the ground that the term

09:33:37  4   "wherein," which is the same term we have here, does not

09:33:41  5   signify a method step but, instead, defines a functional

09:33:45  6   capability.  And this is Mr. Alberti's exact point.  This

09:33:50  7   is what the plaintiffs are arguing for them.

09:33:51  8         We disagree and uphold the district court's

09:33:55  9   ruling.  Like the language used in the claim at -- those

09:33:58  10  in IPXL, the language used in Katz's claim, wherein

09:34:03  11  callers digitally enter data and wherein callers provide

09:34:05  12  data, is directed to user actions, not system

09:34:08  13  capabilities.

09:34:09  14        And the same thing is true here, if we can go

09:34:13  15  back to slide 8, Will, please.  This is not directed to

09:34:19  16  system capabilities.  There's nothing in this language

09:34:23  17  talking about the capability of the set-top box.  This has

09:34:28  18  nothing to do with the set-top box.  It doesn't talk about

09:34:31  19  what the set-top box does.  It talks about how data passes

09:34:36  20  between the apparatus used for uploading and the WBCMS.

09:34:43  21  It's not talking about that part of the system at all.

09:34:46  22  It's talking about a totally different functional

09:34:50  23  requirement that happened in the past in a non-claimed

09:34:56  24  apparatus with a third party, not even a user of the

09:35:01  25  set-top box.

09:35:02  1          It's so far beyond Katz, it's so far beyond IPXL

09:35:07  2   that it really is extraordinary.  If we could go to slide

09:35:11  3   11, please.  So I want to hit on this capability point one

09:35:17  4   more time because I think it's really the core of their

09:35:20  5   argument.  And I want to make three points about the

09:35:24  6   capability.  The first is that there's no capability

09:35:26  7   language in the claim.  The second is, all of the cases

09:35:30  8   that they rely on, MasterMine, UltimatePointer, Power

09:35:37  9   Integrations, they're all -- were talking about the

09:35:42  10  capability or functionality of the actual claimed system.

09:35:47  11         Here, your Honor, we're not talking about

09:35:50  12  functions of the claimed set-top box or mobile

09:35:55  13  application.  And if you look at figure 2, which I have

09:35:57  14  here down at the bottom right-hand corner of the slide,

09:36:01  15  that's where the digital set-top box is in this invention,

09:36:07  16  right?  It receives content from the VOD content delivery

09:36:12  17  system 44.  That's where the reception is happening, at

09:36:16  18  the digital set-top box.  So if we're talking about a

09:36:19  19  capability of this box, you would expect some language

09:36:24  20  about the box.

09:36:26  21         The wherein clause contains no language about the

09:36:30  22  box at all.  It talks about the data that is uploaded.  It

09:36:36  23  talks about who uploaded it.  It talks about the channel

09:36:40  24  and method of upload.  It talks about the purpose of the

09:36:43  25  upload, but it says nothing about the box being programmed

09:36:47 1 to perform.  It says nothing about the reception by the

09:36:51 2 box.  It's about this blue link up here at the top.  And

09:36:57 3 so, my point is, it is not talking about the capabilities

09:37:00 4 of the box because it's not talking about the box at all.

09:37:06 5 It's talking about what happened in the upload step.

09:37:10 6        And, your Honor, we will get to this a little bit

09:37:12 7 later, but -- well, perhaps I oughta show this now.  Will,

09:37:20 8 could we have slide 15, please?  So this is the inventor's

09:37:27 9 affidavit.  And we're going to get to this enclosed

09:37:28 10 system, but I just want to highlight it for the Court.

09:37:31 11 And the inventor affidavit in the 997 -- by the way, your

09:37:34 12 Honor, the 997 patent is the grandfather for this entire

09:37:39 13 set of claims.  So it's the first patent application.

09:37:42 14        Okay.  And this is what the inventor said:  I

09:37:46 15 submit it was not obvious from what was known in either

09:37:50 16 the fledgling internet-TV entries or the cable TV industry

09:37:56 17 at the time to provide a method for uploading video

09:38:00 18 content via the open internet into cable TV's

09:38:04 19 closed-content environment for viewing on TV equipment

09:38:08 20 using input from TV remote controls.  There are two

09:38:09 21 portions to this invention.  It is the combining of

09:38:10 22 internet upload with the closed-cable system distribution,

09:38:16 23 A and B together, it is the combination of those two

09:38:20 24 things that is allegedly novel about this invention.

09:38:24 25        And if you go back to the diagram we had in slide

09:38:28  1   11, please, that's the two components right here.  The

09:38:35  2   upload via the internet and the download via the

09:38:41  3   closed-cable system.  And what we're talking about here is

09:38:43  4   how the upload happens.  How the upload via the internet

09:38:49  5   happens.  Not how the download happens.

09:38:52  6           And the inventor and the applicant repeatedly

09:38:56  7   stressed that their invention lay in coupling those two

09:38:59  8   things together, and the wherein clause here is describing

09:39:04  9   the first part, how the upload happens.  It is not

09:39:09  10  describing how the download happens.  It is not describing

09:39:12  11  the capabilities of the set-top box.  It is marrying the

09:39:16  12  two things together.  That's where the application said

09:39:19  13  this was invented, and that is very important for

09:39:23  14  understanding it is not the capability of the set-top box.

09:39:27  15          This is a portion of what the applicant thought

09:39:30  16  was inventive about what he did, how this upload happens.

09:39:35  17  It's one of two prongs, the joining of which together, he

09:39:38  18  regarded as his invention.  And the last point I'll make

09:39:46  19  about capability, your Honor, is that if you read this

09:39:49  20  upload step and these upload requirements as merely a

09:39:54  21  capability of the digital set-top box, you're vitiating

09:39:58  22  the requirement and here's why.

09:40:01  23          I have up here in the upper left-hand corner, the

09:40:04  24  first limitation of the claim from the 388, and it calls

09:40:09  25  for receiving at the set-top box via a closed system from

09:40:13   1   a video-on-demand content delivery system, and then, it

09:40:18   2   talks about the information you receive.  And there's

09:40:20   3   other limitations in this claim that also talk about that,

09:40:22   4   but this one, I will use.

09:40:24   5          Once we have specified, as we have down here at

09:40:27   6   the bottom, that the digital set-top box 21 can receive

09:40:33   7   content from the VOD contact delivery system, we've

09:40:37   8   already specified that it can receive content, regardless

09:40:41   9   of how it got to the VOD content delivery system.  The

09:40:46   10  path dependency before the VOD content delivery system 44

09:40:50   11  is irrelevant.  The capability already exists.  And let me

09:40:53   12  give you an analogy.

09:40:55   13         If I say, your Honor, that you can receive a

09:40:58   14  brief from me via ECF, right?  I say you receive briefs

09:41:04   15  from Mr. Roberts via ECF, that already said that you can

09:41:09   16  receive that brief, regardless of whether I uploaded it

09:41:12   17  onto my laptop from a thumb drive, whether Mr. Melehani

09:41:17   18  e-mailed it to me, whether Ms. Caridis wrote the brief or

09:41:22   19  gave it to me because she asked me to file it because I

09:41:24   20  was going to be up late, all of that stuff is already

09:41:29   21  baked in.

09:41:30   22         When you've specified the general that the

09:41:35   23  set-top box receives information or can receive

09:41:38   24  information from the VOD content delivery system, you've

09:41:40   25  already specified that all of these other things already

09:41:44  1  can happen automatically.  There's no additional weight

09:41:48  2  given to it.

09:41:49  3          So when they say, oh, all we're saying here is

09:41:52  4  how you can receive data at the set-top box when we talk

09:41:55  5  about the upload, it just has to be able to receive data

09:41:58  6  that was previously uploaded.  You're reading it out of

09:42:01  7  the claim because anything that can receive data from the

09:42:05  8  VOD content delivery system could receive the data if it

09:42:08  9  arrived at the VOD content delivery system, regardless of

09:42:11  10  how it arrived.

09:42:12  11          And what the wherein clause requires is, it

09:42:16  12  requires much more than that.  It requires looking, as we

09:42:19  13  said, at the purpose for which the metadata was uploaded,

09:42:23  14  who it was uploaded by, how it was uploaded, the channel

09:42:26  15  in which it was uploaded, the device from which it was

09:42:28  16  uploaded.  You have to know all of that information in

09:42:31  17  order to know whether infringement has occurred, and that

09:42:34  18  is completely different from all of the cases that they

09:42:38  19  are talking about.

09:42:40  20          And let me just give you, your Honor, if I may,

09:42:42  21  an example from the case law, right?  If you look at

09:42:49  22  MasterMine, which is their lead case, the case Mr. Fulghum

09:42:54  23  put it up, says a system comprising a reporting module

09:42:58  24  installed within the CRM software application wherein the

09:43:02  25  reporting module installed within the CRM software

09:43:06  1   application presents a set of user-selectable database
09:43:10  2   fields.  That is language talking about what the reporting
09:43:15  3   module within the claimed apparatus does.  The
09:43:21  4   functionality of the claimed apparatus.
09:43:23  5        This is not talking about the functionality of
09:43:25  6   the claimed apparatus.  This is talking about what
09:43:29  7   happened in the past between unclaimed apparatuses by a
09:43:35  8   user for a purpose.  And that's just very, very different
09:43:40  9   from all of the cases that talk about capability.  And
09:43:45  10  with that, your Honor, I'll turn it over to opposing
09:43:47  11  counsel.
09:43:54  12        MR. BELLOLI:  Good morning, your Honor.  Marc
09:43:56  13  Belloli for plaintiff.
09:43:56  14        I want to start by asking if you have any
09:43:59  15  questions first.  If not, I can share my screen and jump
09:44:00  16  in.  Sorry, your Honor, you're still on mute.
09:44:04  17        THE COURT:  I guess we will need -- will need
09:44:07  18  you, if you're going to rely on it being a Beauregard
09:44:11  19  claim, to explain why that's so because there were not
09:44:14  20  specific words used.  And also, I want you to focus on the
09:44:22  21  issues regarding uploading, you know, whether it's an
09:44:27  22  attribute of the video content or a method.  But my guess
09:44:32  23  is, everything I want to know, you're planning on telling
09:44:36  24  me.  So if there's anything you don't hit on, I'll ask
09:44:39  25  you.

09:44:39  1          MR. BELLOLI:  Perfect.  Thank you, your Honor.

09:44:49  2  Sorry.  One second, your Honor.  All right.  Thank you,

09:45:00  3  your Honor.

09:45:00  4          Now, we've got claim 1 of the 388 patent up.  I'm

09:45:04  5  not going to focus on the Beauregard vs. Knox (phonetic)

09:45:07  6  because ultimately, I don't think it matters.  And I

09:45:08  7  think, as we said in the reply, it's besides the point for

09:45:11  8  determining whether there's an improper method step

09:45:15  9  injected within these claims.  So let's pull back.  These

09:45:17  10  claims are --

09:45:18  11          THE COURT:  Well, if it doesn't really matter to

09:45:20  12  your argument, then I'm -- we don't need to spend a lot of

09:45:22  13  time on it.

09:45:24  14          MR. BELLOLI:  Yeah.  I'll keep it to why there's

09:45:26  15  not an improper method step put in these claims.

09:45:29  16          THE COURT:  That might be better.

09:45:31  17          MR. BELLOLI:  Perfect.

09:45:32  18          So these claims are about set-top boxes.  They're

09:45:34  19  an internet-connected device, which is a set-top box, and

09:45:39  20  they're configured to or programmed to receive and use a

09:45:42  21  certain type of data, a specific type of data.  So that's

09:45:46  22  the environment in which we're talking about.  We have a

09:45:50  23  set-top box that's going to receive video content and

09:45:54  24  metadata about that content from somewhere to build this

09:45:58  25  electronic program guide, this highly specific electronic

09:46:01  1   program guide that makes it easier for viewers to drill

09:46:04  2   down, navigate and locate the kind of information and

09:46:07  3   titles they want.

09:46:08  4        So if we look at claim 1 of the 388 patent, here

09:46:11  5   you have a set-top box that's programmed to perform

09:46:15  6   certain steps.  The first step is step (a), receiving, and

09:46:19  7   you receive certain metadata that's used to generate this

09:46:24  8   content menu.  And we'll step over the wherein clause for

09:46:26  9   a second.  In steps (b) and (c) that that menu and that

09:46:31  10  metadata that's used for the user to drill down, find what

09:46:35  11  it wants.  And then, step (d) is receiving that video

09:46:39  12  content.  So this is what the set-top box is doing.

09:46:43  13       Now, let's go back to the wherein clause.  The

09:46:46  14  wherein clause is that what's being received, this is

09:46:50  15  video content and specific metadata, and it's telling you

09:46:53  16  where it was received from.  It's not an affirmative

09:46:57  17  method step, it's just saying, is this set-top box

09:47:01  18  programmed to receive video content and metadata that was

09:47:07  19  uploaded to this web-based system and pulled down by the

09:47:12  20  set-top box for use?

09:47:14  21       Here's another claim.  Give me one second, your

09:47:22  22  Honor.  I need to change slides here.  Going back to the

09:47:33  23  026 patent, same kind of thing.  We have here an

09:47:39  24  internet-connected device in the first limitation after

09:47:41  25  the preamble, and that's the set-top box.  It's configured

09:47:47  1  to obtain and present this electronic program guide using

09:47:50  2  a bunch of metadata.  That's the long limitation right

09:47:54  3  after the preamble.

09:47:58  4       At the end of the claim, it talks about how it

09:48:00  5  also receives the video.  Then there's the wherein clause

09:48:01  6  that defendants want to assail, and all it's saying is,

09:48:05  7  again, that this internet-connected device is configured

09:48:09  8  to obtain and present data from this other site.

09:48:14  9       So let me give you an analogy.  I think it's

09:48:18  10  highly relevant to the HTC case, which I actually think

09:48:20  11  was the most apt case of all the ones that were cited by

09:48:23  12  either party.  Let's say you had a claim on a cellphone

09:48:29  13  and that phone -- you're not the claiming the network, but

09:48:32  14  you're claiming the phone and you're saying that phone is

09:48:35  15  configured to receive 4G signals that are based on a text

09:48:44  16  message a user sent.  There's no method step there.

09:48:45  17       You're merely claiming the functionality of the

09:48:48  18  phone that it can take this complex 4G signal, and you

09:48:52  19  could have all kinds of limitations about what that signal

09:48:56  20  is and that it came from a user.  That's not a method

09:48:59  21  step, it's just a capability of the phone.  Just like

09:49:02  22  here, we have a set-top box that's configured to receive a

09:49:07  23  specific kind of metadata and a specific kind of video

09:49:11  24  from a third -- from a third place.  That's all it is.

09:49:16  25       So all that's being claimed here is the set-top

09:49:19  1   box and how do you determine infringement?  Is it

09:49:21  2   configured to be able to receive, use, process that data?

09:49:26  3   And if it is, there's infringement.  And honestly, that's

09:49:33  4   the crux of it.

09:49:34  5          If you have these set-top boxes, can they receive

09:49:39  6   this metadata, the specific kind of metadata?  And this

09:49:41  7   metadata is needed to create these templatized electronic

09:49:46  8   program guides.  So can this internet-connected device

09:49:49  9   receive and make use of this in accord with the other

09:49:53  10  limitations of the claim?  And can it receive it from a

09:49:55  11  web-based content management system in accord with these

09:49:59  12  wherein clauses?  And if so, you have an

09:50:01  13  internet-connected device, a set-top box, whatever

09:50:04  14  structure that has -- that performs all the functionality

09:50:10  15  of the claim.

09:50:10  16         So merely noting where in the environment you're

09:50:14  17  going to get the data from and what that data is going to

09:50:18  18  be that your claimed system's going to use does not inject

09:50:22  19  affirmative method step.  It just says, hey, look, this is

09:50:27  20  the data.  This is the data structure that we're going to

09:50:30  21  use to create this templatized video-on-demand display on

09:50:34  22  the claimed set-top box.

09:50:36  23         So you're effectively claiming what -- or saying

09:50:41  24  what the input is that's going to go in.  Like the analogy

09:50:45  25  we gave in our briefing where you have a system for

09:50:49 1   pressing pennies that you see at a carnival and it's a

09:50:53 2   system for pressing pennies done by the U.S. Mint, so it's

09:50:55 3   designed to take that penny and press it.  It doesn't mean

09:50:58 4   that we -- you know, you're claiming the step of the U.S.

09:51:03 5   Mint, minting that penny.

09:51:10 6        If your Honor has any questions.  I mean, that

09:51:12 7   really is the crux of it.  You're claiming, you know, what

09:51:16 8   this system is designed to make use of, to receive, and to

09:51:22 9   be used in the functionality of creating this templatized

09:51:28 10  video-on-demand display.

09:51:29 11       THE COURT:  What do you say in response -- and I

09:51:34 12  -- to me, it seems to me like something the experts will

09:51:37 13  have to take up on infringement.

09:51:38 14       What do you say in response to Mr. Fulghum's list

09:51:43 15  of horribles that all the questions he said that can't be

09:51:47 16  answered with respect to what DISH or the other, you know,

09:51:53 17  defendants -- you know, AT & T do here?

09:51:56 18       MR. BELLOLI:  It doesn't matter when it was

09:51:58 19  uploaded.  I mean, that's kind of the thing.  Why does it

09:52:01 20  matter when it was uploaded?  Because we're not claiming

09:52:03 21  when something was uploaded.  We're claiming a set-top box

09:52:07 22  that makes use of certain data -- that pulls down that

09:52:12 23  data and uses it to create this video-on-demand display.

09:52:17 24  It's a digital component -- a digital input is really what

09:52:20 25  it is.

09:52:21 1        So when that content, when that video was

09:52:23 2 uploaded, doesn't matter.  I mean, you could show a Sean

09:52:29 3 Connery video from the '50s, as long as it was uploaded --

09:52:33 4 you know, if the content was uploaded to a web-based

09:52:36 5 content management system and this set-top box can pull

09:52:38 6 that down and get it.

09:52:42 7        THE COURT:  Okay.  If I could have a brief

09:52:45 8 response from counsel for either of the defendants.

09:52:52 9        MR. FULGHUM:  Thank you, your Honor.  This is

09:52:53 10 Roger Fulghum.

09:52:54 11        I'll make a few points.  And what I'd like to do

09:52:56 12 is share my screen again.  And if Mr. Belloli would --

09:53:04 13 thank you very much.  It looks like Mr. Belloli's still

09:53:07 14 sharing.

09:53:09 15        MR. BELLOLI:  Yeah.  Sorry.  Give me one second.

09:53:22 16        MR. FULGHUM:  All right.  And just for the sake

09:53:24 17 of guiding this short discussion, Judge, and I promise, I

09:53:27 18 will not be long on this, let's put the claim language

09:53:31 19 back up.

09:53:34 20        Mr. Belloli's discussion, I think, is interesting

09:53:37 21 because here's some phrases that he used.  He said the

09:53:40 22 claim was -- he said the set-top box and the claim was

09:53:44 23 programmed to receive and use.  Words you won't find in

09:53:47 24 the claim.  He said, also, and I wrote this down, he says

09:53:50 25 it's configured to receive a specific kind of metadata,

09:53:54  1   words you won't find in the claim.  His example,

09:53:58  2   configured to receive 4G data, won't find that in the

09:54:01  3   claim.  This is all trying to rewrite the language of the

09:54:06  4   claim.  They were the masters of their claim and could

09:54:08  5   have written a claim that didn't invoke IPXL, but they

09:54:12  6   didn't do that.

09:54:13  7        I also noticed that Mr. Belloli's entire argument

09:54:16  8   is focused on this introductory phrase literally speaking

09:54:20  9   what I have highlighted here, says nothing about the

09:54:23  10  "along with" limitation.  Again, how do we know the

09:54:26  11  metadata and the -- the metadata and the video content

09:54:30  12  were submitted along with in that upstream path?  Because

09:54:34  13  what difference does that make if they were transmitted

09:54:36  14  along with or not along with?  What if they were combined

09:54:39  15  at some later point?  Let me just show this.

09:54:41  16       Let's go back to figure 2A.  The "along with"

09:54:45  17  requirement is between the end user web browser, the

09:54:49  18  content provider device, and the WBCMS.  Judge, what if

09:54:52  19  they weren't along with here, but they became along with

09:54:55  20  down here at the bottom?  You know, the bottom line here,

09:55:00  21  Judge, is -- and, also, all this talk about attributes and

09:55:03  22  configurations, there is nothing in the claim that

09:55:06  23  requires, or is specific, or discusses why it's important

09:55:12  24  that the data had been previously transferred between a

09:55:16  25  video content provider device and a WBCMS.  Nothing.  I

09:55:21 1  mean, there is nothing in there.  There's nothing about

09:55:24 2  the "along with" requirement.

09:55:25 3          Mr. Belloli said not one word about the purpose

09:55:27 4  requirement in those 94 words.  He has taken 94 words and

09:55:31 5  he's condensed them into what he wants it to read, which

09:55:34 6  is program to receive and use, and that's not what the

09:55:38 7  claim reads.  Broadband iTV was the master of their claim.

09:55:43 8  They wrote a claim that no one can determine whether it

09:55:45 9  infringes.  And as far as timing of this, it matters

09:55:50 10 exactly whether this was done in the past and when it was

09:55:53 11 done.

09:55:53 12         If this upload step, if this designation step

09:55:57 13 occurred before issuance, there is no infringement of this

09:56:02 14 (indicating).  This is what is accused of infringement,

09:56:05 15 but yet, we have to go back and look at all of these past

09:56:10 16 events and evaluate when and where they occurred, who did

09:56:11 17 them, and what other devices were used.  I'll submit to

09:56:15 18 you, Judge, this is the most extreme example of IPXL that

09:56:19 19 exists in the case law, and under that, under that case

09:56:21 20 law, we would respectfully request the Court find these

09:56:23 21 claims to be indefinite under IPXL.

09:56:26 22         THE COURT:  Does the plaintiff want to respond to

09:56:28 23 that?

09:56:32 24         MR. BELLOLI:  Yes, your Honor.  If I could share

09:56:33 25 my screen.

09:56:39   1          Okay.  So if we look at claim 1, if everyone can

09:57:06   2   see it -- it should be up -- of the 388 patent, again,

09:57:12   3   programmed to, it is in there.  It's a set-top box

09:57:14   4   programmed to perform these steps, receiving, providing in

09:57:19   5   response to and receiving.  Generally speaking, getting

09:57:22   6   metadata, creating this menu, the user going through the

09:57:25   7   menu, and receiving the video in response to picking it.

09:57:28   8   And all the wherein clause that they're pointing to, is

09:57:32   9   that metadata and is that video?  It's information about

09:57:35   10  it.

09:57:36   11         So when there's a bunch of information about the

09:57:38   12  metadata in there, that's the data that's the input.  So

09:57:44   13  all we're talking about, again, just like the cellphone

09:57:46   14  example that I gave, a cellphone that's configured to

09:57:49   15  receive 4G signals based on a text message from a user,

09:57:53   16  same thing here:  A set-top box configured to receive

09:57:57   17  video and meta -- and very specific metadata from a

09:58:02   18  certain source.  Same kind of thing.  It's not injecting

09:58:05   19  an improper third-party method step.  It's just saying,

09:58:11   20  look, this is the input that this box is going to work on.

09:58:13   21  And how do you know if the box is capable of doing this?

09:58:17   22  Well, you look at the source code.

09:58:19   23         I mean, they've got no trouble applying these

09:58:23   24  claims to the art in the IPRs.  They haven't objected to

09:58:26   25  the infringement contentions of saying, oh, we can't tell

09:58:29  1  where you're pointing to that the information's coming

09:58:31  2  from.  This is pretty straightforward.  We're talking

09:58:35  3  about a set-top box within an environment -- with a

09:58:39  4  video-on-demand environment, and we're claiming that

09:58:42  5  set-top box.  And when we talk about the video and the

09:58:44  6  metadata, it's merely saying what that metadata is, what

09:58:47  7  that video is, where it's coming from.

09:58:53  8          MR. ROBERTS:  Your Honor, if I may respond

09:58:55  9  briefly.

09:59:00  10          THE COURT:  Sure.

09:59:00  11          MR. ROBERTS:  So I'd like to make two points,

09:59:12  12  your Honor.  The first point I want to make, your Honor,

09:59:14  13  is that what plaintiff's counsel is saying is that this

09:59:17  14  wherein clause merely claims the metadata that is provided

09:59:20  15  to the set-top box.  Capability of a set-top box to

09:59:24  16  receive that metadata.  But you know that that's not true

09:59:28  17  because the metadata that is called out in the wherein

09:59:31  18  clause is not received by the set-top box in this claim.

09:59:35  19          What this claim limitation calls for along with

09:59:42  20  is the metadata, it says along with respect to specified

09:59:48  21  metadata, including title information, category

09:59:51  22  information and subcategory information.  That's what's

09:59:53  23  uploaded.  And if you look at the claim later on, what it

09:59:58  24  says is, received is a hierarchical video-on-demand

10:00:06  25  content menu that lists titles using the same hierarchical

10:00:12    1    structure of the category and subcategory information as

10:00:14    2    was designated by the content provider.

10:00:17    3            This metadata is not received by the set-top box.

10:00:20    4    The metadata is used to create a category menu, and the

10:00:26    5    structure of that menu reflects the structure of the

10:00:29    6    metadata.  But the claim does not call for this metadata

10:00:34    7    being sent to the enduser.  The metadata is used to create

10:00:39    8    the menu, and the menu is sent to the enduser.  This is

10:00:44    9    not merely the data that is consumed and the set-top box

10:00:48    10   must be capable of receiving this data.  That's not at all

10:00:52    11   what the claim says.

10:00:54    12           And the second point I'd like to make is that you

10:00:57    13   can't look at the set-top box.  The set-top box can't be

10:01:02    14   constructed, you can't build a set-top box to distinguish

10:01:07    15   between data that meets these requirements and data that

10:01:10    16   doesn't meet these requirements.  How am I supposed to

10:01:14    17   build a set-top box as a manufacturer to know whether or

10:01:19    18   not the metadata was uploaded via the internet?  How do I

10:01:23    19   -- to the web content.  How do I build a set-top box,

10:01:27    20   manufacture it to know whether or not the metadata that

10:01:31    21   accompanied the upload was uploaded for a purpose?

10:01:34    22           I can't as a manufacturer build a set-top box

10:01:37    23   that distinguishes between something that meets these

10:01:40    24   requirements and something that doesn't meet the

10:01:42    25   requirements.  And what Mr. Belloli is saying is that the

10:01:47  1  requirements are only partially limiting, therefore.  That

10:01:51  2  many of these things are not limits.  And in fact, I think

10:01:54  3  he said that expressly when he said, we don't care when it

10:01:57  4  was uploaded.  It doesn't matter.  They are functionally

10:02:01  5  reading this out of the claim.  They're trying to read it

10:02:03  6  as not being a limitation, and that can't be right, your

10:02:08  7  Honor.

10:02:09  8          You have to know who did it, how it was done,

10:02:11  9  where it was done, and why they did it, and you can't know

10:02:16  10  that from looking at the set-top box.  You can't.  Thank

10:02:21  11  you.

10:02:25  12          MR. BELLOLI:  Your Honor, if I may respond.

10:02:26  13          THE COURT:  Sure.

10:02:37  14          MR. BELLOLI:  You should have the 388 patent,

10:02:38  15  claim 1 up.  And if you look at step A, what's received is

10:02:42  16  this video-on-demand application-readable metadata.  So

10:02:46  17  that's what's received, and what's talked about in the

10:02:48  18  wherein clause is exactly that metadata and the components

10:02:52  19  that go into that metadata.  So again, this is like -- the

10:02:56  20  wherein clause is like saying, you know, it's just the

10:03:03  21  construct of that video-on-demand application-readable

10:03:07  22  metadata that's received in the first step.

10:03:10  23          So that's what goes into all that metadata is all

10:03:12  24  those extra, the category information, subcategory

10:03:15  25  information, title information, that's the stuff that's

10:03:19  1  used as a subcomponent of the video-on-demand

10:03:22  2  application-readable metadata that's received and used by

10:03:24  3  the set-top box.

10:03:25  4       So again, this wherein clause is talking about

10:03:28  5  the video and the metadata that is used by the system, and

10:03:33  6  that makes sense because we're talking about

10:03:35  7  video-on-demand.  The video and the metadata is going to

10:03:37  8  come from somewhere, and these are just inputs used and

10:03:43  9  processed by the claimed set-top box.  Just like if you

10:03:46  10  said, hey, I have claim on a house and one of the elements

10:03:51  11  is nails, we don't care when that nail was made, we don't

10:03:56  12  care where it was made, when it was made, it's just a

10:03:58  13  component that's used in the claimed house.

10:04:01  14       Here, you have the claim set-top box and what's

10:04:04  15  it going to act on, what's it going to receive, what's it

10:04:08  16  going to use?  Obviously videos and metadata associated

10:04:11  17  with those videos, because we're talking about

10:04:13  18  video-on-demand and taking metadata associated with that

10:04:17  19  video-on-demand to create a better program guide, a

10:04:20  20  templatized program guide, the novel aspect of this

10:04:23  21  invention.

10:04:24  22       So it's not injecting some erroneous third-party

10:04:29  23  method step, completely unencumbered from the claim

10:04:32  24  structure.  No.  It's talking about the data structures

10:04:35  25  that are used by the set-top box to execute the

10:04:39  1  functionalities of the claimed set-top box, and it is not

10:04:42  2  claiming some method by someone else.

10:04:45  3         THE COURT:  Okay.  I'm going to go off the record

10:04:49  4  for a few seconds and I'll come back on.

10:13:50  5         We're going back on the record.  I will tell you

10:13:53  6  that those were probably three of the very best arguments

10:13:58  7  that I've heard.  And I've done a fair number of Markmans

10:14:03  8  now.  Mr. Fulghum wins for being the most passionate about

10:14:08  9  a claim term that I've heard in a long time.  Mr. Roberts

10:14:11  10  was much more subdued, but equally effective.

10:14:16  11         Here's -- I won't belabor this, but here is the

10:14:20  12  way I basically view the arguments that were just made.

10:14:25  13  I'm not going to find that it's indefinite.  I think while

10:14:33  14  the defendants' arguments are very compelling, it seems to

10:14:36  15  me that they are really summary judgment arguments to be

10:14:40  16  taken up either after the plaintiff has given its

10:14:43  17  infringement contentions or after the plaintiff has

10:14:47  18  prepared expert reports and explain to the defendants.

10:14:50  19  Because if failing everything that Mr. Fulghum and Mr.

10:14:55  20  Roberts say they can't prove, if they have an expert that

10:14:59  21  -- if they get through infringement contentions and can

10:15:01  22  show that they do, in their opinion, if they have an

10:15:05  23  expert that will explain why, we'll be in one situation;

10:15:09  24  and if they can't, then a motion for summary judgment will

10:15:16  25  be -- an early motion for summary judgment will be taken

| | | |
|---|---|---|
| 10:15:18 | 1 | up by the Court. |
| 10:15:20 | 2 | Let me ask you this.  On the next claim term, |
| 10:15:24 | 3 | "wherein the respective video-on-demand |
| 10:15:29 | 4 | application-readable metadata is generated," et cetera, |
| 10:15:33 | 5 | are there arguments that are substantively different than |
| 10:15:37 | 6 | what I just heard from either of the defendants? |
| 10:15:40 | 7 | MR. FULGHUM:  So, your Honor, let me speak to |
| 10:15:42 | 8 | that.  The wording is different.  It goes to the portion |
| 10:15:45 | 9 | of IPXL where you have a method step that is not performed |
| 10:15:50 | 10 | by the claimed apparatus.  And if you don't mind, your |
| 10:15:55 | 11 | Honor, if you can indulge, me, I just have a few slides on |
| 10:16:00 | 12 | that I wouldn't mind showing the Court. |
| 10:16:01 | 13 | THE COURT:  No, no.  I'm happy for you to.  That |
| 10:16:03 | 14 | was why I asked the question. |
| 10:16:06 | 15 | MR. FULGHUM:  And, your Honor, may I ask a point |
| 10:16:09 | 16 | of clarification? |
| 10:16:10 | 17 | THE COURT:  Sure. |
| 10:16:12 | 18 | MR. FULGHUM:  About your ruling.  Are you |
| 10:16:13 | 19 | foreclosing us from making a later motion for |
| 10:16:16 | 20 | indefiniteness? |
| 10:16:17 | 21 | THE COURT:  No. |
| 10:16:18 | 22 | MR. FULGHUM:  By your ruling? |
| 10:16:19 | 23 | THE COURT:  No, I'm not. |
| 10:16:22 | 24 | MR. FULGHUM:  Okay. |
| 10:16:22 | 25 | THE COURT:  No.  I'm -- it just strikes me that |

| | | |
|---|---|---|
| 10:16:27 | 1 | -- well, I'll put it on the record because I want the |
| 10:16:30 | 2 | record to be clear.  I think that for purposes of the |
| 10:16:34 | 3 | Markman and with the clear and convincing standard at this |
| 10:16:38 | 4 | point, I am determining it is not indefinite. |
| 10:16:41 | 5 | However, it is clear that you and Mr. Roberts |
| 10:16:44 | 6 | have raised a substantial number of issues that you have |
| 10:16:48 | 7 | asserted cannot be established in the infringement |
| 10:16:52 | 8 | contentions, and I see no reason why you could not -- a |
| 10:16:58 | 9 | defendant could not argue that they're not met and that I |
| 10:17:01 | 10 | was wrong and that it is indefinite.  But I think the |
| 10:17:05 | 11 | appropriate time to take up that issue for this particular |
| 10:17:11 | 12 | claim term is either after the infringement contentions -- |
| 10:17:14 | 13 | the final infringement contentions have been provided you |
| 10:17:17 | 14 | or the final expert reports on infringement have been |
| 10:17:21 | 15 | provided. |
| 10:17:21 | 16 | I know, having represented a lot of companies and |
| 10:17:26 | 17 | defendants, that is a less happy way of doing it because |
| 10:17:29 | 18 | you have the expense -- additional expense of going |
| 10:17:31 | 19 | through that process.  However, I think that the plaintiff |
| 10:17:35 | 20 | has sufficiently -- and I'm not -- I didn't say that for |
| 10:17:40 | 21 | any reason other than I try and take all of that into |
| 10:17:42 | 22 | consideration as I'm trying to come up with the |
| 10:17:44 | 23 | appropriate thing to do here. |
| 10:17:45 | 24 | That being said, I think the plaintiff's argument |
| 10:17:49 | 25 | was compelling to survive an argument at the Markman stage |

| | |
|---|---|
| 10:17:55 | 1 |
| 10:17:59 | 2 |
| 10:18:06 | 3 |
| 10:18:10 | 4 |
| 10:18:13 | 5 |
| 10:18:19 | 6 |
| 10:18:22 | 7 |
| 10:18:25 | 8 |
| 10:18:28 | 9 |
| 10:18:30 | 10 |
| 10:18:31 | 11 |
| 10:18:34 | 12 |
| 10:18:37 | 13 |
| 10:18:40 | 14 |
| 10:18:43 | 15 |
| 10:18:46 | 16 |
| 10:18:49 | 17 |
| 10:18:54 | 18 |
| 10:18:59 | 19 |
| 10:19:03 | 20 |
| 10:19:05 | 21 |
| 10:19:07 | 22 |
| 10:19:08 | 23 |
| 10:19:09 | 24 |
| 10:19:11 | 25 |

1  that the patent -- that this claim term is indefinite.

2  And I think that the standard he's got of -- they've got

3  -- and they filed the suit that this is not a surprise.

4  They know they're going to have to do this.  They're going

5  to have to explain to you and Mr. Roberts why you infringe

6  and survive a motion for summary judgment that I think you

7  and Mr. Roberts have teed up quite well.

8           MR. FULGHUM:  Okay.  Thank you.

9           Go ahead, Mr. Roberts.

10          THE COURT:  I'll say, also, on behalf of the

11  plaintiff, I think he did an exceptional -- I think the

12  plaintiff's counsel did an exceptional argument in terms

13  of explaining why he thinks he'll be able to prove

14  infringement.  So I have a completely open mind.  I just

15  think this is not the right stage to resolve this issue

16  and find that it is indefinite.  I think the plaintiff has

17  sufficiently survived the standard of clear and convincing

18  evidence, and I actually look forward to seeing what he

19  does to establish infringement in this case.

20          MR. ROBERTS:  Your Honor, this is Mr. Roberts.

21          Without retreading, but just to protect my

22  record.

23          THE COURT:  Yes, sir.

24          MR. ROBERTS:  If I may make two points.  The

25  first is that from our perspective, this is a pure

10:19:13  1  question of law and not subject to the clear and

10:19:16  2  convincing evidence standard.  But I do hear your Honor's

10:19:18  3  point.

10:19:19  4          And the second point I want to make is that Mr.

10:19:23  5  Belloli said in his last at that, that the wherein clause

10:19:29  6  talks about receiving is referring to the metadata that's

10:19:33  7  received in step A.  And I wanted to point out to your

10:19:37  8  Honor that the metadata that's received in step A is

10:19:40  9  application-readable metadata, and the

10:19:44  10 application-readable metadata is not the metadata that is

10:19:47  11 uploaded in the wherein clause.

10:19:49  12         In fact, if you go all the way to the end of the

10:19:51  13 wherein clause, you'll see that there is another wherein

10:19:54  14 clause, and that wherein clause says, wherein the

10:19:57  15 respective video-on-demand application-readable metadata

10:20:00  16 is generated according to the respective specified

10:20:05  17 metadata.  So the way the claim works is, the user uploads

10:20:11  18 the specified metadata, then some unknown component in

10:20:16  19 another wherein clause, which is another IPXL problem,

10:20:20  20 generates the application-readable metadata, and then,

10:20:24  21 that application-readable metadata is what is received.

10:20:28  22         So we actually have two IPXL problems.  We

10:20:32  23 focused on one in the argument, but there's a second one

10:20:35  24 below, which is why I'm asking to protect the record.  And

10:20:38  25 then, that second metadata is what's received by the

| | | |
|---|---|---|
| 10:20:41 | 1 | claim.  Not the specified metadata that's uploaded.  Thank |
| 10:20:45 | 2 | you, your Honor. |
| 10:20:45 | 3 | THE COURT:  And thank you -- |
| 10:20:45 | 4 | MR. FULGHUM:  Your Honor -- |
| 10:20:47 | 5 | THE COURT:  -- you're welcome. |
| 10:20:48 | 6 | Yes, Mr. Fulghum. |
| 10:20:50 | 7 | MR. FULGHUM:  That wherein clause that Mr. |
| 10:20:53 | 8 | Roberts just mentioned is the subject of kind of the |
| 10:20:55 | 9 | second argument, and I will be very, very brief on that |
| 10:20:57 | 10 | argument.  And if you'll allow me just to show a few |
| 10:21:00 | 11 | slides, I think we can kind of see what's going on here. |
| 10:21:02 | 12 | THE COURT:  I will.  Let me just respond to Mr. |
| 10:21:04 | 13 | Roberts. |
| 10:21:05 | 14 | Number one, let me make clear, I think everyone |
| 10:21:08 | 15 | knows, but if you don't, I certainly want you to make |
| 10:21:11 | 16 | whatever arguments -- I want you to protect your record so |
| 10:21:14 | 17 | if I'm not -- if you feel like I'm not giving you the |
| 10:21:17 | 18 | chance, that's accidental.  So please interrupt me and |
| 10:21:19 | 19 | make sure that you protect your record. |
| 10:21:22 | 20 | But number two, again, specifically to what Mr. |
| 10:21:27 | 21 | Roberts just raised, I'm not -- I'm not really in a |
| 10:21:34 | 22 | position to be able to do anything at this point.  I don't |
| 10:21:37 | 23 | feel it's right to decide this at the Markman level.  If |
| 10:21:42 | 24 | the issues that you are raising are correct, like I said, |
| 10:21:47 | 25 | I think that the plaintiff is going to have a difficult |

| | | |
|---|---|---|
| 10:21:50 | 1 | time establishing infringement.  Because I do understand |
| 10:21:54 | 2 | the technical arguments you're making; I'm just not |
| 10:21:56 | 3 | finding at this time that they make the claim term |
| 10:22:01 | 4 | indefinite. |
| 10:22:01 | 5 | So your record's protected and I'm looking |
| 10:22:04 | 6 | forward to their providing infringement contentions and |
| 10:22:10 | 7 | expert reports that can establish what they need to, and |
| 10:22:14 | 8 | then, you all are going to have another bat on this once |
| 10:22:18 | 9 | you have those. |
| 10:22:20 | 10 | MR. FULGHUM:  Sounds good, Judge.  Sounds like |
| 10:22:21 | 11 | we're not foreclosed from arguing indefiniteness at a |
| 10:22:24 | 12 | later time, and we'll proceed from there. |
| 10:22:26 | 13 | THE COURT:  And, Mr. Fulghum, you're up on the |
| 10:22:28 | 14 | next claim term. |
| 10:22:29 | 15 | MR. FULGHUM:  Okay.  Very good.  Let me share my |
| 10:22:31 | 16 | screen again. |
| 10:22:32 | 17 | And, Judge, this is the wherein clause that Mr. |
| 10:22:38 | 18 | Roberts was mentioning just a second ago.  And we call |
| 10:22:41 | 19 | this one that "is generated" step, and let me just jump |
| 10:22:45 | 20 | ahead to where it is.  This is only in the 388. |
| 10:22:48 | 21 | Previously we talked about the 269 and the 026.  This is |
| 10:22:52 | 22 | only in the 388 and here it is.  This is at the -- |
| 10:22:56 | 23 | remember we had two kinds of wherein clauses.  This is the |
| 10:22:58 | 24 | 94 words we talked about a second ago, but right behind it |
| 10:23:02 | 25 | is this clause, and it says very simply, wherein the |

10:23:05  1   respective video-on-demand application-readable metadata

10:23:09  2   is generated according to the respective specified

10:23:12  3   metadata.

10:23:13  4        So again, we've got an action word "is

10:23:15  5   generated."  And what's interesting about this is, we've

10:23:19  6   also got this receiving step at the top.  We've heard a

10:23:22  7   lot about this from Mr. Belloli.  It reads, receiving at

10:23:26  8   the set-top box respective video-on-demand

10:23:29  9   application-readable metadata.  Now, let's put all this

10:23:31  10  together and we're going to animate this to show how this

10:23:33  11  claim works a little bit, Judge.  And I think you'll find

10:23:35  12  this interesting.

10:23:36  13       Okay.  Down at the bottom, wherein the respective

10:23:40  14  video-on-demand application-readable metadata is

10:23:43  15  generated.  Is generated.  Doesn't tell us who's doing it.

10:23:46  16  It just says it is generated.  But notice up above, it

10:23:50  17  says, a set-top box programmed to perform the steps of

10:23:54  18  receiving respective video-on-demand application-readable

10:24:00  19  metadata.  Okay, let's put that together.  In step (a), it

10:24:04  20  receives it.  Down here in the wherein clause, it says it

10:24:08  21  is generated.  It makes perfect sense.  And no one

10:24:13  22  disagrees, you've got to generate it before you can

10:24:16  23  receive it.

10:24:17  24       So the only thing the set-top box, which is the

10:24:20  25  claimed device, is doing is receiving it.  But another

10:24:23   1   actor, Judge -- and we don't know who this is.  Another

10:24:27   2   actor down here is generating it because it says, wherein

10:24:31   3   the respective video-on-demand application-readable

10:24:33   4   metadata is generated.

10:24:35   5        So to sum up, we've got a stray method step, it

10:24:40   6   is not connected to the apparatus, and it's performing a

10:24:43   7   function.  We don't know who's doing this, and this is

10:24:46   8   also indefinite under IPXL.  Now, what's interesting is

10:24:51   9   Broadband iTV agrees with us on this point, and let me

10:24:54   10  point that out.

10:24:55   11       In the responsive brief -- and Mr. Belloli can

10:24:59   12  speak to this -- he says that generation necessarily

10:25:04   13  occurs before receipt by the set-top box per language of

10:25:09   14  the claim.  Before.  There is an "is generated" step that

10:25:15   15  is done before.  We don't know who does it, but we know it

10:25:18   16  has to be done.  That is also indefiniteness under IPXL.

10:25:22   17       Now, we cited the Power Integrations case.

10:25:28   18  That's the district court case up in Northern District of

10:25:31   19  California, and I just wanted to put up some claim

10:25:34   20  language to show just how on point that case is, Judge.

10:25:37   21  On the right-hand side, we see the language from Power

10:25:40   22  Integration that it reads a regulator circuit, a circuit,

10:25:43   23  and it has a control signal in the circuit.  And then, on

10:25:47   24  the bolded part, Judge, it says, said control signal being

10:25:50   25  provided.  Said control signal being provided.  The Court

10:25:54  1   in the Northern District said, well, this is indefinite

10:25:57  2   under IPXL because the provided step is not part of the

10:26:00  3   circuit.  It's just provided.  We don't know who did it.

10:26:04  4          Look at how that lines up with us.  We have a

10:26:12  5   generating the application-readable metadata, it's not a

10:26:15  6   function of the set-top box.  Mr. Belloli will agree with

10:26:18  7   that.  And for that reason, it's done separately, it's

10:26:21  8   done before, as Broadband iTV agrees, it is not part of

10:26:26  9   the set-top box operation; and therefore, it's indefinite

10:26:31  10  under IPXL.

10:26:32  11         Again, Judge, I will hold up my set-top box on

10:26:35  12  the screen, but I think everybody's gotten tired of seeing

10:26:37  13  that.  But we cannot look at the four corners, the

10:26:41  14  plastic, everything inside that set-top box, and know

10:26:44  15  whether the application of readable metadata was generated

10:26:47  16  according to the respective specified metadata.  We cannot

10:26:51  17  look at the set-top box and know whether the generating

10:26:53  18  step was done post-issuance or in the U.S.  We just can't

10:26:56  19  know.

10:26:56  20         This goes to the root of the IPXL problem.  We've

10:26:59  21  got an apparatus claim with a method step embedded in it.

10:27:02  22  And that will conclude my presentation on this point, your

10:27:04  23  Honor.

10:27:05  24         THE COURT:  Okay.  Let me hear a response from

10:27:08  25  plaintiff, and then, I'll hear from Mr. Roberts if he has

| | | |
|---|---|---|
| 10:27:12 | 1 | anything he'd like to add. |
| 10:27:14 | 2 | MR. ROBERTS:  No, your Honor.  I don't have |
| 10:27:15 | 3 | anything to add.  All I'll do is adopt Mr. Fulghum's |
| 10:27:19 | 4 | argument here just to simplify -- |
| 10:27:19 | 5 | THE COURT:  Okay.  Thank you. |
| 10:27:23 | 6 | MR. BELLOLI:  I need a screen share real quick. |
| 10:27:26 | 7 | MR. FULGHUM:  All right.  I'm getting out. |
| 10:27:28 | 8 | MR. BELLOLI:  Thank you. |
| 10:27:29 | 9 | All right.  So if we look at claim 1 of the 388 |
| 10:27:36 | 10 | patent, which is being discussed here, so first you have |
| 10:27:39 | 11 | this receiving step and you're receiving this |
| 10:27:42 | 12 | video-on-demand application-readable metadata, and that's |
| 10:27:46 | 13 | what's talked about in the wherein clause.  And what is |
| 10:27:48 | 14 | that?  It's a specific data structure and it's based on |
| 10:27:51 | 15 | other metadata, the respective specified metadata, which |
| 10:27:55 | 16 | is largely what's in gray in the wherein clause. |
| 10:27:57 | 17 | So what is the receiving step?  It's receiving a |
| 10:28:01 | 18 | specific kind of metadata based on other metadata.  So all |
| 10:28:04 | 19 | you're doing is describing a specific data structure that |
| 10:28:08 | 20 | the system is designed to receive and make use of.  It's |
| 10:28:12 | 21 | the same issue as the last claim term or last wherein |
| 10:28:18 | 22 | clause that they were talking about.  Again, this is a |
| 10:28:20 | 23 | data structure video-on-demand application-readable |
| 10:28:24 | 24 | metadata that's based on certain other metadata respective |
| 10:28:28 | 25 | specified -- |

| | | |
|---|---|---|
| 10:28:29 | 1 | THE COURT:  Let me ask you this, if I can. |
| 10:28:29 | 2 | RM. BELLOLI:  Yeah. |
| 10:28:31 | 3 | THE COURT:  On the wherein step. |
| 10:28:33 | 4 | MR. BELLOLI:  Uh-huh. |
| 10:28:34 | 5 | THE COURT:  Is that an action that needs to be |
| 10:28:37 | 6 | performed or is that just -- the highlighted yellow part, |
| 10:28:41 | 7 | is that just a description of what the metadata is? |
| 10:28:46 | 8 | That's the way I took. |
| 10:28:48 | 9 | MR. BELLOLI:  Exactly.  You're right.  The |
| 10:28:50 | 10 | latter.  It's a description of what it is.  It's this |
| 10:28:53 | 11 | video-on-demand application-readable metadata was |
| 10:28:56 | 12 | generated based on this respective specified metadata, |
| 10:29:01 | 13 | which is some of the stuff that's in gray before like |
| 10:29:03 | 14 | category information, subcategory information.  So what |
| 10:29:06 | 15 | you're doing is, you're receiving metadata that's built on |
| 10:29:10 | 16 | other metadata and so, has a specific data structure, and |
| 10:29:14 | 17 | that's what's being received and acted upon by the set-top |
| 10:29:18 | 18 | box. |
| 10:29:18 | 19 | It's not injecting a step to be performed by the |
| 10:29:22 | 20 | set-top box.  It's just saying, hey, you've got this |
| 10:29:24 | 21 | metadata based on other metadata, and this system is going |
| 10:29:29 | 22 | to make use of that, effectively combine the metadata: |
| 10:29:33 | 23 | The video-on-demand application, readable metadata. |
| 10:29:37 | 24 | THE COURT:  Let me hear, Mr. Fulghum, what do you |
| 10:29:40 | 25 | say in response to that? |

10:29:42    1          MR. FULGHUM:  Well, your Honor, I do disagree

10:29:44    2    with it.  This is not a statement of the contents of the

10:29:48    3    metadata or its -- the way it's organized.  If we could go

10:29:51    4    back to that claim language and maybe I can put mine on

10:29:54    5    the screen.  Bear with me just a second.

10:30:05    6          You know, your Honor, I think what's most

10:30:09    7    compelling here is just the statement "is generated

10:30:11    8    according to."  It's an action word that has to occur.  It

10:30:14    9    tells us much more than what the format is of the

10:30:18   10    application-readable metadata.  The application-readable

10:30:21   11    metadata is what is required to be received.  I mean, it's

10:30:25   12    discussed up above, but it's generated according to the

10:30:28   13    respective specified metadata.  I just cannot read it,

10:30:31   14    Judge, any other way than to require that there's an

10:30:35   15    actual method step.

10:30:36   16          Judge, look at it this way.  We have verbs, is

10:30:40   17    generated.  I mean, it doesn't say has the attributes of.

10:30:45   18    Has the attributes of the respective specified metadata.

10:30:48   19    It says is generated according to.  And they say in their

10:30:52   20    briefing, Judge, in their own briefing, which I didn't

10:30:55   21    hear Mr. Belloli address, they say this step is done

10:30:58   22    before, before the remainder.  I agree.

10:31:04   23          If this is a step that's done before, how can it

10:31:07   24    not be an actual thing?  How can it not be an actual thing

10:31:11   25    that has to occur?

```
10:31:12   1          THE COURT:  Okay.  I'll be right back with you
10:31:13   2   guys.
10:31:15   3          MR. ROBERTS:  And, your Honor, if I could add one
10:31:16   4   more thing.  I do apologize.
10:31:18   5          THE COURT:  Yes, sir.
10:31:19   6          MR. ROBERTS:  I want to point out that Mr.
10:31:22   7   Belloli's two arguments are inconsistent.  In the previous
10:31:27   8   limitation, the rest of the wherein clause, he was saying,
10:31:29   9   your Honor, this is just a capability of the set-top box
10:31:32  10   to receive this data.  And now he's saying, well, no, your
10:31:36  11   Honor, that data actually is used to generate other data
10:31:39  12   and this one -- this is what's the data that's received.
10:31:43  13          You can't have it both ways.  You can't point to
10:31:45  14   this limitation generating the applicable -- the
10:31:49  15   application-readable metadata and saying, your Honor, this
10:31:51  16   is just where the data comes from that's received and
10:31:55  17   then, not run into, well, then, what was the previous
10:31:57  18   limitation?  That was your argument on the previous
10:31:59  19   limitation.
10:32:00  20          And so, these two things are inconsistent.  If
10:32:03  21   this limitation, if he's right about this and this is just
10:32:08  22   the -- an act, you know, the attribute of -- somehow of
10:32:11  23   the data that's received, which I don't think it can be
10:32:14  24   because I don't know, again, how I make a set-top box that
10:32:19  25   can tell you the way in which the data it received is
```

| | | |
|---|---|---|
| 10:32:22 | 1 | generated.  How do I build a set-top box that recognizes |
| 10:32:27 | 2 | the method of construction from whence the |
| 10:32:31 | 3 | application-readable metadata was constructed?  It can |
| 10:32:34 | 4 | recognize the application-readable metadata, it can |
| 10:32:36 | 5 | recognize what it receives, but how do I build it to |
| 10:32:39 | 6 | recognize how that data was created, where it was created |
| 10:32:44 | 7 | from?  And much less reaching back in time, where and by |
| 10:32:50 | 8 | whom and how the data that it was created from was |
| 10:32:54 | 9 | uploaded in the past.  And that's why this is such an |
| 10:32:57 | 10 | extraordinary IPXL problem.  Thank you. |
| 10:33:01 | 11 | THE COURT:  I'll be back in just a few seconds. |
| 10:35:22 | 12 | Okay.  We'll go back on the record.  The Court is |
| 10:35:25 | 13 | going to make its preliminary construction its final |
| 10:35:30 | 14 | construction, which is plain and ordinary meaning. |
| 10:35:31 | 15 | We're going to move on to the next system -- the |
| 10:35:35 | 16 | next claim term, which is "closed system."  I'll start |
| 10:35:39 | 17 | with the plaintiff.  What is the plaintiff's position with |
| 10:35:45 | 18 | respect to the Court's preliminary construction? |
| 10:35:51 | 19 | MR. ALBERTI:  David Alberti on behalf of BBiTV. |
| 10:35:54 | 20 | Your Honor, we agree with the Court's preliminary |
| 10:35:56 | 21 | construction. |
| 10:35:57 | 22 | THE COURT:  Mr. Fulghum, who will be arguing this |
| 10:36:01 | 23 | on defendants' behalf? |
| 10:36:04 | 24 | MR. ROBERTS:  I believe I will. |
| 10:36:07 | 25 | THE COURT:  Mr. Roberts, is it you? |

| | | |
|---|---|---|
| 10:36:09 | 1 | MR. ROBERTS:  Yes, sir. |
| 10:36:09 | 2 | THE COURT:  Okay.  Mr. Roberts, I'm happy to hear |
| 10:36:11 | 3 | from you. |
| 10:36:12 | 4 | MR. ROBERTS:  Thank you, your Honor. |
| 10:36:13 | 5 | So if we could have the next slide, Will, please. |
| 10:36:20 | 6 | I want to start here, your Honor, on the same point I made |
| 10:36:23 | 7 | last time, which is that this invention comprises two |
| 10:36:29 | 8 | separate things put together.  Uploading from the web |
| 10:36:35 | 9 | browser to the web-based content management system, which |
| 10:36:39 | 10 | we agree includes the internet.  Everybody agrees this is |
| 10:36:43 | 11 | an internet-based upload.  As we saw when talking about |
| 10:36:47 | 12 | the wherein clause, it expressly says it happens over the |
| 10:36:51 | 13 | internet.  That upload was conjoined with the traditional |
| 10:37:02 | 14 | cable television closed-system download to make the |
| 10:37:04 | 15 | invention. |
| 10:37:05 | 16 | And if you look here in the blue circle, this is |
| 10:37:08 | 17 | the download path, and it's downloaded from the VOD |
| 10:37:14 | 18 | content delivery system 44 to the digital -- through the |
| 10:37:19 | 19 | digital cable television system to the digital set-top |
| 10:37:22 | 20 | box.  And I'd like to just emphasis, your Honor, that it |
| 10:37:25 | 21 | says digital cable television system in this box because |
| 10:37:29 | 22 | we're going to come back to that later in the argument. |
| 10:37:32 | 23 | Okay.  Next slide, please. |
| 10:37:35 | 24 | THE COURT:  But there's no mention of cable in |
| 10:37:36 | 25 | the claims, right? |

| | | |
|---|---|---|
| 10:37:38 | 1 | MR. ROBERTS:  There is no mention of the word |
| 10:37:40 | 2 | "cable" in the claim.  That is correct. |
| 10:37:42 | 3 | THE COURT:  And the state-of-the-art at the time, |
| 10:37:46 | 4 | the internet did exist, correct? |
| 10:37:48 | 5 | MR. ROBERTS:  I believe the internet did exist at |
| 10:37:52 | 6 | the time.  Yes, your Honor. |
| 10:37:53 | 7 | THE COURT:  Okay.  So keep in mind here that I |
| 10:38:00 | 8 | hear these arguments, the type of arguments you're making |
| 10:38:03 | 9 | a lot, and it sounds to me like this is -- there may be a |
| 10:38:09 | 10 | written description issue here.  But keep that in mind as |
| 10:38:12 | 11 | you're making your argument that's -- you have my |
| 10:38:16 | 12 | preliminary construction of plain and ordinary meaning. |
| 10:38:18 | 13 | And I'll tell you that that is at least for now, |
| 10:38:22 | 14 | before I hear your argument, if it helps you form your |
| 10:38:25 | 15 | argument at all, that that's the way the Court sees this |
| 10:38:29 | 16 | as rather than a Markman issue and the effort you want to |
| 10:38:34 | 17 | make for me to constrain what the claim term means by your |
| 10:38:39 | 18 | construction that, for the moment at least, I thought it |
| 10:38:44 | 19 | would be better you to hear this before you made your |
| 10:38:47 | 20 | argument than after, it seems to me that this is something |
| 10:38:49 | 21 | that is a written description issue better framed that |
| 10:38:55 | 22 | way.  That's just the way I see it.  But you're free to |
| 10:38:58 | 23 | make any argument that you'd like. |
| 10:39:00 | 24 | MR. ROBERTS:  Thank you, your Honor.  And I |
| 10:39:01 | 25 | appreciate the guidance.  Can we go back two slides? |

10:39:03  1        I want to point out, your Honor, that there are
10:39:06  2   actually two components to our construction.  One more
10:39:09  3   slide, Will.  There are actually two components to our
10:39:11  4   construction.  One is a conventional cable television
10:39:14  5   system, and that is, I think, what your Honor is referring
10:39:16  6   to, which is, well, I think that that's really a
10:39:20  7   enablement argument -- written description enablement
10:39:24  8   argument.  But I want to focus my argument on the second
10:39:26  9   component of our construction, which is that it's distinct
10:39:28  10  from the internet.
10:39:30  11       Because even if you don't think that the word
10:39:33  12  "closed" limits them to a conventional cable television
10:39:37  13  system, I think it absolutely does distinguish it from the
10:39:42  14  internet and here's why.  So let's go back to the next
10:39:48  15  slide, please.  So this is what they said, and I'm putting
10:39:54  16  up the file history again of the 997, which is the
10:39:58  17  grandparent of all of these applications.
10:40:01  18       And by the way, your Honor, what we're talking
10:40:03  19  about here -- the patent that we are talking about here is
10:40:05  20  the 388 patent, and the reason that's important is that
10:40:09  21  the 388 dates from the earlier of the two specifications.
10:40:14  22  It dates from the 2004 specification, not from the 2007
10:40:22  23  specification.  And the 997 is talking about that earlier
10:40:27  24  2004 specification.
10:40:28  25       So this is the file history related to the

| | | |
|---|---|---|
| 10:40:32 | 1 | specification that forms the basis for the claim at issue |
| 10:40:36 | 2 | here.  And what he said is, again, I submit that it was |
| 10:40:40 | 3 | not obvious from what was known in either the fledgling |
| 10:40:43 | 4 | internet TV entries or the cable industry to provide a |
| 10:40:47 | 5 | method for uploading video content via the open internet |
| 10:40:52 | 6 | into cable TV's closed-content environment.  And so, the |
| 10:40:55 | 7 | words "open" and "closed" here are appearing to |
| 10:40:59 | 8 | distinguish the internet from the closed-content |
| 10:41:03 | 9 | environment of a cable television system. |
| 10:41:05 | 10 | And then, we get to the argument below.  As more |
| 10:41:09 | 11 | fully explains in the affidavit of the inventor, which is |
| 10:41:12 | 12 | what we have up above, internet TV and cable TV were |
| 10:41:17 | 13 | entirely separate industries with no crossover of content |
| 10:41:21 | 14 | or business between them.  These are separate fields of |
| 10:41:24 | 15 | endeavor.  Internet video content on websites was not |
| 10:41:28 | 16 | selectable or viewable on cable TV networks at the time. |
| 10:41:32 | 17 | You couldn't view things over the internet via cable TV. |
| 10:41:37 | 18 | That's what's going on here.  Each was a separate type of |
| 10:41:41 | 19 | content domain, and it is submitted that it was not |
| 10:41:43 | 20 | obvious for the inventor to provide a method for uploading |
| 10:41:47 | 21 | video content via the open internet into cable TV's |
| 10:41:50 | 22 | closed-content environment. |
| 10:41:52 | 23 | So even if, your Honor, you say, well, I'm not |
| 10:41:55 | 24 | going to read closed as limited to cable TV, it is |
| 10:42:00 | 25 | absolutely clear that the open internet is being |

10:42:04    1   distinguished from the closed-content environment of cable

10:42:08    2   television.  And to read the word "closed" as including

10:42:12    3   the open internet does great violence to this entire

10:42:15    4   structure of what they were saying was the basis of their

10:42:18    5   invention.  Next slide.

10:42:19    6            THE COURT:  Mr. Roberts, do you have the ability

10:42:21    7   to show me the entire claim that we're talking about and

10:42:26    8   where -- I don't have that right in front of me -- and

10:42:30    9   where closed system fits in?

10:42:33   10            MR. ROBERTS:  Yes, your Honor.  We certainly

10:42:34   11   could.

10:42:35   12            The closed system comes in limitation (c), I

10:42:46   13   believe.  Will, can you highlight the closed-system

10:42:55   14   aspect?  It's in limitation (a), excuse me.  If you look

10:42:59   15   at the -- I think our best slide of it is actually going

10:43:03   16   to be the last slide of this section, which is slide 11,

10:43:16   17   Mr. Melehani.

10:43:17   18            And so, your Honor, if you look up in the

10:43:20   19   right-hand side here -- upper left-hand side, this is the

10:43:24   20   portion of the claim, and it calls for receiving at the

10:43:28   21   set-top box via a closed system from a video-on-demand

10:43:35   22   content delivery system comprising one or more computers,

10:43:39   23   blah, blah, blah.  And that's talking about the

10:43:41   24   video-on-demand content delivery system 44, right here in

10:43:45   25   figure 2A; and it's talking about receiving at the set-top

| | | |
|---|---|---|
| 10:43:50 | 1 | box, that's the digital set-top box 21, via a closed |
| 10:43:55 | 2 | system from a video-on-demand content delivery system. |
| 10:43:58 | 3 | So the VOD content delivery system is 44, and |
| 10:44:03 | 4 | then, you receive via a closed system.  The thing in |
| 10:44:06 | 5 | between the video-on-demand content delivery system and |
| 10:44:08 | 6 | the digital set-top box is a digital cable television |
| 10:44:12 | 7 | system. |
| 10:44:12 | 8 | THE COURT:  And your position is at the time, the |
| 10:44:15 | 9 | internet would not have been able to flow through the |
| 10:44:17 | 10 | digital cable television system? |
| 10:44:19 | 11 | MR. ROBERTS:  Correct, your Honor.  It was not |
| 10:44:22 | 12 | envisioned.  They're talking about when they try to |
| 10:44:25 | 13 | distinguish that, they talk about IPTV.  And the IPTV that |
| 10:44:32 | 14 | they talk about was introduced in the 2007 specification, |
| 10:44:36 | 15 | three years later.  And let's actually go right to that |
| 10:44:40 | 16 | slide.  If we could go to slide 19, please. |
| 10:44:46 | 17 | So, your Honor, this is what they did in the 2007 |
| 10:44:49 | 18 | specification, three years later, and you'll see if you |
| 10:44:52 | 19 | look in this later specification, on the right-hand side, |
| 10:44:56 | 20 | you still have the VOD content delivery system and the |
| 10:45:00 | 21 | digital set-top box, but instead of having a digital cable |
| 10:45:04 | 22 | television system, they've changed it and broadened it to |
| 10:45:09 | 23 | a digital television system.  They've removed the word |
| 10:45:13 | 24 | "cable." |
| 10:45:15 | 25 | And in the specification, they remove all of the |

10:45:20  1  references to CATV, and instead, they start talking about

10:45:25  2  digital TV system.  And they say here -- and this is

10:45:29  3  Exhibit 6 from the 269, which is the later 2007

10:45:33  4  specification, they say the digital TV system in figure 4

10:45:37  5  can be any type that supports VOD programming to TV

10:45:42  6  viewers on any suitable type of VOD platform.  While it

10:45:45  7  may be a cable TV system as described previously, it may

10:45:49  8  be any type of digital TV system providing TV services via

10:45:56  9  a high-speed data connection.

10:45:58 10          So in the 2007 specification, they add IPTV, they

10:46:02 11  remove the word "cable," and they expressly start talking

10:46:07 12  about digital TV systems more broadly.  That's what they

10:46:10 13  did in 2007.  But this is the 2004 specification.  It

10:46:17 14  doesn't contain any of this language.  It doesn't contain

10:46:22 15  any of this broadening.  This is new material added in

10:46:28 16  2007, three years after the specification in question.

10:46:32 17          If we could go back, Mr. Melehani, to slide 15.

10:46:37 18  And I want to point that out, your Honor, because when

10:46:42 19  we're looking at what they said about their invention from

10:46:46 20  the 2004 specification, they themselves say each was a

10:46:53 21  separate type of content domain and it is submitted it was

10:46:56 22  not obvious to provide a method for uploading via the open

10:47:00 23  internet.  Now we're talking about the internet and upload

10:47:04 24  into cable TV's content environment, closed-content

10:47:08 25  environment for viewing on the TV.  Their invention at

10:47:12   1   least in the earlier spec is phrased as the combination of

10:47:15   2   an internet upload and a cable TV download.  Next slide,

10:47:19   3   please.

10:47:21   4           And again, this is also from the 997 file

10:47:28   5   history.  The examiner's current rejection, they're

10:47:31   6   traversing a rejection, they're arguing for patentability.

10:47:36   7   In the claims submitted, in the claims, the substantive

10:47:38   8   difference between uploading video content to an internet

10:47:43   9   TV website, which is what the prior art was, for user

10:47:46   10  selection and viewing and uploading video content from the

10:47:50   11  internet into a cable TV network for viewing by

10:47:54   12  drilled-down navigation, paren, the invention.  And again,

10:47:58   13  they say they distinguish the invention from an invention

10:48:01   14  where you view it over the internet, which is what they

10:48:06   15  say is the prior art, and uploading it for viewing from a

10:48:11   16  cable TV network, which is the invention.

10:48:13   17          So your Honor's question was, well, in 2004, you

10:48:19   18  know, would you have viewed this over the internet via the

10:48:22   19  cable TV, they answer that question for you right here.

10:48:27   20  They say, the prior art is viewing it over the internet.

10:48:32   21  And different about what they do is that it's not viewed

10:48:36   22  over the internet: it's viewed over the cable TV network,

10:48:42   23  paren, the invention.  So they're expressly distinguishing

10:48:45   24  their invention from prior art, which viewed it over the

10:48:50   25  internet.

| | | |
|---|---|---|
| 10:48:51 | 1 | Next slide.  Again, more file history.  Main |
| 10:48:59 | 2 | claim, 21 is amended.  Again, they're amending the claims |
| 10:49:03 | 3 | in the parent application and arguing for patentability |
| 10:49:06 | 4 | based on those amendments.  Claim 21 is amended to recite |
| 10:49:11 | 5 | more distinctly that the uploaded content via an open |
| 10:49:16 | 6 | network, paren, the internet.  So right here, your Honor, |
| 10:49:20 | 7 | it is clear that the internet is an open network, and it |
| 10:49:28 | 8 | is, therefore, impossible to say that when they say a |
| 10:49:30 | 9 | closed network or a closed system, which they do in the |
| 10:49:34 | 10 | claim, they cannot be referring to the internet because |
| 10:49:38 | 11 | they are clear that the internet is an open network. |
| 10:49:43 | 12 | They're not saying that open networks include |
| 10:49:46 | 13 | some forms of the internet.  The internet can be open or |
| 10:49:48 | 14 | closed.  Sometimes the internet's open, sometimes it's |
| 10:49:50 | 15 | closed.  It depends upon how you do the internet.  They |
| 10:49:54 | 16 | don't say any of that.  They say that via an open network, |
| 10:49:58 | 17 | paren, the internet is transmitted to a cable television, |
| 10:50:01 | 18 | which is a closed system. |
| 10:50:04 | 19 | Your point, as I take it, your Honor, is, well, |
| 10:50:06 | 20 | it says a cable television, which is a closed system, |
| 10:50:10 | 21 | leaves open the possibility that there are other closed |
| 10:50:12 | 22 | systems.  And so, I don't want to construe closed as |
| 10:50:14 | 23 | synonymous with cable television.  But that is distinct |
| 10:50:17 | 24 | from and different than claiming that closed systems |
| 10:50:23 | 25 | include the internet.  Because it's clear that the |

10:50:27   1   internet is an open network in their own terminology.

10:50:33   2            Next slide.  The only delivery mechanism

10:50:38   3   disclosed in the 2004 specification, your Honor, the

10:50:43   4   earlier specification that is the specification of the

10:50:45   5   388, is cable television.  That's the only one for

10:50:49   6   download.  They say in the technical field that the

10:50:53   7   invention relates generally to the provision of

10:50:55   8   interactive television services through cable TV.  And,

10:51:00   9   your Honor, I just put up one quote here, but again,

10:51:03   10  remember in the 2007 spec, they start talking about

10:51:06   11  digital television.  But here, they're talking about cable

10:51:10   12  television, CATV, and that's what they talk about

10:51:16   13  throughout this specification.

10:51:20   14           Now, if we could go to slide 20.  Their argument

10:51:24   15  is largely based upon the 2007 specification.  But

10:51:29   16  subsequent specifications like that are not relevant to

10:51:31   17  claim construction of what they meant from the earlier

10:51:34   18  specification.  And this is just from Phillips.

10:51:37   19           A court construing a patent claim seeks to accord

10:51:40   20  a claim the meaning it would have to a person of ordinary

10:51:43   21  skill in the art at the time of the invention.  It's at

10:51:46   22  the time.  You can't go three years in the future and say,

10:51:48   23  we later broadened the specification through the addition

10:51:51   24  of new material, and that should, therefore, allow you to

10:51:56   25  change what we meant back earlier in 2004.  You can't do

10:52:00  1   that.  Next slide, please.

10:52:04  2        Their argument has been that really when we said

10:52:07  3   closed, we're talking about permissions.  We are talking

10:52:11  4   about whether or not this is for authorized users.  And

10:52:17  5   here's the quote from their brief, your Honor.  Claim 1

10:52:20  6   does not recite a cable television system, and the

10:52:23  7   specification discloses a web interface where video

10:52:26  8   content and metadata it received is reserved for

10:52:30  9   authorized users.  That's their argument.  And the cite

10:52:33 10   they give is to the web interface, the tracking system.

10:52:37 11   But look where that is in the claim.

10:52:39 12        The tracking system in their invention is

10:52:43 13   upstream of the digital cable television system.  What the

10:52:47 14   claim calls for -- and we've looked at element (a) -- was

10:52:51 15   going from the video server to the digital set-top box,

10:52:54 16   and then, they refer to via a closed system, that's via

10:52:57 17   the digital cable television system.  That's the claim

10:53:00 18   language in (a).  And the tracking system is no part of

10:53:02 19   that transmission.  The tracking system is upstream.  And

10:53:08 20   what this is, your Honor, for context, this is a

10:53:11 21   particular embodiment where you're doing web-based

10:53:17 22   advertising, and the tracking system is a web interface to

10:53:19 23   that back-end advertising database.

10:53:23 24        Then if you're an advertiser, you can tell what

10:53:26 25   advertisements you've run.  You can run reports on who saw

| | | |
|---|---|---|
| 10:53:30 | 1 | your advertisements.  Absolutely.  There's a web interface |
| 10:53:33 | 2 | up there.  But when they're talking about permissions, |
| 10:53:36 | 3 | when they're talking about that tracking system, that's an |
| 10:53:39 | 4 | entirely separate part of the invention.  That has nothing |
| 10:53:41 | 5 | to do with the closed versus open and whether or not this |
| 10:53:46 | 6 | is distinct from the internet. |
| 10:53:50 | 7 | Next slide, please.  So I'll rest there and see |
| 10:53:55 | 8 | if Mr. Fulghum has additional comments. |
| 10:53:58 | 9 | MR. FULGHUM:  For our side, it's going to be Mr. |
| 10:54:01 | 10 | Becker. |
| 10:54:02 | 11 | Mr. Becker, do you have any comments on this one? |
| 10:54:07 | 12 | MR. BECKER:  Just very brief, I think, your |
| 10:54:08 | 13 | Honor.  I think that DISH covered most of the arguments |
| 10:54:15 | 14 | pretty well.  I did want to clarify that with respect to |
| 10:54:17 | 15 | what the applicant viewed as his invention, we agree that |
| 10:54:22 | 16 | that is what he characterized his invention as.  We don't |
| 10:54:27 | 17 | necessarily agree that that was novel or wasn't known at |
| 10:54:29 | 18 | the time.  So I just wanted to make that one point of |
| 10:54:31 | 19 | clarity. |
| 10:54:32 | 20 | We also agree with your Honor that this claim |
| 10:54:34 | 21 | does have written description issues.  That closed system, |
| 10:54:39 | 22 | that term does not appear in the specification anywhere. |
| 10:54:43 | 23 | It's not defined by the specification.  There's no |
| 10:54:46 | 24 | description of what makes the system closed versus open. |
| 10:54:49 | 25 | There's certainly no description of patentees knew -- |

10:54:57   1   newly found plain meaning description that it's a system

10:54:59   2   that's for authorized users only.  That's not in the

10:55:01   3   patent.  And so, if you -- there's certainly plenty of

10:55:08   4   ground to find that this is a term that lacks written

10:55:11   5   description.  We agree on that.

10:55:12   6           If you were to do a forensic exercise -- let me

10:55:28   7   share my screen.  And I think that counsel for DISH

10:55:31   8   covered this, but if you were to do a forensic exercise

10:55:34   9   and figure out, well, what could the closed system be, if

10:55:39   10  it was anything in the specification, you look at the

10:55:43   11  claim.  And I have a portion of it here that counsel for

10:55:46   12  DISH also showed that has the receiving step at the

10:55:50   13  set-top box via a closed system, and what is received is

10:55:58   14  the video-on-demand content and metadata.  We talked about

10:56:01   15  this quite a bit today.  The only system in the

10:56:04   16  specification from which a set-top box receives any

10:56:07   17  content is the cable television system.

10:56:09   18          So if you were to find that the closed system had

10:56:13   19  support in the specification, the only thing it can be is

10:56:16   20  the cable television system.  That's the only thing that's

10:56:19   21  described.  And so, when we look at this argument about

10:56:23   22  authorization that's coming from Broadband iTV, they're

10:56:31   23  saying, well, a system is closed if you require

10:56:33   24  authorization.  Well, there's no -- as Mr. Roberts said,

10:56:37   25  there's no description of a set-top box obtaining some

10:56:42  1   kind of authorization to get access to the cable

10:56:45  2   television system.  That's not in the specification.

10:56:47  3   That's not a basis to find that a system's closed.

10:56:51  4        And if you look at the internet, the descriptions

10:56:55  5   in the patent do describe that users -- the enduser web

10:57:00  6   browser would have accounts that they would need to have

10:57:04  7   in order to access the web-based content in a system.  And

10:57:09  8   as Mr. Roberts capably described, they consistently called

10:57:12  9   the internet open during prosecution, and they called the

10:57:18  10  cable television system closed.

10:57:20  11       So under this construction, that closed means

10:57:24  12  only opened to authorized users, the cable television

10:57:29  13  system would be open, and the web-based content management

10:57:33  14  system, which is accessed over the internet, would be

10:57:35  15  closed.  So it's the exact opposite of what they said in

10:57:40  16  the construction during -- what they're saying now during

10:57:43  17  claim construction is the exact opposite of how they

10:57:47  18  characterize these two networks during prosecution

10:57:51  19  history.  And with that, I would pass my arguments.

10:57:57  20       THE COURT:  Okay.  Counsel for plaintiff.

10:58:08  21       MR. ALBERTI:  David Alberti.  I'd like to share

10:58:11  22  my screen.

10:58:22  23       Okay.  So given the way the arguments have gone,

10:58:27  24  your Honor, I'm just going to focus on the issue as to

10:58:31  25  whether a closed system can include the internet.  Unless

| | | |
|---|---|---|
| 10:58:38 | 1 | your Honor would like to hear argument on why cable is -- |
| 10:58:44 | 2 | closed system isn't limited to cable, which that hasn't |
| 10:58:47 | 3 | been argued yet, I'm just going to focus on that.  And |
| 10:58:50 | 4 | I'll start with this cite that was put up and it relates |
| 10:58:56 | 5 | to the web interface. |
| 10:58:58 | 6 | And in figure 1A, it's crystal clear that the web |
| 10:59:04 | 7 | interface, which is an interface via the web, via the |
| 10:59:07 | 8 | internet, is an interface into the cable head end, which |
| 10:59:13 | 9 | counsel just told you the cable head end is a closed |
| 10:59:16 | 10 | system.  So the idea that you cannot have a closed system |
| 10:59:20 | 11 | that includes the internet is belied by the patent itself |
| 10:59:24 | 12 | because the patent itself has a specific web interface |
| 10:59:29 | 13 | that goes into the cable end that provides authorized |
| 10:59:32 | 14 | users access to the cable end. |
| 10:59:34 | 15 | So right there, that should end the issue right |
| 10:59:37 | 16 | there.  It's very crystal clear, cable can include the |
| 10:59:41 | 17 | internet, and it can be closed. |
| 10:59:52 | 18 | So the next slide, Mr. Roberts went into the |
| 10:59:56 | 19 | field of the invention.  He focused on the first portion, |
| 11:00:01 | 20 | the first sentence of that field and ignored the second |
| 11:00:07 | 21 | clause, which says, more particularly, this invention |
| 11:00:11 | 22 | relates to a system and method for managing and |
| 11:00:14 | 23 | converting, displaying video content on a |
| 11:00:17 | 24 | video-content-on-demand platform.  There's nothing again |
| 11:00:21 | 25 | here that excludes the internet or excludes any other type |

| | | |
|---|---|---|
| 11:00:25 | 1 | of closed system. |
| 11:00:28 | 2 | This is interesting because, you know, we just |
| 11:00:31 | 3 | heard that there was nothing in the 388 patent |
| 11:00:35 | 4 | specification that talked about set-top boxes that were |
| 11:00:38 | 5 | connected to the internet, but that's just not true.  So |
| 11:00:41 | 6 | if we take a look at the 388 patent at column 2, going -- |
| 11:00:47 | 7 | starting from line 25 going all the way through line 56, |
| 11:00:52 | 8 | first of all, it talked about -- it talks about VOD |
| 11:00:55 | 9 | television, including web page browsing and e-mail, okay? |
| 11:01:00 | 10 | So those are two internet activities. |
| 11:01:03 | 11 | But even further, they -- the specification |
| 11:01:06 | 12 | incorporates by reference an application from a company |
| 11:01:12 | 13 | Navic that makes digital television cable systems, |
| 11:01:15 | 14 | including set-top boxes.  And what we see here on this |
| 11:01:19 | 15 | slide, again, incorporated by reference into the 388 |
| 11:01:24 | 16 | patent, it says, indeed, millions of digital set-top boxes |
| 11:01:29 | 17 | have already been deployed in the United States.  It's |
| 11:01:33 | 18 | estimated that the worldwide market for internet |
| 11:01:36 | 19 | appliances such as digital set-top boxes and other |
| 11:01:39 | 20 | internet-connected terminals will reach $17.8 billion in |
| 11:01:44 | 21 | 2004. |
| 11:01:46 | 22 | Okay.  This patent was tied back to the original |
| 11:01:49 | 23 | grandparent that was filed in 2004.  It incorporates this |
| 11:01:53 | 24 | by reference.  It specifically discloses set-top boxes |
| 11:01:58 | 25 | that are connected to the internet and referred to as |

11:02:01  1  internet appliances.  So any digital cable set-top box at

11:02:08  2  that time had -- at least some of them had this

11:02:10  3  capability.  And again, we're talking here in 2004,

11:02:15  4  incorporated into the 388 patent.  So the idea that it

11:02:21  5  somehow excludes a digital set-top box that's connected to

11:02:24  6  a cable company that also has an internet connection, it's

11:02:29  7  just incorrect.

11:02:32  8          And we've talked about the 269 patent.  What's

11:02:37  9  interesting about the 269 patent very clearly talks about

11:02:41  10  IPTV, which is internet protocol TV, it's referred to as a

11:02:48  11  closed proprietary broadband system and it uses the

11:02:54  12  internet protocol.

11:02:54  13          This patent was cited -- it was submitted as an

11:02:57  14  IDS; so it's part of the file history, it was considered

11:03:01  15  by the examiner, it's consistent with the other statements

11:03:05  16  in the 388 patent and those statements that were

11:03:07  17  incorporated by reference that you can have a closed IP

11:03:12  18  system, internet protocol system, that's part of the

11:03:16  19  internet, and it -- in no way does a closed system exclude

11:03:22  20  the internet.  In fact, it is very common to have things

11:03:26  21  like a VPN, which is an encrypted path that you have over

11:03:30  22  the internet.  Even though the internet in general can be

11:03:33  23  referred to as open, the internet is full of closed

11:03:35  24  systems.  So you can't say just because the word "closed

11:03:39  25  system" is there, it excludes the internet.

|          |    |                                                               |
|----------|----|---------------------------------------------------------------|
| 11:03:41 | 1  | In fact, as we saw, the cable system in the |
| 11:03:44 | 2  | patent has a web interface.  So it is accessible via the |
| 11:03:51 | 3  | internet and it is a closed system.  In the 269 patent, |
| 11:03:56 | 4  | IPTV systems are by definition the internet.  When it |
| 11:04:00 | 5  | defines the term "internet," it says very clearly includes |
| 11:04:04 | 6  | any type of, you know, network that connects the universe |
| 11:04:10 | 7  | of users via a common or industry-standard TCP/IP |
| 11:04:15 | 8  | protocol, short for IP protocol, that's IPTV.  IPTV is a |
| 11:04:20 | 9  | closed system.  Closed systems do not in any way exclude |
| 11:04:25 | 10 | using the internet. |
| 11:04:25 | 11 | The next slide, slide 41, is from our expert's |
| 11:04:34 | 12 | declaration at paragraph 39.  This just provides a very |
| 11:04:39 | 13 | simple example that, look, just because you have things |
| 11:04:42 | 14 | that are available over the internet, that doesn't make |
| 11:04:46 | 15 | every system that's over the internet open, right?  We |
| 11:04:49 | 16 | know any patent -- any type of thing you set up that |
| 11:04:54 | 17 | requires a log-in ID or a password such as newspapers.com, |
| 11:04:59 | 18 | just because you can access it via the internet doesn't |
| 11:05:02 | 19 | mean that system excludes the internet just because it |
| 11:05:06 | 20 | requires a log-in password and would be closed to other |
| 11:05:09 | 21 | users. |
| 11:05:10 | 22 | Now, let's talk a little bit about the file |
| 11:05:14 | 23 | history because in the file history, I think it's |
| 11:05:18 | 24 | important to point out, first of all, these patents, none |
| 11:05:22 | 25 | of them were defining the term "closed system."  So if you |

11:05:26  1   look at those claims, none of those claims that they

11:05:30  2   pointed to and they said, well, there was argument about

11:05:32  3   closed systems, none of them even use the word "closed

11:05:36  4   system" and tried to argue around prior art because of the

11:05:40  5   term "closed system."

11:05:43  6          And when you actually look at what they say,

11:05:47  7   they're consistent with -- they're not inconsistent with

11:05:49  8   using the internet or equating cable -- or equating a

11:05:54  9   closed system to only being limited to cable.  They refer

11:05:58  10  to the internet as a, quote, open network, but again,

11:06:02  11  nobody's disputing that the internet itself can be an open

11:06:05  12  network.  The question is, does a closed system exclude

11:06:11  13  the internet?  Well, of course not.  There are plenty of

11:06:14  14  closed systems that are accessible via the open internet,

11:06:20  15  including government systems and, you know, systems with

11:06:24  16  highly secure and confidential data.  They're accessible

11:06:27  17  over the internet and they're closed.

11:06:29  18         And so, having a closed system does not exclude

11:06:32  19  the internet.  There's nothing in any of these cites --

11:06:35  20  and we'll go to the next one that they point to -- that

11:06:39  21  again exclude the concept of having an internet that is

11:06:42  22  part of a closed system.

11:06:44  23         Here, this other cite refers to, quote, unquote,

11:06:48  24  the open internet.  And again, the fact that they say open

11:06:51  25  internet suggests that there can be other types of the

| | | |
|---|---|---|
| 11:06:55 | 1 | internet, right?  That you can have an internet with, you |
| 11:06:58 | 2 | know, end-to-end encryption, that would be an example of a |
| 11:07:01 | 3 | closed internet system. |
| 11:07:06 | 4 | So again, the idea that closed in some way, it |
| 11:07:08 | 5 | completely excludes the internet, it's not supported by |
| 11:07:10 | 6 | the file history, it's completely contradicted by the |
| 11:07:15 | 7 | patent itself, and there's really nothing else, any other |
| 11:07:20 | 8 | evidence that they've put forth that would qualify either |
| 11:07:28 | 9 | as definitional or a clear disavowal of claim scope.  And |
| 11:07:31 | 10 | with that, your Honor, unless you have any questions, I |
| 11:07:33 | 11 | would pass back over to opposing counsel. |
| 11:07:38 | 12 | THE COURT:  Mr. Roberts, anything you'd like to |
| 11:07:40 | 13 | add? |
| 11:07:41 | 14 | MR. ROBERTS:  Yes, your Honor.  Several things. |
| 11:07:42 | 15 | Mr. Alberti, if you could stop sharing your |
| 11:07:46 | 16 | screen. |
| 11:07:49 | 17 | The first thing I'd like to point out, your |
| 11:07:52 | 18 | Honor, is we are not even trying to argue that the set-top |
| 11:07:56 | 19 | box can't have an internet connection.  I'm not trying to |
| 11:07:59 | 20 | exclude or prevent the set-top box from having a |
| 11:08:03 | 21 | connection to the internet.  What we're trying to say is |
| 11:08:06 | 22 | that this claim talks in a limitation (a) -- and, I think, |
| 11:08:12 | 23 | Mr. Melehani, that's slide 11 again. |
| 11:08:14 | 24 | This claim talks about the content being |
| 11:08:19 | 25 | delivered via a closed system.  And all we're saying is |

11:08:23   1   that when that content is delivered via a closed system,

11:08:26   2   it's being delivered -- Mr. Melehani, could we have slide

11:08:30   3   11, please?  And limitation (a) is the limitation from the

11:08:39   4   388 patent that we're talking about.  It talks about

11:08:41   5   receiving at the set-top box via a closed system.  I'm not

11:08:44   6   saying the set-top box in question can't have an internet

11:08:48   7   connection.  I'm just saying that this particular method

11:08:53   8   of reception, the data being received in this limitation

11:08:57   9   is being received via the closed system.

11:08:59   10          I'm not trying to say no set-top box can have an

11:09:03   11   internet connection.  I'm not trying to say that, you

11:09:05   12   know, your Honor, you've gotta exclude internet

11:09:08   13   connections from the set-top box.  I'm just saying that

11:09:11   14   this limitation, this delivery happens via the closed

11:09:16   15   system is distinct from the internet.  That's all.  It's a

11:09:19   16   very narrow limitation.  Not trying to exclude it.

11:09:26   17          Second, opposing counsel said that the cable head

11:09:28   18   end is a closed system.  If we could go back to Mr.

11:09:35   19   Melehani, slide 21, please.  First of all, your Honor, the

11:09:41   20   tracking system is not the method of delivery that we're

11:09:43   21   talking about in this claim.  In claim (a), we're talking

11:09:46   22   about the delivery of the metadata via a closed system.

11:09:50   23   We're talking about what's down here at the bottom from

11:09:52   24   the video server to the digital set-top box.  That's the

11:09:56   25   flow of information we're talking about.  We're not

| | | |
|---|---|---|
| 11:10:00 | 1 | talking about the tracking system. |
| 11:10:02 | 2 | And when Mr. Alberti says, well, as soon as you |
| 11:10:06 | 3 | have a web interface to something at the cable side, then |
| 11:10:09 | 4 | obviously the closed system has to include the internet. |
| 11:10:12 | 5 | That's ignoring the whole point of the invention, which |
| 11:10:14 | 6 | was to bridge between an open internet upload and a closed |
| 11:10:22 | 7 | download.  So just take the web-based content management |
| 11:10:27 | 8 | system.  The web-based content management server system is |
| 11:10:30 | 9 | also at the cable -- located at the cable company.  That's |
| 11:10:32 | 10 | how it gets the data via upload. |
| 11:10:35 | 11 | The fact that there's an internet connection at |
| 11:10:38 | 12 | one end of the system doesn't change the fact that the |
| 11:10:43 | 13 | distribution mechanism is closed.  And what the applicant |
| 11:10:47 | 14 | was talking about in his invention was coupling the open |
| 11:10:51 | 15 | upload with the closed download, and he was distinguishing |
| 11:10:55 | 16 | between those two things.  So the fact that the cable |
| 11:11:01 | 17 | system has some internet accessibility for some components |
| 11:11:05 | 18 | of the system doesn't suggest that closed and the closed |
| 11:11:10 | 19 | distribution mechanism includes the internet.  That's just |
| 11:11:16 | 20 | a non sequitur. |
| 11:11:17 | 21 | Second, Mr. Alberti talked about the Navic |
| 11:11:22 | 22 | patent.  And if the Court looks at the actual reference to |
| 11:11:25 | 23 | that, which is in column 2, lines 45 through 48, I'll just |
| 11:11:31 | 24 | read it.  It says -- just to back up.  It says, viewer |
| 11:11:39 | 25 | interfaces and interactive services for deployment on VOD |

| | | |
|---|---|---|
| 11:11:43 | 1 | channels of CATV, of cable television, operators and cable |
| 11:11:49 | 2 | service areas throughout the U.S.A., a detailed |
| 11:11:51 | 3 | description of the Navic in-band system is contained in |
| 11:11:55 | 4 | U.S. patent application filed on May, which is |
| 11:11:57 | 5 | incorporated here and by reference. |
| 11:11:59 | 6 | So what they were incorporating that by reference |
| 11:12:01 | 7 | for was a detailed description of the Navic in-band system |
| 11:12:06 | 8 | expressly in the context of receiving cable television. |
| 11:12:11 | 9 | But again, I don't dispute that the Navic in-band system |
| 11:12:16 | 10 | could also receive information over the internet.  Fine. |
| 11:12:21 | 11 | But that's a written description argument, which, as you |
| 11:12:24 | 12 | point out, we'll get to later.  It's not a question of |
| 11:12:26 | 13 | whether the closed system here is distinct from the |
| 11:12:32 | 14 | internet because, again, I'm not trying to say that the |
| 11:12:35 | 15 | set-top box can't have an internet connection.  I'm trying |
| 11:12:38 | 16 | to say that the closed system is not that internet |
| 11:12:42 | 17 | connection.  That the closed is distinct from the internet |
| 11:12:46 | 18 | connection. |
| 11:12:46 | 19 | Mr. Alberti also mentioned IPTV.  And I want to |
| 11:12:52 | 20 | reiterate, your Honor, that everything he talked about |
| 11:12:54 | 21 | with respect to IPTV is from the 2007 patent application |
| 11:12:59 | 22 | where they broadened the disclosure.  If this patent were |
| 11:13:04 | 23 | rooted in the 2007 patent application, my argument might |
| 11:13:08 | 24 | be a lot worse than it is because there's a much broader |
| 11:13:12 | 25 | disclosure in that patent. |

| | | |
|---|---|---|
| 11:13:15 | 1 | But they can't throw a broader disclosure in that |
| 11:13:18 | 2 | patent, change the disclosure of this patent.  That |
| 11:13:21 | 3 | doesn't work.  And he says, well, we filed it in an IDS, |
| 11:13:26 | 4 | your Honor, and because we filed it in an IDS, the |
| 11:13:28 | 5 | examiner considered it.  Your Honor, it's a later patent |
| 11:13:31 | 6 | application.  It's a continuation in part.  Filing it in |
| 11:13:37 | 7 | an IDS, it's not even prior art if you file it in an IDS |
| 11:13:42 | 8 | because it's a later-in-time patent application. |
| 11:13:44 | 9 | And it wasn't like the examiner considered it and |
| 11:13:46 | 10 | rejected it; and even if he had, the fact that you |
| 11:13:49 | 11 | consider prior art and you filed it in an IDS doesn't |
| 11:13:54 | 12 | somehow incorporate it by reference into the specification |
| 11:13:56 | 13 | and broaden the specification.  Prior art cited in an IDS |
| 11:13:59 | 14 | is not an attempt to incorporate and broaden the |
| 11:14:02 | 15 | disclosure in the specification.  That's not what it is. |
| 11:14:06 | 16 | And finally, your Honor, I'll just come back to |
| 11:14:09 | 17 | the actual language that the patent owner used here to |
| 11:14:15 | 18 | talk about the distinction between the closed system and |
| 11:14:20 | 19 | the open system.  And, Mr. Melehani, if we can go back to |
| 11:14:24 | 20 | a couple of slides previous. |
| 11:14:31 | 21 | Your Honor, Mr. Alberti made the point that the |
| 11:14:36 | 22 | internet is only an example of the open system.  Sorry, I |
| 11:14:39 | 23 | think it's slide 16, Mr. Melehani.  Sorry.  One back from |
| 11:14:48 | 24 | this, 15, please.  Okay.  I guess it is 16.  Thank you. |
| 11:14:53 | 25 | They're talking about the website being prior art |

| | | |
|---|---|---|
| 11:14:57 | 1 | and uploading video content from the internet into cable |
| 11:15:02 | 2 | being the invention.  And then, if we could go to slide |
| 11:15:05 | 3 | 17.  Via an open network, paren, the internet.  The |
| 11:15:11 | 4 | internet is an open network.  You can't get away from this |
| 11:15:17 | 5 | language that says the internet is an open network.  And |
| 11:15:22 | 6 | therefore, we're talking about a closed network.  It's not |
| 11:15:25 | 7 | talking about the internet. |
| 11:15:29 | 8 | And the terms "closed" and "opened" are used over |
| 11:15:32 | 9 | and over again to distinguish between cable and the |
| 11:15:37 | 10 | internet.  And even if you're not going to read closed as |
| 11:15:40 | 11 | limited to cable, if this means anything, it means that |
| 11:15:43 | 12 | closed is distinct from the internet.  Thank you. |
| 11:15:50 | 13 | MR. ALBERTI:  Your Honor, briefly, if I can |
| 11:15:52 | 14 | address that. |
| 11:15:52 | 15 | THE COURT:  Sure.  Of course. |
| 11:15:54 | 16 | MR. ALBERTI:  Okay.  So just, again, there are |
| 11:15:58 | 17 | really two issues to consider here:  A, has there been any |
| 11:16:01 | 18 | clear disavowal of claim scope?  B, is there lexicography |
| 11:16:04 | 19 | that it would in any way exclude the internet from a |
| 11:16:09 | 20 | closed system?  And the answer to both of those is no. |
| 11:16:11 | 21 | We've not seen anything that really addressed the term |
| 11:16:14 | 22 | "closed network." |
| 11:16:15 | 23 | What Mr. Roberts just showed you was a statement |
| 11:16:20 | 24 | that talked about the internet being an open network. |
| 11:16:25 | 25 | It's important to point out that the phrase in the claim |

```
11:16:29   1   isn't closed network, it's closed system.  And again, we
11:16:32   2   get back to the issue, can a closed system incorporate the
11:16:37   3   internet?  And we saw it in the patent itself, defendants
11:16:42   4   admit that the cable system is a closed system, and we
11:16:46   5   have a web interface right into the cable system.
11:16:49   6          So the idea that a closed system excludes the
11:16:52   7   internet is belied by the patent specification itself.
11:16:56   8   And as Mr. Roberts pointed out, the Navic cite that is
11:17:01   9   included, incorporated by reference, is talking about a
11:17:05   10  cable system and their set-top boxes as set forth in the
11:17:10   11  Navic application are internet connected.  But you've got
11:17:14   12  a closed system, a cable system, with internet-connected
11:17:17   13  appliances.
11:17:18   14         So again, there's just -- there's no
11:17:22   15  lexicography, there's no disavowal.  In fact, the patent
11:17:25   16  teaches the opposite.  You can have a closed system that
11:17:29   17  incorporates the internet.  And with that, unless you have
11:17:33   18  any questions, I'm done.
11:17:34   19         THE COURT:  I don't.  The Court is going to go
11:17:38   20  with its preliminary construction of plain and ordinary
11:17:41   21  meaning.
11:17:43   22         Next, the next claim term is "a method for
11:17:49   23  receiving, via the internet, video content to be viewed,"
11:17:53   24  et cetera.  What is the plaintiff's position with respect
11:17:57   25  to the Court's preliminary claim construction that this is
```

| | | |
|---|---|---|
| 11:18:02 | 1 | not limiting? |
| 11:18:03 | 2 | MR. BELLOLI:  Marc Belloli, your Honor. |
| 11:18:04 | 3 | We agree. |
| 11:18:07 | 4 | THE COURT:  Who will be arguing on behalf of the |
| 11:18:09 | 5 | defendants? |
| 11:18:09 | 6 | MR. FULGHUM:  Your Honor, this is Roger Fulghum. |
| 11:18:12 | 7 | Morgan Mayne from our office is going to argue |
| 11:18:14 | 8 | this for defendants. |
| 11:18:15 | 9 | THE COURT:  Okay.  Remind her, she's standing |
| 11:18:19 | 10 | between us and lunch.  So -- I'm kidding.  I'm just |
| 11:18:22 | 11 | kidding.  I look forward -- |
| 11:18:24 | 12 | MR. FULGHUM:  Always a dangerous spot. |
| 11:18:25 | 13 | THE COURT:  I look forward to hearing from her. |
| 11:18:30 | 14 | MR. FULGHUM:  Thank you. |
| 11:18:35 | 15 | MS. MAYNE:  Your Honor, AT & T contends that the |
| 11:19:01 | 16 | preamble of claim 1 of each of the 026, 101 and 269 |
| 11:19:06 | 17 | patents is limiting in its entirety.  In light of |
| 11:19:08 | 18 | yesterday's preliminary order, we will just briefly |
| 11:19:11 | 19 | address the preamble of the 101 patent. |
| 11:19:17 | 20 | The preamble of claim 1 is limiting because it |
| 11:19:20 | 21 | provides antecedent basis for multiple terms in the body. |
| 11:19:23 | 22 | Here's the language of the claim.  This slide is going to |
| 11:19:26 | 23 | get a little busy as we highlight some of the terms.  It |
| 11:19:30 | 24 | will show you how much the preamble is used for |
| 11:19:33 | 25 | antecedent. |

11:19:34    1          First, receiving video content provides

11:19:37    2    antecedent for associated video content, the video

11:19:41    3    content, and the received video content.  An

11:19:46    4    internet-connected digital device provides antecedent for

11:19:51    5    the internet-connected digital device.  A subscriber

11:19:55    6    provides --

11:19:55    7          THE COURT:  If you think I'm seeing something,

11:19:57    8    I'm not.  If you don't think I'm seeing something, then

11:20:01    9    you're fine.  But you're acting like there's something

11:20:05   10    that should be on my screen and I don't have it.

11:20:09   11          MR. FULGHUM:  Morgan, let's back up and share

11:20:11   12    your screen a second time and see if that will allow the

11:20:13   13    Judge to see it.  Let's start over again.  Judge, we can

11:20:22   14    see it, for what it's worth --

11:20:25   15          THE COURT:  I cannot.  Try it again.  If it

11:20:27   16    doesn't work, I will exit and come back in because

11:20:31   17    sometimes that -- here we go.  I think that's -- there we

11:20:34   18    go.  Good.  Thank you.

11:20:36   19          MR. FULGHUM:  Morgan, if you would back up so we

11:20:39   20    can see the changes on the screen.  I think that's

11:20:42   21    persuasive.

11:20:45   22          MS. MAYNE:  All right.  Here's the language of

11:20:51   23    the claim.  We're going to highlight some of the relevant

11:20:53   24    terms.  So as you can see here, receiving video content in

11:20:57   25    the preamble provides antecedent for associated video

content, the video content, and the received video
content.  An internet-connected digital device provides
antecedent for the internet-connected digital device.  A
subscriber provides antecedent for the subscriber.  A
video-on-demand system provides antecedent for the
video-on-demand system.  And a hierarchically arranged
interactive electronic program guide provides antecedent
for the interactive electronic program guide.

BI argues that the highlighted preamble terms are
not limiting because they are duplicative of terms in the
body and recite an intended use.  That is not correct.
These terms recite far more than intended use or purpose.
They provide the only antecedent basis for the same or
similar terms in the body and are, therefore, necessary to
breathe life and meaning into the body of the claim.

Bio-Rad Labs is on point here.  In Bio-Rad Labs,
the parties agree that the underlying term "a reaction in
a microfluidic system" in the method claim's preamble were
limiting because they provided antecedent limitations in
the body.  The parties disputed, however, whether the
surrounding terms were also limiting.  The Federal Circuit
found that the entire preamble was limiting.  The Federal
Circuit explained that the limiting portions could not be
read separately from the remainder of the preamble because
the language relied upon for antecedent basis is

| | | |
|---|---|---|
| 11:22:34 | 1 | intertwined with the rest of the preamble. |
| 11:22:36 | 2 | The same is true here.  As shown by highlighting |
| 11:22:39 | 3 | in the left part of the table, you'll see that the |
| 11:22:43 | 4 | surrounding terms such as "via the internet," "should be |
| 11:22:47 | 5 | viewed on," are intertwined with and not distinct from the |
| 11:22:52 | 6 | limiting portion such as receiving video content.  Entire |
| 11:22:56 | 7 | preamble is, therefore, limiting. |
| 11:23:01 | 8 | I'd also like to point out that the preamble of |
| 11:23:05 | 9 | the 101 patent includes language substantially similar to |
| 11:23:09 | 10 | language in the preamble of the 026 patent that BI |
| 11:23:14 | 11 | identified as a limitation during prosecution. |
| 11:23:17 | 12 | Specifically, BI recently filed responses to DISH's IPR |
| 11:23:21 | 13 | petitions on the 026 patent.  This slide shows you a clip |
| 11:23:25 | 14 | from BI's response.  If you look at the heading, which |
| 11:23:28 | 15 | we've highlighted, you'll see that BI explicitly |
| 11:23:32 | 16 | identified the 026 patent preamble as an element of the |
| 11:23:36 | 17 | claim.  BI thus relied on the preamble to distinguish the |
| 11:23:40 | 18 | alleged invention from the prior art.  For this additional |
| 11:23:45 | 19 | reason, your Honor, we ask you to reconsider your |
| 11:23:48 | 20 | preliminary construction and find the -- |
| 11:23:49 | 21 | THE COURT:  Give me -- sorry.  Give me just a |
| 11:23:51 | 22 | second.  I want to read what you have on your slide.  Give |
| 11:23:54 | 23 | me just one second.  Okay.  Thank you, ma'am.  I |
| 11:24:11 | 24 | interrupted you.  I'm sorry. |
| 11:24:13 | 25 | MS. MAYNE:  I was going to say, for these |

| | | |
|---|---|---|
| 11:24:15 | 1 | reasons, we ask that you reconsider your preliminary |
| 11:24:17 | 2 | construction and find the preamble limiting in its |
| 11:24:20 | 3 | entirety.  Unless you have any questions, I'll pass. |
| 11:24:24 | 4 | THE COURT:  I do not.  Let me hear from the |
| 11:24:26 | 5 | plaintiff -- I'm sorry, yeah.  Plaintiff. |
| 11:24:31 | 6 | MR. BELLOLI:  Thank you, your Honor. |
| 11:24:32 | 7 | Starting on our final slide, that's about a |
| 11:24:34 | 8 | different patent that we agreed that portion of that |
| 11:24:39 | 9 | system claim preamble was limiting, but this is a |
| 11:24:42 | 10 | different patent.  We're talking about the 101 patent now, |
| 11:24:44 | 11 | which is a method claim.  And just not to belabor the |
| 11:24:47 | 12 | issue, the preamble of the 101 patent is the statement of |
| 11:24:53 | 13 | purpose. |
| 11:24:53 | 14 | And under the Catalina case, when you have a |
| 11:24:55 | 15 | preamble that's a statement of purpose and the method |
| 11:24:58 | 16 | steps give you the full invention, it's not limiting. |
| 11:25:03 | 17 | Second, when a preamble's merely duplicative over -- of |
| 11:25:09 | 18 | steps in the claim method, it's not limiting.  That's the |
| 11:25:12 | 19 | TomTom case, 790 F. 3d 1315.  And the Catalina case I |
| 11:25:17 | 20 | mentioned earlier is 919 F. 3d 801.  Also, the Arctic Cat |
| 11:25:24 | 21 | case, as well, 919 F. 3d 1320. |
| 11:25:28 | 22 | And I think the slide with all the highlighting |
| 11:25:31 | 23 | kind of makes our point for us.  That these various parts |
| 11:25:36 | 24 | of the preamble are used throughout the claim.  I think |
| 11:25:41 | 25 | there might be slide 66 of AT & T's presentation there. |

| | |
|---|---|
| 11:25:46 | 1 |
| 11:25:50 | 2 |
| 11:25:53 | 3 |
| 11:25:56 | 4 |
| 11:25:58 | 5 |
| 11:26:02 | 6 |
| 11:26:04 | 7 |

1  They can go to it or not.  But, you know, merely providing
2  antecedent basis isn't enough.  There has to be life,
3  vitality and meaning.  And you can look at -- you could
4  cover up the preamble and look at the rest of the claim on
5  the 101 patent and understand the invention completely.
6  Highlighting there's just the statement of purpose, the
7  preamble is not limiting.
8         And unless your Honor has any questions, I will
9  submit and rest on the papers.
10         THE COURT:  I do not.
11         Anything else you'd like to say in response, Ms.
12  Mayne?
13         MS. MAYNE:  Yes.
14         I just want to point out that the cases on which
15  BI relies do not stand for the proposition that where
16  there's no separate antecedent basis in the body, that the
17  preamble terms are merely duplicative.  Here, there is no
18  separate antecedent.
19         As you can see, throughout this claim and through
20  the highlighting, you have the antecedent in the preamble
21  and then, that same term or similar term in the body
22  simply has the word "the," meaning the only antecedent
23  basis was already provided in the preamble.  In such
24  circumstances, the preamble is not merely duplicative and
25  not merely an intended use.

| | | |
|---|---|---|
| 11:26:56 | 1 | THE COURT:  Okay.  I'll be right back. |
| 11:28:44 | 2 | We'll go back on the record.  The Court is going |
| 11:28:48 | 3 | to find that the preamble is not limiting. |
| 11:28:52 | 4 | The next claim term that we are going to take up |
| 11:28:59 | 5 | is -- begins with "a set-top box...program to perform the |
| 11:29:05 | 6 | steps of."  And I will tell you all, this is one we spent |
| 11:29:11 | 7 | a lot of time in our office discussing, and so, I'm |
| 11:29:18 | 8 | assuming you all are going to spend a lot of time |
| 11:29:20 | 9 | discussing it with me, is my guess.  Let me start with the |
| 11:29:30 | 10 | plaintiff and ask the plaintiff its opinion of the Court's |
| 11:29:34 | 11 | preliminary construction. |
| 11:29:40 | 12 | MR. ALBERTI:  Your Honor, we would present a very |
| 11:29:42 | 13 | minor clarification to the construction.  If I could share |
| 11:29:44 | 14 | my screen, I could go over that with you. |
| 11:29:48 | 15 | THE COURT:  Okay. |
| 11:29:54 | 16 | MR. ALBERTI:  Okay.  So as you see that BBiTV's |
| 11:30:01 | 17 | construction and I show the proposed clarification in red, |
| 11:30:04 | 18 | and that is to add the words "the selection of" between |
| 11:30:09 | 19 | "transmitting" and "the first respective title."  So it |
| 11:30:11 | 20 | will read, transmitting the selection of the first |
| 11:30:16 | 21 | respective title associated with the first video content. |
| 11:30:22 | 22 | And the reason why I propose that is, A, it's consistent |
| 11:30:26 | 23 | with the specification as I'll show and, B, it's just |
| 11:30:32 | 24 | consistent with common sense on how remote controls work. |
| 11:30:36 | 25 | I could either get into my argument or if we can |

11:30:39  1  hear from the defendants before I do that.

11:30:41  2          THE COURT:  No.

11:30:41  3          I'm happy to hear you argue why you'd like to add

11:30:45  4  the selection -- the words the "selection of."  And then,

11:30:49  5  obviously the defendants will have a chance to discuss the

11:30:52  6  Court's preliminary construction as well as any amendment

11:30:58  7  of it to add that.

11:31:00  8          MR. ALBERTI:  Thank you, your Honor.

11:31:00  9          So if we take a look at -- we start by taking a

11:31:07  10  look at the limitation, we see that the selection happens

11:31:13  11  via a control unit in communication with the set-top box.

11:31:18  12  And that selection is of a first respective title

11:31:22  13  associated with video content.  And so that what is

11:31:27  14  actually transmitted to the set-top box from the control

11:31:31  15  unit, which could be a remote control or a -- you know,

11:31:36  16  there's keypads on the boxes that have basically the same

11:31:42  17  cursor and select buttons as the remote control.  We'll

11:31:45  18  see that.  But what is sent is not like literally the

11:31:50  19  entire title itself.

11:31:52  20          So you're not typing in, I want to watch

11:31:57  21  Braveheart.  You're not typing that into your remote

11:31:59  22  control.  You hover a cursor over the title that's at

11:32:03  23  Braveheart and you click it, and that selection, something

11:32:07  24  representative of that title is sent to the set-top box.

11:32:12  25          We have a -- just a basic graphic here, this

11:32:17  1  corresponds with our expert's description that it's the

11:32:23  2  Exhibit 7, the Shamos declaration, at paragraph 57.  We

11:32:28  3  just kind of made a graphic for you so anybody who's used

11:32:32  4  on-demand before kind of knows how this works.

11:32:34  5       You have the cursor buttons like up, down, left,

11:32:37  6  right, and then, the middle, you have your selection

11:32:39  7  button.  And so, the way you would pick out a

11:32:42  8  video-on-demand movie is, you could go to the hierarchical

11:32:47  9  menu with your cursors, and then, when you see a title

11:32:50  10  that you like, you press okay.  So you select that title,

11:32:55  11  but what's actually being transmitted from your remote

11:32:59  12  control to the set-top box is not literally the title,

11:33:02  13  it's something representative of, oh, hey, I want this

11:33:06  14  title.

11:33:07  15       What happens next is, the set-top box takes that

11:33:09  16  selection, it forwards it to the video-on-demand server.

11:33:16  17  That server then looks up that title and sends the video

11:33:22  18  content back to the set-top box to display on the screen.

11:33:26  19  And if we go back to the claim, you see in step (d),

11:33:31  20  that's actually what's happening.  You're not -- you're

11:33:34  21  receiving the content to display on the TV equipment of

11:33:40  22  the TV service provider.  So ultimately what you're really

11:33:44  23  seeing is the content representative of that title.

11:33:46  24       So the title, again, you cursor over the title,

11:33:51  25  you hit select, a signal goes from your remote or, again,

| | | |
|---|---|---|
| 11:33:56 | 1 | from the keypad to the set-top box saying, I want this -- |
| 11:34:01 | 2 | basically I want to see this title.  So it's |
| 11:34:04 | 3 | representative of that title, it's a selection of that |
| 11:34:09 | 4 | title, which is why we included the additional language, |
| 11:34:12 | 5 | "a selection of," instead of just the title itself, |
| 11:34:16 | 6 | because we think that could confuse a jury where a jury |
| 11:34:18 | 7 | would actually think like somehow, you're required to |
| 11:34:22 | 8 | literally type in the title on your remote control or your |
| 11:34:26 | 9 | control unit to send to the set-top box. |
| 11:34:30 | 10 | And this is consistent with the specification. |
| 11:34:34 | 11 | We have several cites here.  These were in our brief that |
| 11:34:37 | 12 | talks about how subscribers can input via remote control |
| 11:34:45 | 13 | their selection inputs for transmission on a back channel. |
| 11:34:48 | 14 | So what that's telling you is, you use your remote control |
| 11:34:52 | 15 | to select a title, the signal goes from your remote |
| 11:34:57 | 16 | control to the set-top box, that is then transmitted onto |
| 11:35:01 | 17 | the back channel.  It says, hey, I want this title, the |
| 11:35:04 | 18 | back channel then sends back the actual video, and then, |
| 11:35:07 | 19 | you get to see the actual video. |
| 11:35:10 | 20 | And again, we see later here in this paragraph, |
| 11:35:15 | 21 | it talks about how you use the remote control to cursor |
| 11:35:18 | 22 | through the menu to select from a variety of titles.  So |
| 11:35:21 | 23 | what your remote control does is, it moves the cursor, it |
| 11:35:25 | 24 | sees a title, hey, I want to see Braveheart, or whatever, |
| 11:35:29 | 25 | I press the select button, a signal goes from the remote |

11:35:33   1   control to the set-top box.  That signal is -- you could

11:35:39   2   say it's representative of that title.  It's saying I want

11:35:42   3   that title, but it doesn't literally have to be the title.

11:35:44   4   That's not how these systems work.  It's not how the

11:35:49   5   patent specification describes the operation of these

11:35:52   6   systems.

11:35:53   7           Again, we see in, again, same patent, 388 patent

11:35:59   8   talking about how a user can enter a selection choice for

11:36:04   9   a video program via remote control to the set-top box.

11:36:09   10  Again, you use the remote to send your selection to the

11:36:13   11  set-top box, that selection, that signal represents that

11:36:18   12  title that I want that title, I want that -- I want to

11:36:21   13  view that, but literally it doesn't have to be the title,

11:36:24   14  which is why we just made a very minor clarification to

11:36:27   15  the Court's construction.  As we could see, we're just

11:36:31   16  adding the words "transmitting the selection of."  Because

11:36:33   17  what actually goes between the remote and the set-top box

11:36:38   18  doesn't literally have to be the title.

11:36:44   19          THE COURT:  I understand your point.  Anything

11:36:47   20  else you'd like to add?

11:36:49   21          MR. ALBERTI:  I think that about does it, your

11:36:50   22  Honor.

11:36:50   23          THE COURT:  Okay.  Who will be arguing on behalf

11:36:54   24  of the defendants?

11:36:55   25          MR. FULGHUM:  Roger Fulghum, your Honor.  And

11:36:57  1   I'll share my screen.

11:37:06  2          All right.  Let me get into presentation mode

11:37:12  3   quickly.  Okay.  Can you all see my screen?

11:37:21  4          THE COURT:  Yes, sir.  I can.

11:37:23  5          MR. FULGHUM:  I'm having some trouble getting

11:37:25  6   into presentation mode.  Hold on a second, your Honor.

11:37:41  7          Okay.  Your Honor, first off, we do agree with

11:37:44  8   the Court's tentative construction.  This is a

11:37:45  9   construction that matches the exact claim language.  Let

11:37:47  10  me summarize Broadband iTV's presentation to the Court.

11:37:50  11  They want you, Judge, to fix the claim so that they -- it

11:37:54  12  matches their infringement case.  That is actually what

11:37:56  13  you're doing -- that is exactly what they want you to do.

11:37:59  14         This claim is flawed.  It requires that the

11:38:02  15  set-top box transmit a title to itself.  It cannot be

11:38:06  16  infringed, and it reads exactly like it says, and that is

11:38:09  17  the Court's tentative construction.  Exactly like it says.

11:38:14  18  Broadband iTV was the master of this claim.  They're the

11:38:17  19  ones who drafted it, and they have to live with the words

11:38:20  20  of this claim.  The Court should not fix this claim so

11:38:22  21  that Broadband iTV can assert a case of infringement.

11:38:25  22  That's really -- we should focus on the language of the

11:38:28  23  claims.

11:38:29  24         Okay.  Here's the language of the claims.

11:38:32  25  There's the claim term at issue on the left and AT & T's

11:38:35   1   proposed construction on the right, and our construction

11:38:37   2   matches the Court's preliminary.  All we've done here is,

11:38:41   3   we've taken the word "selection" and simply identified

11:38:45   4   what was selected, and that is the first respective title

11:38:49   5   associated with a first video content.  And let me stop

11:38:52   6   for one second.

11:38:54   7        It also occurred to me when I watched Broadband

11:38:57   8   iTV's presentation that there was little discussion of the

11:39:00   9   actual language of the claim.  It was flashed on the

11:39:03  10   screen once, and then, we heard a lot about graphics, we

11:39:05  11   heard about an expert, we heard about how modern remote

11:39:10  12   controls work.  That's all well and good, how modern

11:39:15  13   remote controls work, how modern video-on-demand systems

11:39:19  14   work, but, Judge, that is not what is claimed.

11:39:21  15        Our construction is entirely grammatical.  In

11:39:26  16   response to the subscriber selecting a title, title is

11:39:31  17   transmitted.  Simple as that.  And the construction just

11:39:36  18   makes sense.  Just imagine if it read analogously in

11:39:40  19   response to the subscriber selecting a book transmitting

11:39:44  20   the selection, every single person in the courtroom would

11:39:48  21   understand that the book is the selection and that the

11:39:52  22   book is transmitted after it is selected.

11:39:54  23        This is just common sense that it matches the

11:39:57  24   language of the claim.  We should stick to the language of

11:40:00  25   the claim.  We should not try to fix this claim to make it

| | | |
|---|---|---|
| 11:40:05 | 1 | so that Broadband iTV can retain an infringement case |
| 11:40:08 | 2 | here. |
| 11:40:10 | 3 | Also notice this.  The selection does not have an |
| 11:40:16 | 4 | antecedent basis.  You'll notice "the selection" is not |
| 11:40:20 | 5 | preceded by "a selection" anywhere in the claim, Judge. |
| 11:40:23 | 6 | Our construction fixes that.  It provides it with the |
| 11:40:27 | 7 | antecedent basis, and the antecedent basis is easy to |
| 11:40:30 | 8 | understand.  We didn't see Broadband iTV's tweak until |
| 11:40:37 | 9 | this morning, Judge, but it also doesn't help anything and |
| 11:40:39 | 10 | we'll get to that. |
| 11:40:41 | 11 | Okay.  Now, I'll also be the first to admit that |
| 11:40:44 | 12 | this claim requires the set-top box to transmit the |
| 11:40:49 | 13 | selection to itself.  That is what the claim says, and |
| 11:40:54 | 14 | Broadband iTV should be held to it.  Look what it says:  A |
| 11:40:58 | 15 | set-top box, and it's got some steps and here's step (c), |
| 11:41:02 | 16 | and it says transmitting the selection to the set-top box |
| 11:41:05 | 17 | for display on the TV equipment.  That selection is the |
| 11:41:09 | 18 | first respective title.  That's how the claim reads, |
| 11:41:13 | 19 | that's how it should be interpreted. |
| 11:41:15 | 20 | Okay.  Now, Broadband iTV's argument -- and this |
| 11:41:19 | 21 | also applies, by the way, to their tweak -- is that the |
| 11:41:22 | 22 | selection, as I understood their argument previously, is |
| 11:41:24 | 23 | the selection is a signal generated by the control unit, |
| 11:41:27 | 24 | and I think what they're now saying is, it is not the |
| 11:41:30 | 25 | title that the remote control is transmitting, but it's |

```
11:41:33   1   some sort of representation of title.  It's a request or
11:41:36   2   the selection of the title.
11:41:38   3          Well, that fails and it fails because of the way
11:41:40   4   the claim concludes.  Look how the step concludes, Judge.
11:41:44   5   It says transmitting the selection to the set-top box for
11:41:49   6   display, for display on the TV equipment.  That little
11:41:53   7   infrared signal that travels from your remote control is
11:41:56   8   not displayed on your TV equipment.  What is displayed is
11:42:00   9   the title.  Our construction fits with the remainder of
11:42:04  10   the claim.  A construction that would allow Broadband iTV
11:42:08  11   to say, well, it's the infrared signal, or it's the
11:42:11  12   request for the title, or something like that, we're not
11:42:13  13   really sure.  That's how modern systems work.  Those
11:42:17  14   little signals are not displayed on the TV equipment.  It
11:42:20  15   just doesn't fit and should be rejected for that reason
11:42:23  16   alone.
11:42:24  17          Also, Broadband iTV's request just doesn't fit
11:42:28  18   with the English words and the way the claim is set up.
11:42:31  19   Now, look at the claim on the right.  It says in response
11:42:34  20   to the TV subscriber selecting, transmitting the
11:42:39  21   selection, okay?  As I understand Broadband iTV's
11:42:43  22   argument, you press the remote control, you do it one
11:42:46  23   time, I guess, that's the "in response to."  And then, you
11:42:50  24   send the signal a second time from the remote control.
11:42:52  25   You actually do it twice.  That makes no sense.
```

| | | |
|---|---|---|
| 11:42:56 | 1 | The claim reads like it says, in response to a TV |
| 11:43:00 | 2 | subscriber making a selection, the selection is |
| 11:43:03 | 3 | transmitted, and that thing that is selected is the first |
| 11:43:07 | 4 | respective title.  So, Judge, we agree with the Court's |
| 11:43:11 | 5 | tentative here.  It is a plain, commonsense understanding |
| 11:43:16 | 6 | of the claim.  It matches the claim grammatically.  It is |
| 11:43:19 | 7 | what Broadband iTV claimed, and they should be held to it. |
| 11:43:23 | 8 | And that concludes our comments. |
| 11:43:32 | 9 | MR. ALBERTI:  Your Honor, if I may respond. |
| 11:43:33 | 10 | THE COURT:  Is Mr. Fulghum carrying the load |
| 11:43:37 | 11 | alone for the defendants here? |
| 11:43:39 | 12 | MR. ROBERTS:  Your Honor, this is Mr. Roberts. |
| 11:43:41 | 13 | I want to be clear.  We are not joining their |
| 11:43:43 | 14 | argument on this.  We had a different argument in a |
| 11:43:45 | 15 | different position, and we're on that argument going to |
| 11:43:49 | 16 | rest on the papers.  Although I believe Ms. Caridis is |
| 11:43:53 | 17 | going to address something that Mr. Alberti said |
| 11:43:58 | 18 | separately. |
| 11:43:58 | 19 | THE COURT:  Okay.  Could I hear that then? |
| 11:44:02 | 20 | MS. CARIDIS:  Your Honor, this is Alyssa Caridis |
| 11:44:03 | 21 | for DISH. |
| 11:44:04 | 22 | I think it's actually separate claim terms, so I |
| 11:44:05 | 23 | think it might make sense to finish this particular claim |
| 11:44:07 | 24 | term -- |
| 11:44:07 | 25 | THE COURT:  Oh, okay. |

11:44:07  1        MS. CARIDIS:  -- and then, I'd like to say

11:44:08  2   something about the preamble that was argued.

11:44:10  3        THE COURT:  Okay.  Yes.  I'm happy to hear from

11:44:15  4   the plaintiff in rebuttal.

11:44:23  5        MR. ALBERTI:  Thank you, your Honor.  And if I

11:44:24  6   could share my screen.

11:44:26  7        MR. FULGHUM:  Okay.  Mr. Alberti, I'm out.

11:44:31  8        MR. ALBERTI:  So let me just start by saying what

11:44:34  9   the defendants -- or AT & T wants us to do is kind of

11:44:39 10   suspend common sense because even they agree -- and this

11:44:43 11   is from their brief -- AT & T does not contest that BBiTV

11:44:49 12   accurately describes the operation of a remote control.

11:44:51 13   So we all know how remote controls work.  The experts know

11:44:55 14   how they work.  Our expert has a declaration on it.  The

11:45:00 15   specification tells us how they work.

11:45:03 16        And basically what AT & T wants us to do is just

11:45:07 17   suspend all of that, suspend how the specification teaches

11:45:10 18   it, suspend, you know, our common sense and take what

11:45:15 19   is -- you know, I would argue, as a hyper-literal reading

11:45:20 20   of the claim language.  And let's go back to the claim

11:45:25 21   language.

11:45:25 22        Because what Mr. Fulghum said is that we're

11:45:28 23   asking the Court to bail us out of something, but we're

11:45:32 24   not.  I mean, if we look at the claim language itself, it

11:45:35 25   says, transmitting the selection, and that clearly is

11:45:39  1  antecedent basis by, you know, the fact that something has

11:45:44  2  been selected.

11:45:44  3          THE COURT:  Well, let me ask you this.  And I

11:45:47  4  meant to ask Mr. Fulghum this and I'll obviously let him

11:45:52  5  speak to this, too.  But again -- and maybe this is just

11:45:57  6  the problem with the English language.

11:46:00  7          But the way I took when we read -- the way my

11:46:04  8  clerks and I took when we read the portion on transmitting

11:46:08  9  the selection, we read it to mean in response to TV server

11:46:13  10 -- service subscriber selecting, and then, at the end, it

11:46:17  11 means transmitting that selection that was made to the

11:46:21  12 set-top box.  That's the way I read it, even though Mr.

11:46:24  13 Fulghum, I think his position is that's a second

11:46:27  14 transmission.

11:46:27  15         What is your position?

11:46:30  16         MR. ALBERTI:  No.  It's the same -- it's the same

11:46:33  17 transmission.

11:46:33  18         So again, you cursor over, you hit the button

11:46:37  19 select.  What you just did is then transmitted again a

11:46:43  20 representation of I am selecting the first title.  So

11:46:46  21 again, we're not asking the Court to change the claim

11:46:51  22 language.  In fact, our construction incorporates the very

11:46:54  23 language of the claim.  It says transmitting the

11:46:57  24 selection.  That's what the claim says.

11:46:59  25         What the claim is unclear about is, well, what is

11:47:03  1  that a selection of?  And we just added what was already

11:47:06  2  in the -- it was already in the Court's construction.

11:47:09  3  It's a selection of the first respective title.

11:47:12  4        So again, you know, you have to look at this in

11:47:15  5  the context of the specification.  You can't just read the

11:47:18  6  claims in a vacuum, which Mr. Fulghum apparently wants us

11:47:21  7  to do.  You have to read it in light of the specification

11:47:24  8  and just basic common sense.  You don't have to type in a

11:47:28  9  title into your remote control.

11:47:31  10        And this idea that if something's transmitting to

11:47:35  11  itself, I mean, come on, we all know when you buy a

11:47:38  12  set-top box, one of the components you get is a remote

11:47:42  13  control.  I mean, this was a standard set-top box at the

11:47:47  14  time of the patent, and it tells you the following items

11:47:49  15  are included with your DCT 6200 remote control with

11:47:55  16  batteries.

11:47:55  17        Okay.  So the idea that, oh, well, a remote

11:47:58  18  control, you know, is not part of the set-top box, I mean,

11:48:02  19  come on.  Every set-top box that was sold at the time came

11:48:05  20  with a remote control.  It was one of the components.  And

11:48:08  21  in fact, if you look at the functions of the remote

11:48:11  22  control, they're identical to the functions of the actual

11:48:15  23  buttons that are on the set-top box.

11:48:17  24        So it's functionally no different.  The fact that

11:48:20  25  it's not physically incorporated in there, I mean, come

| | | |
|---|---|---|
| 11:48:23 | 1 | on, it's -- everybody knows that a set-top box comes with |
| 11:48:27 | 2 | the remote control.  And again, common sense tells us that |
| 11:48:30 | 3 | remote control transmits selections to the box, which then |
| 11:48:34 | 4 | sends it to the cable head end, and then, they get their |
| 11:48:38 | 5 | -- the VOD content back.  There's no real mystery here. |
| 11:48:43 | 6 | And again, if what we do is just make this minor |
| 11:48:49 | 7 | correction, as you see in our construction, BBiTV's |
| 11:48:55 | 8 | construction, it solves the issues that we have here. |
| 11:48:58 | 9 | And with that, unless your Honor has any other |
| 11:49:00 | 10 | questions, I'll submit. |
| 11:49:02 | 11 | THE COURT:  Mr. Fulghum, anything else? |
| 11:49:04 | 12 | MR. FULGHUM:  We need to stick to the tentative |
| 11:49:07 | 13 | here.  The tentative matches the language of the claims. |
| 11:49:11 | 14 | Remember we're talking about something done in response |
| 11:49:13 | 15 | to.  In response to.  In response to the TV subscriber |
| 11:49:17 | 16 | selecting, then we transmit the selection.  And the only |
| 11:49:20 | 17 | thing we're trying to figure out here is, what is the |
| 11:49:22 | 18 | selection?  That's the only thing we're trying to |
| 11:49:25 | 19 | determine. |
| 11:49:25 | 20 | Now, again, I heard a lot about remote controls. |
| 11:49:32 | 21 | We talked about a -- the owner's manual for remote |
| 11:49:37 | 22 | control.  Judge, what matters is the claims.  This claim |
| 11:49:40 | 23 | was drafted this way.  It needs to be held this way.  And |
| 11:49:43 | 24 | yes, it does require that the trans -- that the set-top |
| 11:49:47 | 25 | box transmit the selection to the set-top box.  That's how |

11:49:50  1   it's stated and that's how the Court should -- that is how

11:49:54  2   the Court should understand this claim, and that's how the

11:49:56  3   Court understood the claim in the tentative, and we ask

11:49:58  4   the Court to stay with that tentative.

11:50:01  5           This tweak would do nothing but cause mischief as

11:50:05  6   it would allow that remote control press to qualify both

11:50:10  7   in response to and then, qualify both for the first half,

11:50:15  8   the "in response to" half, then the second half, the thing

11:50:18  9   that is transmitted half, from the remote control.  The

11:50:21  10  remote control, the set-top box are not the same thing.

11:50:23  11  They are stated separately.  What the claim is directed to

11:50:26  12  is the set-top box, and the claim reads like it says, and

11:50:30  13  we ask the Court remain with its tentative, please.

11:50:33  14  That's all we have, your Honor.

11:50:34  15          THE COURT:  Anything from anyone else on this

11:50:36  16  issue, on this claim?

11:50:39  17          MR. ROBERTS:  Your Honor, this is Mr. Roberts.

11:50:41  18          I will also point out that consistent with our

11:50:42  19  position that the remote control is in communication with

11:50:46  20  the set-top box.  And if the remote control is in

11:50:49  21  communication, if the control unit is in communication

11:50:51  22  with, that's treating it as a distinct element, and

11:50:55  23  therefore, it's a distinct element; it's not part of.

11:50:58  24  Thank you.

11:50:59  25          MR. FULGHUM:  Thank you.

| | | |
|---|---|---|
| 11:51:00 | 1 | And to Mr. Roberts' point, the claim is to the |
| 11:51:04 | 2 | set-top box and what the set-top box does.  So once the |
| 11:51:07 | 3 | remote control selects something, then it specifies that |
| 11:51:12 | 4 | it's transmitted.  That's exactly what the claim says, and |
| 11:51:14 | 5 | that matches the Court's tentative. |
| 11:51:20 | 6 | THE COURT:  Okay.  I'll be right back. |
| 11:52:39 | 7 | Well, let's go back on the record.  If the |
| 11:52:40 | 8 | plaintiff could put up the screen shot that has the |
| 11:52:43 | 9 | additional claim language in it for me, please. |
| 11:53:07 | 10 | MR. ALBERTI:  Okay.  So it is under BBiTV's |
| 11:53:11 | 11 | construction with the red. |
| 11:53:12 | 12 | THE COURT:  The Court is going to amend its |
| 11:53:14 | 13 | construction to add the words, quote, the selection of |
| 11:53:17 | 14 | after the word "transmitting" and before the words "the |
| 11:53:20 | 15 | first respective title associated." |
| 11:53:23 | 16 | And we have one claim term left.  Let me get |
| 11:53:25 | 17 | there.  Give me one second, please.  Only claim term we |
| 11:53:35 | 18 | have. |
| 11:53:40 | 19 | MR. ROBERTS:  Your Honor, before we go on, just |
| 11:53:41 | 20 | for protection of the record. |
| 11:53:43 | 21 | THE COURT:  Yes, sir. |
| 11:53:44 | 22 | MR. ROBERTS:  Which is that we object to that |
| 11:53:45 | 23 | construction as it's making a correction.  The correction |
| 11:53:47 | 24 | is not clear from the face of the patent.  And we, |
| 11:53:50 | 25 | therefore, think Mr. Alberti, himself, specifically |

11:53:55  1  identified it as being a correction in his argument.  He

11:53:58  2  called it a correction on the record, and we would object

11:54:01  3  that the correction cannot properly be made.  Thank you.

11:54:05  4           THE COURT:  You're welcome.

11:54:06  5           The final claim term we're going to take up is

11:54:09  6  "the plurality of different display templates."  Let me

11:54:14  7  start with the plaintiff.  What is the plaintiff's

11:54:19  8  position with respect to -- and by the way, let me back up

11:54:24  9  just because Mr. Roberts made that objection.

11:54:26  10          The Court does not find that it is making a

11:54:28  11 correction.  If you're going to put your position on the

11:54:33  12 record, I just want the Court's -- I don't mean to quibble

11:54:37  13 with you or argue with you.  The Court does not believe

11:54:38  14 that it is making a correction for purposes of the record.

11:54:42  15          So with regard to the final claim term, "the

11:54:46  16 plurality of different display templates," what is the

11:54:50  17 plaintiff's position with regard to the Court's

11:54:52  18 preliminary construction?

11:54:54  19          MR. ALBERTI:  We agree with the Court's

11:54:56  20 construction.

11:54:56  21          And just for the record, so we can make a record,

11:54:58  22 I wasn't suggesting that the Court was correcting the

11:55:00  23 claim.  I was suggesting that the Court correct in a very

11:55:03  24 minor way the Court 's construction of the claim.  So I

11:55:06  25 apologize if there was any misunderstanding of it.

11:55:09   1          THE COURT:  Yeah.  I meant -- Mr. Roberts, I

11:55:12   2   actually meant to say that.  That was the way I took what

11:55:15   3   he said, and so, that's why I wanted to make it clear.  I

11:55:18   4   did not believe the plaintiff was advocating that -- I get

11:55:23   5   a lot of -- as you might imagine, I'm 30 Markmans in since

11:55:28   6   COVID started.  So I understand there are times when a

11:55:33   7   plaintiff is telling you there's something wrong in the

11:55:38   8   claim term that needs to be corrected, and I've gotta take

11:55:40   9   that up separately.  That's not what I believe I'm doing

11:55:44   10  here.

11:55:44   11         But I certainly am fine with you making your

11:55:47   12  objection on the record, and I understand why you're

11:55:49   13  making it.

11:55:50   14         So who will take up for the defendants the final

11:55:52   15  claim term?

11:55:55   16         MS. CARIDIS:  Your Honor, this is Alyssa Caridis

11:55:58   17  on behalf of DISH.

11:55:58   18         THE COURT:  Yes, ma'am.

11:56:00   19         MS. CARIDIS:  And before I turn to plurality --

11:56:02   20  the plurality of different display templates, can I

11:56:03   21  briefly backtrack a little bit?  And I apologize for doing

11:56:04   22  so, your Honor, but there was a rapid exchange at the end

11:56:08   23  of the discussion on the 101 preamble, and I just want to

11:56:11   24  make sure we have an accurate record.

11:56:13   25         THE COURT:  And what is it that you want to make

11:56:16   1   accurate?

11:56:16   2          MS. CARIDIS:  Sure.  So in her argument, Ms.

11:56:19   3   Mayne pointed out that in response to one of DISH's IPRs,

11:56:24   4   BBiTV relied on the preamble of the 026 patent to

11:56:27   5   distinguish the prior art.  After Ms. Mayne's

11:56:31   6   presentation, Mr. Belloli told the Court, and I believe

11:56:34   7   that this is a quote, that BBiTV agreed that this portion

11:56:39   8   is limiting.  And the portion that he was talking about is

11:56:42   9   what Ms. Mayne had put up on the screen, which is an

11:56:46   10  internet-connected digital device for receiving via the

11:56:51   11  internet video content.

11:56:52   12         But Mr. Belloli's statement that BBiTV agreed

11:56:55   13  that this portion is limiting just simply isn't true.

11:56:58   14  Before this court, BBiTV has disputed that the portion of

11:57:02   15  the 026 preamble is limiting, despite what it told the

11:57:06   16  patent office.

11:57:07   17         Now, your Honor said that you didn't want to hear

11:57:09   18  arguments on the 026 preamble, so we're not presenting

11:57:11   19  any.  But I just want the record to reflect that it

11:57:14   20  appears BBiTV now agrees that the portion of the preamble

11:57:18   21  that includes for receiving via the internet video content

11:57:23   22  is limiting.

11:57:26   23         THE COURT:  Okay.

11:57:29   24         MR. ALBERTI:  Your Honor, if I could have Mr.

11:57:32   25  Belloli address that.

11:57:33  1          MR. BELLOLI:  Yeah.  I think that's not exactly

11:57:34  2   what I was saying.  I'm saying that what's limiting is the

11:57:37  3   internet-connected digital device just like in the grayed

11:57:39  4   cell on page 3 of the order.  Point being that when

11:57:42  5   they're pointing to that IPR response, it wasn't even

11:57:45  6   dealing with the 101 patent.  So it's apples and oranges.

11:57:52  7          But, your Honor, we submit that your Honor has

11:57:54  8   properly determined what portions are and are not limiting

11:57:58  9   in each of the four preambles that are at issue.

11:58:02  10          THE COURT:  Can we move on to the claim term?

11:58:05  11          MS. CARIDIS:  Of course.

11:58:05  12          Mr. Melehani, can you put up our slides, please?

11:58:11  13   Thank you.

11:58:11  14          So the final term to discuss here this morning is

11:58:16  15   "the plurality of different display templates."  And the

11:58:20  16   dispute between the parties is whether the plurality of

11:58:23  17   display templates has a proper antecedent basis.  Now, we

11:58:28  18   can see the term, if we turn to slide 26, the term at

11:58:31  19   issue is underlined in red in the green highlighted

11:58:35  20   portion.

11:58:36  21          Now, your Honor's preliminary construction was

11:58:39  22   that this term should be afforded its plain and ordinary

11:58:42  23   meaning.  But ascribing its plain and ordinary meaning

11:58:45  24   doesn't resolve the dispute between the parties because

11:58:48  25   the meaning of plurality isn't really in dispute.

| | | |
|---|---|---|
| 11:58:52 | 1 | Plurality means two or more. |
| 11:58:55 | 2 | What BBiTV argues is that the plurality of |
| 11:59:00 | 3 | different display templates has an antecedent basis that |
| 11:59:03 | 4 | is found in the yellow highlighted section on slide 26. |
| 11:59:07 | 5 | And specifically, it argues that at least one display |
| 11:59:11 | 6 | template is the antecedent basis for the plurality of |
| 11:59:14 | 7 | display templates.  But the phrase "at least one" cannot |
| 11:59:20 | 8 | be the antecedent basis for the plurality because those |
| 11:59:25 | 9 | terms don't have the same scope. |
| 11:59:27 | 10 | And I'd like to turn the Court's direct -- |
| 11:59:31 | 11 | attention to SOL IP case out of the Eastern District of |
| 11:59:33 | 12 | Texas, and that's on slide 27 here.  There the Court found |
| 11:59:39 | 13 | that the recited the second set of bits did not have the |
| 11:59:45 | 14 | same scope as the earlier phrase in the claim, a second |
| 11:59:49 | 15 | modulated sequence.  And the Court out of the Eastern |
| 11:59:52 | 16 | District of Texas noted that the difference in this scope |
| 11:59:57 | 17 | suggested that the lack of antecedent basis for the set of |
| 12:00:03 | 18 | bits renders claim 7 indefinite.  And this policy makes |
| 12:00:06 | 19 | sense.  If it were otherwise, particularly in the context |
| 12:00:11 | 20 | of this case, you would have situations where sometimes a |
| 12:00:13 | 21 | term had an antecedent basis and sometimes it didn't. |
| 12:00:18 | 22 | So again, if we look at claim, 1, which is the |
| 12:00:21 | 23 | only claim at issue that has this issue here, the yellow |
| 12:00:25 | 24 | highlighted term, "at least one display template," may be |
| 12:00:29 | 25 | met by a single display template.  At least one means one |

12:00:33  1   is sufficient.  But in the situation where there was only

12:00:37  2   a single display template, there would be no antecedent

12:00:41  3   basis for the plurality of different display templates

12:00:45  4   that appears later in the claim.  We would have no idea

12:00:47  5   what that claim element is referring to.

12:00:51  6        Now, BBiTV likes to point to the Microprocessor

12:00:55  7   case out of the Federal Circuit in support of its notion

12:00:58  8   that at least one display template can be the antecedent

12:01:02  9   basis for the different -- the plurality of different

12:01:06  10  display templates.  In that case, the court found that the

12:01:11  11  term "the pipeline stage" had an antecedent basis from the

12:01:15  12  term "at least one instruction execution pipeline stage."

12:01:21  13  But the important distinction -- first of all, the Federal

12:01:25  14  Circuit in Microprocessor wasn't even really talking about

12:01:28  15  antecedent basis.  It was trying to construe the term "the

12:01:31  16  pipeline stage."

12:01:32  17       But importantly, the Federal Circuit found that

12:01:34  18  the pipeline stage was added by amendment during

12:01:38  19  prosecution and, quote, this amendment indicates the

12:01:43  20  applicant's intent that the pipeline stage take its

12:01:48  21  antecedent basis, and thereby the function and temporal

12:01:52  22  meaning, from at least one instruction execution pipeline

12:01:56  23  stage.  And that's at 520 F. 3d 1379.

12:02:01  24       So the Federal Circuit found that the pipeline

12:02:06  25  stage had an antecedent basis because in the prosecution

| | |
|---|---|
| 12:02:10 | 1 |
| 12:02:14 | 2 |
| 12:02:18 | 3 |
| 12:02:22 | 4 |
| 12:02:26 | 5 |
| 12:02:30 | 6 |
| 12:02:32 | 7 |

1  history, there was clear evidence that the applicant
2  intended for that particular antecedent basis to apply.
3  There is no indication what the intent of the applicant
4  here is when he referred to "the plurality."  What
5  plurality was it?  Where is it stored?  How is it defined?
6  None of that is discussed and there's no evidence of any
7  of that in the prosecution history.

8       Moreover, as I mentioned, "at least one" cannot
9  be the antecedent basis for "the plurality" because the
10 claims have different scope.  So there's no intrinsic
11 evidence citing the applicant's intent and the two terms
12 have different scopes.  They're not proper antecedent
13 bases.  So really, what BBiTV is asking the Court to do
14 here is correct an error in its patent.  It wants the
15 Court to read "at least one" as one or more or at least
16 two, but those aren't the only possible ways to correct
17 this claim.

18      In the exchange of extrinsic evidence that BBiTV
19 offered in this claim construction process, BBiTV said --
20 and I have this on the slide -- on the screen at slide 28.
21 BBiTV said that its expert might opine that the plurality
22 of different display templates should be a plurality of
23 different display templates.  In other words, correcting
24 "the" to "a."  And he also -- BBiTV also in this same
25 slide said that its expert may explain that a person of

12:03:45  1   ordinary skill in the art would interpret the plurality of

12:03:48  2   display templates to be the at least one display template.

12:03:52  3          So there are two additional possible corrections

12:03:56  4   to this claim language, but again, that's not all.  The

12:04:01  5   related 026 patent, which is asserted in this case, has

12:04:04  6   very similar claim language, and we see that on the screen

12:04:08  7   at slide 29.  It's a side-by-side comparison of the

12:04:12  8   claims.  And both claims have this same at least one

12:04:16  9   display template in yellow and plurality of different

12:04:19  10  display templates in green.  But look what's different.

12:04:23  11         The 026 patent includes the pink highlighted

12:04:26  12  language that expressly injects a antecedent basis for the

12:04:35  13  later, the plurality of different display templates.  So

12:04:39  14  maybe another possible correction is to add the pink

12:04:42  15  highlighted language into the 269 patent.  Of course, a

12:04:47  16  court can only correct a patent if the correction is not

12:04:50  17  subject to reasonable debate.  And here, we've come up

12:04:54  18  with at least four possible corrections, three of them are

12:04:57  19  from BBiTV itself.  So there absolutely is a reasonable

12:05:03  20  debate.

12:05:03  21         And, your Honor, the lack of antecedent basis

12:05:05  22  here matters.  The corrections that we just described

12:05:12  23  materially change the claim scope at issue here.  Can I go

12:05:17  24  back one slide, Will, please?  If we were to adopt the

12:05:21  25  correction based on claim 1 of the 026 patent, the

| | | |
|---|---|---|
| 12:05:26 | 1 | plurality of display templates would be the templates that |
| 12:05:30 | 2 | are accessible by the internet-connected digital device. |
| 12:05:34 | 3 | We see that in the yellow -- in the 026 patent with the |
| 12:05:37 | 4 | yellow and the pink highlighting where the at least one of |
| 12:05:41 | 5 | a plurality of different display templates to which the |
| 12:05:44 | 6 | internet-connected digital device has access. |
| 12:05:47 | 7 | So if we were to make that correction in the 269 |
| 12:05:50 | 8 | patent, you would put the pink language into the 269 |
| 12:05:54 | 9 | patent, and you would have which at least one display |
| 12:05:56 | 10 | template -- which uses at least one display template of a |
| 12:06:01 | 11 | plurality of different display templates to which the |
| 12:06:04 | 12 | subscriber device has access. |
| 12:06:06 | 13 | On the other hand, if we were simply to change |
| 12:06:10 | 14 | the plurality in the green to a plurality, then there's no |
| 12:06:14 | 15 | other limitations regarding that plurality.  They need not |
| 12:06:18 | 16 | necessarily be accessible by the subscriber device.  So, |
| 12:06:22 | 17 | you know, depending on the correction that you take here, |
| 12:06:24 | 18 | depending on what the antecedent basis is, you have |
| 12:06:28 | 19 | completely different claim scopes. |
| 12:06:30 | 20 | So where does that leave us?  There is no |
| 12:06:32 | 21 | antecedent basis, there are multiple possible ways that |
| 12:06:35 | 22 | the claim could be corrected, so the claim must be |
| 12:06:38 | 23 | indefinite. |
| 12:06:46 | 24 | MR. ALBERTI:  If I may -- I'm sorry, your Honor. |
| 12:06:46 | 25 | THE COURT:  I think you're done, but I wasn't |

| | | |
|---|---|---|
| 12:06:48 | 1 | sure. |
| 12:06:50 | 2 | MS. CARIDIS:  I am done.  Thank you. |
| 12:06:52 | 3 | THE COURT:  Okay.  And someone else wanted to |
| 12:06:54 | 4 | chat?  Was it Mr. Roberts?  I couldn't see. |
| 12:06:57 | 5 | MR. ALBERTI:  That was Mr. Alberti.  If I could |
| 12:06:59 | 6 | share the screen. |
| 12:06:59 | 7 | THE COURT:  Okay. |
| 12:07:00 | 8 | MR. ALBERTI:  And, your Honor, I'll try to be |
| 12:07:06 | 9 | quick here because most of what we heard was in the |
| 12:07:08 | 10 | briefing. |
| 12:07:10 | 11 | There's really -- let's start with the basic |
| 12:07:13 | 12 | notion that, first of all, I don't think there's any |
| 12:07:15 | 13 | disagreement that in order to have proper antecedent |
| 12:07:18 | 14 | basis, you do not have to have an exact one-to-one word |
| 12:07:22 | 15 | match.  In fact, I would point out the case that counsel |
| 12:07:28 | 16 | cited, the SOL IP case versus AT & T, she pointed out two |
| 12:07:35 | 17 | instances where we were talking about a, quote, unquote, |
| 12:07:39 | 18 | set of bits not being synonymous with a second modulated |
| 12:07:44 | 19 | sequence.  Well, those are completely different things. |
| 12:07:48 | 20 | I would point out in that same order, counsel |
| 12:07:51 | 21 | didn't tell you about an earlier decision in that order |
| 12:07:55 | 22 | where the Court found the phrase "a corresponding stream" |
| 12:08:00 | 23 | to be proper antecedent basis for the term "the at least |
| 12:08:04 | 24 | one stream." |
| 12:08:06 | 25 | So the only one example that actually fits this |

| | | |
|---|---|---|
| 12:08:11 | 1 | case, the Court did find there is proper antecedent basis. |
| 12:08:16 | 2 | So when we look at the claim, there's really only a couple |
| 12:08:18 | 3 | of questions we have to ask:  Is there a disclosure in the |
| 12:08:23 | 4 | claim of display templates?  And there is.  The plurality |
| 12:08:28 | 5 | of display templates can only refer to one thing, which is |
| 12:08:33 | 6 | the at least one display template.  That's the only other |
| 12:08:36 | 7 | place in the claim where that phrase occurs. |
| 12:08:39 | 8 | And nobody disagrees that at least one can |
| 12:08:43 | 9 | include a plurality.  It's one or more.  So there's no |
| 12:08:47 | 10 | inconsistency at all, and we even see that from the way |
| 12:08:52 | 11 | that it's worded.  It says that the second layer |
| 12:08:54 | 12 | comprising a particular display from the plurality of |
| 12:08:59 | 13 | different displays.  If there was only one, there would be |
| 12:09:02 | 14 | no need to say in the claim, a particular display from -- |
| 12:09:08 | 15 | the only one display. |
| 12:09:09 | 16 | So again, this is a plain-meaning thing.  There's |
| 12:09:12 | 17 | no trickery here, there's no correction that has to be |
| 12:09:15 | 18 | made.  The phrase "at least one display template" clearly |
| 12:09:19 | 19 | includes and, therefore, can be proper antecedent basis |
| 12:09:22 | 20 | for a plurality of them.  And so, there's no -- there's no |
| 12:09:27 | 21 | other really reasonable way to interpret this. |
| 12:09:32 | 22 | And lastly, I would just point out that, again, |
| 12:09:35 | 23 | this is, you know, proven or shown by the Federal Circuit |
| 12:09:42 | 24 | case in Microprocessor Enhancement.  And again, the |
| 12:09:48 | 25 | pipeline stage would suggest, one, it was antecedent basis |

| | |
|---|---|
| 12:09:50 | 1 |
| 12:09:54 | 2 |
| 12:09:58 | 3 |
| 12:10:01 | 4 |
| 12:10:05 | 5 |
| 12:10:08 | 6 |

1  from at least one.  There doesn't have to be a one-to-one

2  exact matching so long as you could understand based on

3  the language of the claim what was intended.  And again,

4  you say there's no intent, the intent is in the claim

5  language itself.  They use the exact same language, but

6  replace the plurality with at least one.

7  So clearly, at least one includes the ability to

8  have a plurality, and that's what it's referring to.  And

9  with that, your Honor, I have nothing further unless you

10  have any specific questions.

11  THE COURT:  Ms. Caridis.

12  MS. CARIDIS:  Your Honor, just two quick points.

13  One is, again, the Microprocessor case that Mr.

14  Alberti just referred to was the case where the Federal

15  Circuit specifically found intent in the intrinsic record,

16  in the prosecution history.  We obviously don't have

17  anything like that here.

18  The other thing that I'll point out is, I didn't

19  hear a response to, what is the antecedent basis for the

20  plurality of different display templates when there is

21  only one display template in the at least one?  At least

22  one can mean one.  It can be more than one, but it

23  absolutely includes just one.  And when there is only one

24  display template, in at least one display template, I've

25  heard no application for what the possible antecedent

12:11:12  1  basis for the plurality of different display templates is.

12:11:15  2  And if you only have antecedent basis sometimes and not

12:11:18  3  other times, that can't be proper.  It's indefinite.

12:11:24  4          THE COURT:  If you'll take up that specific issue

12:11:27  5  with regard to the antecedent basis for the plurality of

12:11:32  6  different display templates.

12:11:34  7          MR. ALBERTI:  Sure, your Honor.

12:11:35  8          Again, the antecedent basis is the at least one

12:11:39  9  display template.  The at least one includes a plurality.

12:11:44  10 There's no dispute about that.  Counsel just conceded that

12:11:47  11 point.  The fact that there could only be one in the first

12:11:52  12 limitation doesn't change the fact that we have antecedent

12:11:57  13 basis in element (b) because at least one includes a

12:11:59  14 plurality.  And that's all you need for antecedent basis.

12:12:02  15         As I point out, as the SOL case pointed out that

12:12:06  16 counsel relied on, and as the Federal Circuit case pointed

12:12:10  17 out, it doesn't have to be a precise match.  And so long

12:12:13  18 as a person skilled in the art would read this and

12:12:17  19 understand, well, at least one includes a plurality.

12:12:20  20 There's no other place in the claim that refers to a

12:12:22  21 display template, so clearly they're referring to the

12:12:25  22 plurality, which is within the scope of at least one

12:12:28  23 display template.  Thank you, your Honor.

12:12:30  24         THE COURT:  Anything else?

12:12:33  25         MS. CARIDIS:  Your Honor, I would just say,

| | | |
|---|---|---|
| 12:12:34 | 1 | again, I didn't hear an explanation at least one covers a |
| 12:12:38 | 2 | situation of when there is only one; and in that |
| 12:12:40 | 3 | situation, there's no antecedent basis. |
| 12:12:42 | 4 | THE COURT:  Understood -- I understand that's |
| 12:12:44 | 5 | your position.  I'll be back on in just a few seconds. |
| 12:14:31 | 6 | If we can go back on the record.  The Court is |
| 12:14:33 | 7 | going to maintain its preliminary construction and make it |
| 12:14:36 | 8 | its final construction. |
| 12:14:38 | 9 | It's my understanding that the case is set for -- |
| 12:14:41 | 10 | the cases are set for trial November 15th, so we already |
| 12:14:44 | 11 | have those scheduled.  Again, we are going -- I've put the |
| 12:14:51 | 12 | -- for the DISH people, I've put the motion to transfer at |
| 12:14:57 | 13 | the top of our priority list.  We're going to be working |
| 12:15:02 | 14 | on that and getting an answer to you as quickly as we can. |
| 12:15:07 | 15 | Again, my apologies, I didn't want to postpone -- |
| 12:15:09 | 16 | given that we've set the trial for November, I didn't want |
| 12:15:12 | 17 | to postpone this Markman and prevent you all from getting |
| 12:15:16 | 18 | discovery.  And so, ordinarily I would definitely have |
| 12:15:20 | 19 | tried to get the motion to transfer resolved in advance of |
| 12:15:24 | 20 | this hearing. |
| 12:15:26 | 21 | I'll start with the plaintiff.  Is there anything |
| 12:15:28 | 22 | that we need to take up? |
| 12:15:30 | 23 | MR. ALBERTI:  No, your Honor.  Thank you. |
| 12:15:32 | 24 | THE COURT:  Mr. Fulghum? |
| 12:15:34 | 25 | MR. FULGHUM:  Judge, what happens next in terms |

12:15:35  1  of memorializing the Court's constructions?

12:15:38  2          THE COURT:  We will -- you have them -- for

12:15:42  3  purposes -- essentially this.  I wanted you to have them

12:15:46  4  in this fashion.  My rulings on them -- I've taken the

12:15:49  5  preliminary constructions, with the exception of the one

12:15:51  6  where I modified it, those are not the final

12:15:54  7  constructions.  I think we usually get out a final Markman

12:15:57  8  order within about a month.

12:15:59  9          MR. FULGHUM:  Okay.  Understood.  Thank you, your

12:16:01  10  Honor.  Nothing --

12:16:02  11          THE COURT:  The point here is, I want -- I try to

12:16:06  12  do it this way because I want you all to begin discovery

12:16:09  13  this afternoon, or Monday, or whenever it is.  I don't

12:16:12  14  want you all having to wait for my final -- my order on

12:16:16  15  final constructions and delaying your ability to get

12:16:19  16  discovery started.  It looks -- but you'll have them

12:16:24  17  within a month.  I'm sorry.

12:16:26  18          MR. FULGHUM:  Understood, Judge.

12:16:28  19          Nothing further for AT & T.

12:16:29  20          THE COURT:  Mr. Roberts?

12:16:31  21          MR. ROBERTS:  Nothing further for DISH, your

12:16:33  22  Honor.  Thank you.

12:16:33  23          THE COURT:  I would be remiss if I didn't tell

12:16:35  24  you all, I've done a lot of Markmans now and that -- if

12:16:43  25  that wasn't the best set of arguments I've had, it

12:16:47  1   certainly would be in competition for the top two or

12:16:53  2   three.  It's really an unbelievable privilege and pleasure

12:16:57  3   to get to have this job and have lawyers that are the --

12:17:03  4   that have the ability that you do.  It makes it much more

12:17:07  5   difficult for me to make my decisions because of the

12:17:11  6   quality of arguments that are made on both sides.

12:17:14  7        I'll tell you, in a lot of Markmans, it takes a

12:17:17  8   lot less elbow grease for me to make these decisions.  But

12:17:21  9   the lawyers in this case are exceptional and I -- it's one

12:17:28  10  of those deals where if it were based on merit, everyone

12:17:32  11  should win these claim terms.  That was really an

12:17:34  12  exceptional morning for me.

12:17:35  13       I hope you all have a good weekend and be safe.

12:17:39  14  And I look forward -- if you need anything else in the

12:17:41  15  case, let me know.  But we will be working on getting a

12:17:46  16  resolution of the motion to transfer literally as quickly

12:17:49  17  as we can get it done.

12:17:51  18       So have a good weekend.  Take care.

12:17:55  19       MR. PALMER:  You, too, your Honor.  Take care.

12:17:58  20       MR. ALBERTI:  Thanks, Judge.

12:18:00  21       MR. FULGHUM:  Thank you, your Honor.

22       (Proceedings concluded.)

23

24

25

1                          *  *  *  *  *  *

2

3

4   UNITED STATES DISTRICT COURT  )

5   WESTERN DISTRICT OF TEXAS)

6

7       I, LILY I. REZNIK, Certified Realtime Reporter,

8   Registered Merit Reporter, in my capacity as Official

9   Court Reporter of the United States District Court,

10  Western District of Texas, do certify that the foregoing

11  is a correct transcript from the record of proceedings in

12  the above-entitled matter.

13      I certify that the transcript fees and format comply

14  with those prescribed by the Court and Judicial Conference

15  of the United States.

16      WITNESS MY OFFICIAL HAND this the 23rd day of November,

17  2020.

18

19

20                          */s/Lily I. Reznik*
                            LILY I. REZNIK, CRR, RMR
21                          Official Court Reporter
                            United States District Court
22                          Austin Division
                            501 W. 5th Street,
23                          Suite 4153
                            Austin, Texas 78701
24                          (512)391-8792
                            SOT Certification No. 4481
25                          Expires:  1-31-21

*LILY I. REZNIK, OFFICIAL COURT REPORTER*
*U.S. DISTRICT COURT, WESTERN DISTRICT OF TEXAS (AUSTIN)*