# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## WACO DIVISION

| | | |
|---|---|---|
| **BROADBAND iTV, INC.,** | § | |
| *Plaintiff,* | § | |
| | § | |
| *v.* | § | **6-19-CV-00716-ADA** |
| | § | |
| **DISH NETWORK L.L.C.,** | § | |
| *Defendant.* | § | |
| | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant DISH Network L.L.C.'s ("DISH") motion to transfer venue to the District of Colorado pursuant to 28 U.S.C. § 1404(a) or alternatively to the Austin Division of the Western District of Texas ("Motion to Transfer"). ECF No. 37. After careful consideration of the parties' briefs and the applicable law, the Court **DENIES** DISH's Motion to Transfer.

## I. BACKGROUND

Plaintiff Broadband iTV, Inc. ("BBiTV") filed this lawsuit on December 19, 2019, alleging that DISH's video on-demand ("VOD") services using set-top-boxes and mobile apps infringe U.S. Patent Nos. 9,648,388, 9,998,791, 10,028,026, and 10,506,269 (the "Asserted Patents"). Pl.'s Compl., ECF No. 1. On May 7, 2020, DISH filed this motion to transfer venue under 28 U.S.C. § 1404(a) requesting that this case be transferred to the District of Colorado or, in the alternative, to the Austin Division of the Western District of Texas ("WDTX"). Def.'s Mot., ECF No. 37. BBiTV filed a response opposing to DISH's motion (ECF No. 42) and DISH filed a reply (ECF No. 43).

BBiTV is a Delaware corporation headquartered in Honolulu, Hawaii. ECF No. 1 at 2. DISH is established under the laws of the State of Colorado, with a principal place of business in Englewood, Colorado. Pl.'s Compl., ECF No. 1 at 5 and Def.'s Answer, ECF No. 52, at 5.

## II. LEGAL STANDARD

In patent cases, motions to transfer under 28 U.S.C. § 1404(a) are governed by the law of the regional circuit. *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008). 28 U.S.C. § 1404(a) provides that, "[f]or the convenience of parties and witnesses, . . . a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." *Id*. "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)).

The preliminary question under Section 1404(a) is whether a civil action "might have been brought" in the transfer destination venue." *In re Volkswagen, Inc.*, 545 F.3d 304, 312 (5th Cir. 2008) (hereinafter "*Volkswagen II*"). If the destination venue would have been a proper venue, then "[t]he determination of 'convenience' turns on a number of public and private interest factors, none of which can be said to be of dispositive weight." *Action Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004). The private factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) (hereinafter "*Volkswagen I*") (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1982)). The public factors include: "(1) the administrative

difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law." *Id.* Courts evaluate these factors based on the situation which existed at the time of filing, rather than relying on hindsight knowledge of the defendant's forum preference. *Hoffman v. Blaski*, 363 U.S. 335, 343 (1960).

The burden to prove that a case should be transferred for convenience falls squarely on the moving party. *In re Vistaprint Ltd.,* 628 F.3d 1342, 1346 (Fed. Cir. 2010). The burden that a movant must carry is not that the alternative venue is more convenient, but that it is clearly more convenient. *Volkswagen II*, 545 F.3d at 314 n.10. Although the plaintiff's choice of forum is not a separate factor entitled to special weight, respect for the plaintiff's choice of forum is encompassed in the movant's elevated burden to "clearly demonstrate" that the proposed transferee forum is "clearly more convenient" than the forum in which the case was filed. *In re Vistaprint Ltd.,* 628 F.3d at 314–15. While "clearly more convenient" is not necessarily equivalent to "clear and convincing," the moving party "must show materially more than a mere preponderance of convenience, lest the standard have no real or practical meaning." *Quest NetTech Corp. v. Apple, Inc.*, No. 2:19-cv-118, 2019 WL 6344267, at *7 (E.D. Tex. Nov. 27, 2019).

### III. ANALYSIS

The threshold determination in the Section 1404 analysis is whether this case could initially have been brought in the destination venue—the District of Colorado. Neither party contests that venue is proper in the District of Colorado and that this case could have been

brought there. Thus, the Court proceeds with its analysis of the private and public interest factors.

## A. The Private Interest Factors Weigh Against Transfer.

### i. The Relative Ease of Access to Sources of Proof

"In considering the relative ease of access to proof, a court looks to where documentary evidence, such as documents and physical evidence, is stored." *Fintiv Inc. v. Apple Inc.*, No. 6:18-cv-00372, 2019 WL 4743678, at \*2 (W.D. Tex. Sept. 10, 2019). "[T]he question is *relative* ease of access, not *absolute* ease of access." *In re Radmax*, 720 F.3d 285, 288 (5th Cir. 2013) (emphases in original). "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Apple Inc.*, 979 F.3d 1332, 1340 (Fed. Cir. 2020) (citing *In re Genentech*, 566 F.3d at 1345).

#### 1. Witnesses Are Not Sources of Proof

BBiTV argues in its response that DISH employs over 1,000 employees in its remanufacturing and call center facilities in this District, and numerous of them can be sources of proof. Pl.'s Resp., ECF No. 42 at 6. BBiTV also identifies several DISH employees and contractors that are allegedly located in this District and "likely have pertinent knowledge." *Id.* at 6–7. Additionally, BBiTV argues that a third-party company, Broadcom's Systems on a Chip ("SoCs"), "employs over 100 engineers at its Austin campus, and thus likely has relevant information in this District." *Id.* at 7.

This Court, in following Federal Circuit precedent, has made clear that witnesses are not sources of proof to be analyzed under this factor; rather, the Court considers only documents and physical evidence. *Netlist, Inc. v. SK hynix Inc. et al*, No. 6:20-cv-00194-ADA (W.D. Tex. Feb.

2, 2021) ("The first private factor, ease of access to sources of proof, considers 'documents and physical evidence' *as opposed to witnesses.*") (emphasis added); *In re Apple Inc.*, 979 F.3d at 1339 ("[t]his factor relates to the ease of access to non-witness evidence, such as documents and other physical evidence"); *Volkswagen II*, 545 F.3d at 315 ("All of the documents and physical evidence relating to the accident are located in the Dallas Division"). Thus, any analysis pertaining to witnesses is more appropriately assessed under the second or third private factor.

### 2. *Electronic Documents Are Accessible with Relative Ease*

DISH argues that bulk of its relevant source code, potentially relevant documentary evidence concerning design and development, and non-technical documents, such as marketing documents and financial records, are kept in the District of Colorado, and little if any relevant documents are likely to be found in the Western District of Texas. Def.'s Mot., ECF No. 37 at 4.

Although the physical location of electronic documents does affect the outcome of this factor under current Fifth Circuit precedent (*see Volkswagen II*, 545 F.3d at 316), this Court has stressed that the focus on physical location of electronic documents is out of touch with modern patent litigation. *Fintiv*, 2019 WL 4743678, at *8; *Uniloc 2017 LLC v. Apple Inc.,* 6-19-CV-00532-ADA, 2020 WL 3415880, at *9 (W.D. Tex. June 22, 2020) ("[A]ll (or nearly all) produced documents exist as electronic documents on a party's server. Then, with a click of a mouse or a few keystrokes, the party [can] produce[] these documents" and make them available at almost any location). Other courts in the Fifth Circuit similarly found that access to documents that are available electronically provides little benefit in determining whether a particular venue is more convenient than another. *See Uniloc USA Inc. v. Samsung Elecs. Am.*, No. 2:16-cv-642-JRG, 2017 U.S. Dist. LEXIS 229560, at *17 (E.D. Tex. Apr. 19, 2017) ("Despite the absence of newer cases acknowledging that in today's digital world computer stored documents are readily

moveable to almost anywhere at the click of a mouse, the Court finds it odd to ignore this reality in favor of a fictional analysis that has more to do with early Xerox machines than modern server forms.").

DISH admits that its documents are stored electronically. ECF No. 38, Minnick Decl. 4-5. DISH also does not argue that there are any non-electronic documents or it would be difficult or burdensome to make such electronic documents available in this District.

Therefore, the Court finds that this factor is neutral.

### ii. The Availability of Compulsory Process to Secure the Attendance of Witnesses

In this factor, the Court considers particularly non-party witnesses whose attendance may need to be secured by a court order. *Fintiv*, 2019 WL 4743678, at *5 (citing *Volkswagen II*, 545 F.3d at 316); *Uniloc*, 2020 WL 3415880, at *10. Under the Federal Rules, a court may subpoena a witness to attend trial only (a) "within 100 miles of where the person resides, is employed, or regularly transacts business in person"; or (b) "within the state where the person resides, is employed, or regularly transacts business in person, if the person . . . is commanded to attend a trial and would not incur substantial expense." Fed. R. Civ. P. 45(c)(1)(A), (B)(ii); *Gemalto S.A. v. CPI Card Grp. Inc.*, No. 15-CA-0910, 2015 WL 10818740, at *4 (W.D. Tex. Dec. 16, 2015).

DISH argues that the District of Colorado could compel the attendance of its two former employees, while this Court cannot. Def.'s Mot., ECF No. 37 at 6. However, Dish fails to show that either of the two former employees is unwilling to attend trial. When the movant has not alleged or shown that any witnesses are unwilling to testify, this private interest carries far less weight. *Turner v. Cincinnati Ins. Co.*, No. 6:19-cv-642-ADA-JCM, 2020 WL 210809, at *3 (W.D. Tex. Jan. 14, 2020)).

DISH also argues that there are several non-party prior art witnesses that reside in the District of Colorado. Def.'s Mot., ECF No. 37 at 6. Specifically, DISH argues that some of these prior art witnesses are likely trial witnesses because there is a priority date dispute and it is useful for them to explain in person how a prior art system works. *Id.* at 7 and Def.'s Reply, ECF No. 43 at 3. The Court is unpersuaded for the following reasons.

First, DISH again fails to show that the identified prior artists are unwilling to testify. Second, "[i]t is highly unlikely that prior art inventors will testify at trial, therefore, the weight afforded their presence in the transfer analysis will be minimal." *East Tex. Boot Co., LLC v. Nike, Inc.*, No. 2:16-cv-0290-JRG-RSP, 2017 WL 2859065, at *4 (E.D. Tex. Feb. 15, 2017); *CloudofChange, LLC v. NCR Corp.*, No. 6-19-cv-00513, Dkt. 28 at 7 (W.D. Tex. Mar. 17, 2020) (citation omitted) ("[T]he Court notes that prior art witnesses are generally unlikely to testify at trial . . ..."). Third, even if testimony from any of the prior art witnesses is necessary to resolve the priority date dispute, a deposition will be sufficient. *See, e.g., Virginia Innovation Scis., Inc. v. Amazon.com, Inc.*, No. 4:18-CV-474, 2019 WL 3082314, n. 24 (E.D. Tex. July 15, 2019) and *VirtualAgility, Inc. v. Salesforce.com, Inc.*, No.2:13-cv-00011-JRG, 2014 WL 459719, at *5 (E.D. Tex. Jan. 31, 2014). DISH fails to explain whether or how it would be inconvenienced by presenting the prior art witnesses' deposition testimony at trial. Fourth, while there is some benefit to providing live witnesses at trial, the Fifth Circuit has observed that a videotaped deposition "allows jurors to gauge the witness's attitude reflected by his motions, facial expressions, demeanor and voice inflections." *Battle ex rel. Battle v. Mem'l Hosp. at Gulfport*, 228 F.3d 544, 554 (5th Cir. 2000) (citing *United States v. Tunnell*, 667 F.2d 1182, 1188 (5th Cir. 1982)). With remote witness testimony becoming a norm today, the Court is not convinced that

remote deposition or testimony at trial by any of the prior art witnesses would seriously inconvenience DISH.

Finally, DISH argues that CableLabs, a Colorado-based nonprofit entity, is "likely to have witnesses in Colorado" that can testify to important prior art. Def.'s Mot., ECF No. 37 at 8. As BBiTV points out, DISH has not identified anyone at CableLabs who may hold relevant information on this case or may be a potential witness. Pl.'s Resp., ECF No. 42 at 9. The Court finds that this non-party entity does not have an effect on this factor. *See MV3 Partners LLC v. Roku, Inc.*, No. 6:18-cv-00308-ADA, Dkt. 74 at 6 (W.D. Tex. June 25, 2019).

In view of the above, the Court finds this factor is neutral.

### iii. The Cost of Attendance for Willing Witnesses

"Courts properly give more weight to the convenience of non-party witnesses than to party witnesses." *Netlist*, No. 6:20-cv-00194-ADA at 13; *see Moskowitz Family LLC v. Globus Med., Inc.*, No. 6:19-cv-00672-ADA, 2020 WL 4577710, at *4 (W.D. Tex. Jul. 2, 2020).

DISH contends that attending trial in the District of Colorado will be less burdensome for its willing witnesses because members of DISH's software design teams are based in Colorado. Def.'s Mot., ECF No. 37 at 9. BBiTV contends that there are numerous DISH employees in this District in its remanufacturing and call center facilities who are potential witnesses. Pl.'s Resp., ECF No. 42 at 11. BBiTV alleges that dozens of individuals in this District, purportedly working for DISH based on their LinkedIn profiles, may possess relevant information to this case. *Id.* at 9. However, LinkedIn profiles alone do not provide sufficient evidence that these individuals are potential witnesses—they may contain inaccurate or outdated information that the Court cannot verify.[1] In addition, BBiTV fails to demonstrate that any of the DISH employees working in its

---

[1] For example, DISH asserts in its reply brief that several individuals identified by BBiTV are not located in this District or have never worked for DISH. Def.'s Reply, ECF No. 43 at 1–2.

remanufacturing and call center facilities may possess software or hardware information relevant to this case. Thus, the Court is not convinced that the individuals identified by BBiTV are potential willing witnesses in this case.

Nonetheless, given typical time limits at trial, the Court does not assume that all of the party and third-party witnesses listed in Section 1404(a) briefing will testify at trial. *Fintiv*, 2019 WL 4743678, at *6. Rather, in addition to the party's experts, the Court assumes that no more than a few party witnesses—and even fewer third-party witnesses, if any—will testify live at trial. *Id.* Therefore, long lists of potential party and third-party witnesses do not affect the Court's analysis for this factor. *Id.* Additionally, the "convenience of party witnesses is given little weight." *SynKloud Techs., LLC v. Dropbox, Inc.*, No. 6:19-cv-00525-ADA, 2020 WL 2494574, at *4 (W.D. Tex. May 14, 2020).

Although DISH also argues that a transfer to the District of Colorado would significantly reduce the additional distance to be travelled by BBiTV witnesses, the Courts finds that the cost of attendance for BBiTV witnesses is neutral. BBITV witnesses will have to travel more than 1,000 miles to attend trial regardless of the District, and the little cost difference, if there is any, will again have minimal weight on this factor's analysis. *See SynKloud Techs., LLC v. Dropbox, Inc.*, No. 6:19-cv-00525-ADA, 2020 WL 2494574, *5 (W.D. Tex. May 14, 2020).

Therefore, the Court finds that this factor is neutral or slightly favors transfer at the best.

### iv. All Other Practical Problems That Make Trial of a Case Easy, Expeditious and Inexpensive

When considering the private interest factors, courts must consider "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Volkswagen II*, 545 F.3d at 314. "Particularly, the existence of duplicative suits involving the same or similar issues may create practical difficulties that will weigh heavily in favor or against transfer." *PersonalWeb*

9

*Techs., LLC v. NEC Corp. of Am., Inc.*, No. 6:11-cv-655, 2013 WL 9600333, at *5 (E.D. Tex. Mar. 21, 2013).

BBiTV has filed multiple lawsuits in this District involving at least three of the four patents asserted in this case.[2] The cases involve overlapping issues, such as claim construction, invalidity, prior art, conception, and reduction to practice. This Court has recognized that "judicial economy favors having the infringement of the same patent considered by one judge," *SynKloud*, 2020 WL 2494574, at *5. As this Court has recognized, "transfer of this case 'would lead to two separate cases in two separate Courts about the same claims in the same patents, which would create a disruption in judicial economy, not to mention a possibility of obtaining inconsistent rulings.'" *STC.UNM v. Apple Inc.*, No. 6:19-cv-00428-ADA, Dkt. 59 at 12 (quoting *East Texas Boot Co., LLC v. Nike, Inc.*, No. 2:16-cv-0290-JRG-RSP, 2017 WL 2859065, at *6 (E.D. Tex. Feb. 15, 2017)).

Because parallel litigation concerning the same patents at issue is pending in this District, this factor strongly weighs against transfer.

## B. The Public Interest Factors Weigh Against Transfer.

### i. *Administrative Difficulties Flowing from Court Congestion*

The relevant inquiry under this factor is actually "[t]he speed with which a case can come to trial and be resolved[.]" *In re Genentech, Inc.*, 566 F.3d 1338, 1347 (Fed. Cir. 2009). A faster average time to trial means a more efficient and economical resolutions of the claims at issue. DISH suggests that this factor is either neutral or weighs in favor of transfer because this Court has seen a surge of new filings, while the entire District of Colorado had only 56 patent cases filed in 2019. Def.'s Mot., ECF No. 37 at 13. However, DISH offers no evidence that this case

---

[2] *Broadband iTV, Inc. v. AT&T Services, Inc., AT&T Communications LLC, and DirecTV*, Case No. 1:20-cv-00717-ADA (consolidated case). Three of the Asserted Patents (U.S. Patent Nos. 9,648,388, 9,998,791, 10,028,026) in this case are also asserted in the -717 case currently pending in this Court.

be resolved faster in the District of Colorado. Further, according to data provided by DocketNavigator, the average time to trial in the District of Colorado for patent cases was over 40 months in 2019 (before the Covid-19 pandemic). Pl.'s Resp., ECF No. 42 at 12. By contrast, in this Court's Order Governing Proceedings, trial is anticipated to be held approximately 52 weeks after the Markman hearing. Thus, this Court's default schedule would lead to a trial date much sooner than the average time to trial in the District of Colorado.

DISH argues that "the scheduling impact of the current pandemic . . . is still unknown." Def.'s Reply, ECF No. 43 at 5. However, DISH has provided no evidence that the scheduling of this case has been impacted by the Covid-19 pandemic. On the contrary, this Court held a Markman hearing for this case on November 13, 2020 in the middle of the pandemic. Further, this Court has demonstrated its capability of conducing in-person jury trials in a safe and efficient manner in the COVID-19 pandemic. This Court held its first patent jury trial in October 2020, and has held three more in-person jury trials in the first quarter of 2021 already. Thus, this Court is fully open and equipped to safely conduct jury trials in the COVID-19 pandemic. Conversely, there is no evidence that the District of Colorado is fully open to this date or is capable of safely holding in-person jury trials in the pandemic.[3] If this case is transferred to the District of Colorado, in addition to deferred trial settings as a result of the COVID-19 pandemic, transferring this case and establishing a new schedule with a new presiding judge would cause greater delay.

Therefore, this factor weighs heavily against transfer.

### ii. Local Interest in Having Localized Interests Decided at Home

---

[3] The District of Colorado's most recent General Order provides that "effective March 1, 2021, all civil and criminal jury trials scheduled to commence before any district or magistrate judge in any courthouse in the District of Colorado are CONTINUED subject to further order of the presiding judicial officer." *See* http://www.cod.uscourts.gov/Portals/0/Documents/Orders/GO_2021-3_Court_Operations.pdf.

Under this factor, the Court must evaluate whether there is a local interest in deciding local issues at home. *Volkswagen II*, 545 F.3d at 317. "A local interest is demonstrated by a relevant factual connection between the events and the venue." *Word to Info, Inc. v. Facebook, Inc.*, No. 3:14-cv-04387-K, 2015 WL 13870507, at *4 (N.D. Tex. Jul. 23, 2015).

DISH states that the District of Colorado has a stronger local interest because Colorado is DISH's home state. Def.'s Reply, ECF No. 43 at 5. However, DISH does not deny that it employs over 1,000 employees and owns call centers, warehouses, a remanufacturing center, and a service center in this District. *Id.* As such, this District also has a significant localized interest in the case because DISH has a substantial presence here.

Because both districts have a significant interest in this case, the Court finds this factor neutral.

### iii. Familiarity of the Forum with the Law That will Govern the Case

Both parties agree that this factor is neutral. Def.'s Mot., ECF No. 37 at 14; Pl.'s Resp., ECF No. 42 at 14. The Court also agrees.

### iv. Avoidance of Unnecessary Problems of Conflict of Laws or in the Application of Foreign Law

Both parties agree that this factor is neutral. *Id*. The Court also agrees.

## C. Intra-District Transfer

As an alternative, DISH requests that this case be transferred to the Austin Division of the Western District of Texas. In the Fifth Circuit, the § 1404(a) factors apply to both inter-district and intra-district transfers under § 1404(b). *In re Radmax Ltd.*, 720 F.3d 285, 288 (5th Cir. 2013). It is well-settled that trial courts have even greater discretion in granting intra-district transfers than they do in the case of inter-district transfers. *See, e.g., Sundell v. Cisco Systems Inc.*, 1997 WL 156824, at *1, 111 F.3d 892 (5th Cir. 1997) ("Under 28 U.S.C. § 1404(b), the

district court has broad discretion in deciding whether to transfer a civil action from a division in which it is pending to any other division in the same district.").

DISH requests that this case be transferred to the Austin Division because it can be more convenient for the parties and out-of-state witnesses to attend hearings and trial in Austin rather than in Waco. Def.'s Mot., ECF No. 37 at 15. BBiTV does not object to that request. Pl.'s Resp., ECF No. 42 at 1. However, the Austin courthouse remains closed due to the Covid-19 pandemic to this day, and it is not clear whether it will be open for jury trial in the near future. Thus, DISH's alternative request to transfer the case to the Austin Division is denied without prejudice. DISH may refile its Motion to Transfer to the Austin Division if circumstances change when it comes close to the trial.

### IV. CONCLUSION

Having considered the Section 1404(a) factors, the Court finds that DISH has not met its significant burden to demonstrate that the District of Colorado is "clearly more convenient" than this District. Therefore, the Court **DENIES** DISH's Motion to Transfer to the District of Colorado. The Court also **DENIES WITHOUT PREDJUDICE** DISH's alternative Motion to Transfer to the Austin Division of the Western District of Texas**.**

**SIGNED** this 20th day of April, 2021.

**ALAN D ALBRIGHT**
**UNITED STATES DISTRICT JUDGE**